FILED

NOV 27 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Steven Mark Rosenberg
106 ½ Judge John Aiso St, #226
LA, CA 90012
Tel: 310.971.5037

email: founder@ PuttingElders1st.org

In Pro Per

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

In re: STEVEN MARK ROSENBERG.
      Debtor

_____

STEVEN MARK ROSENBERG

Plaintiff

     vs.

ALLIANCE BANCORP, INC (Estate),
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
OCWEN LOAN SERVICING, ONE WEST
BANK, DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE FOR
ALLIANCE BANCORP MORTGAGE
BACKED PASS-THROUGH
CERTIFICATE SERIES 2007-OA1
AND DOES 1 THROUGH 25, INCLUSIVE,

Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Chapter 7  Case**

**Bank. Case No. 1:17-bk-11748-VK**

Adv. Proc. No.-----------------

## ADVERSARY PROCEEDING:

1. VIOLATION OF 11 U.S.C. § 524(a)(2)-
   Debtor Discharge Injunction
2. VIOLATION OF FRBP, Rule
   3001(c)(2) (B);Failure To File Proof Of
   Claim Re Security Interest Statement Of
   Amount To  Cure Default As Of Petition
   Filing Date;
3. VIOLATION OF FRBP, Rule 3001(c)(2)
   (C); Failure To File Attachment To
   Appropriate Official Form Re Security
   Interest In Debtor's Principal Residence
4. FRAUDULENT CONCEALMENT
5. VIOLATION OF 18 U.S.C. § 157;
   Fraud And Deceit
6. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

    I, STEVEN MARK ROSENBERG, Debtor (Plaintiff), hereby consent to ACCEPT all  Orders or Judgements  from the  honorable Bankruptcy Court.

Plaintiff and Debtor STEVEN MARK ROSENBERG, Debtor (Plaintiff), hereby

complains of Defendants ALLIANCE BANCORP, INC. (Estate) ; MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC.; ONEWEST BANK; DEUTSCHE

BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE  BANCORP

MORTGAGE  BACKED PASS THROUGH CERTIFICATE SERIES 2007-A1

(hereinafter referred to as "DEUTSCHE BANK")   as follows:

## I.

## GENERAL ALLEGATIONS

## A.

## THE PARTIES

1.    Steven M. Rosenberg ("Plaintiff") is an individual residing in the County
of Los Angeles, State of California.

2.    Plaintiff is informed and believes that Defendants are entities doing
business in the state of California

3.    Defendant Alliance Bancorp, Inc, as lender and Mortgage Electronic
Registration Systems, Inc ("MERS") as beneficiary purports to be the parties of that
certain deed of trust entered on March 15, 2007, and purport securing a $390,000
promissory note was recorded against the  Estate property located at 15814 Septo
Street, North Hills, California 91343 (hereinafter referred to as "Subject Property").

4.    Defendants OneWest Bank/ a part of  CIT Bank, N.A, (stating in public
records to be acting as Attorney in Fact for OCWEN LOAN SERVICING ) and
Deutsche Bank *claims* to be the current holders of the above mentioned deed of
trust.

## B.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this Adversary, pursuant to 28 U.S.C. §§

1    157 and 1334 in that it arises in or is related to the above-captioned case under

2    Chapter 11 of the United States Bankruptcy Code.

3        6.      This action is a "core proceeding" under 28 U.S.C. § 157(b)(2).

4        7.      Venue of this action is proper, under 28 U.S.C. § 1408 and 1409, in that it

5    arises in or relates to the Case, which is presently pending in the United States

6    Bankruptcy Court for the Central District of California.

**C.**

**PROCEDURAL AND FACTUAL BACKGROUND**

10        8.      Petitioner Steven M. Rosenberg is the sole beneficiary of the Isadore and

11    Norma P. Rosenberg Trust dated May 4, 1990 and personal representative of the Estate

12    of Isadore Rosenberg, Deceased (1918 - 2008).

13        9.      On March 15, 2007, an alleged valid deed of trust ("DOT") securing a

14    $390,000 promissory note was recorded against the Estate property located at 15814

15    Septo Street, North Hills, California 91343 indicating Ampro Mortgage, a division of

16    United Finance Mortgage Corp ("Alliance Bancorp, Inc") as the lender and MERS

17    acting solely as a nominee for the lender and the lender's successors and assigns was the

18    beneficiary under deed of trust. The contented trustor of the note and the March 15, <u>2007</u>

19    DOT was the now, deceased Isadore Rosenberg. Feeble, with age related macular

20    degeneration affecting his eyesight, and age related cognitively impaired Isadore

21    Rosenberg, was 88 years of age, at the time of his death, in early <u>2008</u>.

22        10.     The DOT has been supposedly further assigned by two assignments and a

23    correction assignment; the first Assignment (see Exhibit -1-/29 *pages to*30*)* purports to

24    have been made on April 16, 2008 at 7:55 am (though not acknowledged until August

25    2008). According to Exhibit -2 -, as found on pages 31 to33 ,the second assignment

26    purports to have <u>been made simultaneously with the first assignment as of April 16, 2008</u>

27    <u>at 7:55 am</u> although it is not acknowledged until 2009 and recorded in 2010.

1  The recorded "contested" **Correction Assignment of March 17, 2017** has been Robo

2  Signed by John Dickerson on behalf of FDIC, pertains *astonishingly* going back over 7

3  years to now at this belated date, correct the recital party name found in the DOT

4  robosigned (Jessica Seck) assignment *recorded in 2010* ! ! Exhibit - 3- / pages 34to 35.

5  The above County Recorder <u>assignment/ correction to assignment</u> chronology raises

6  serious judicial doctrines red flags (e.g; laches, statute of limitations, unclean hands,

7  marketability harm by way of slander of title, ) that something is not right in Denmark.

8      11.    The contested first Assignment is in the name of Mortgage Electronic

9  Registration Systems, Inc. (MERS) as nominee for Ampro Mortgage, a division of

10  United Finance Mortgage Corp. By the time of the purported assignment the party on

11  whose behalf MERS purported to act, had filed a petition for Bankruptcy under Chapter

12  7 on July 13, 2007, and was subsequently voluntarily dissolved in Illinois, its State of

13  Incorporation <u>on February 1, 2008</u> as Case No. 07-10941 (CSS).

14      12.    The claims were presented by OneWest Bank and Deutsche Bank to the

15  Plaintiff as the administrator of the estate of his father, Isadore Rosenberg, and the

16  trustee/ sole beneficiary of the Isadore Rosenberg & Norma Rosenberg Trust dated May

17  03, 1990.

18      13.    On realizing the DOT was not executed by his father and suspected forgery,

19  on August 29, 2009 the plaintiff filed a petition in Los Angeles Superior Court pursuant

20  to Probate Code §850 as estate personal representative. LASC BP109168

21      14.    This action sought to determine title to real Estate property where someone

22  other than the decedent or trustor claims to have title to or an interest in the Estate

23  property & for forgery as the signature of the Deed of Trust document was forged by a

24  unscrupulous criminal caregiver of Isadore Rosenberg.

25      15.    The complaint regarding forgery of the above mentioned DOT was

26  dismissed without prejudice.            .

27

28

16.    The DOT that was recorded is <u>void ab initio</u> as it was entered by forging the signature of Isadore Rosenberg who is the contended trustor of the DOT. Moreover the assignments made by MERS as nominee for Ampro Mortgage, a division of United Finance Mortgage Corp <u>were after the PSA  closing date for such assignments, making such transfers void.</u>  Alliance Bancorp Securitization  requirements per SEC edgar.

https://www.sec.gov/Archives/edgar/data/1400428/000088237707001571/d679954_424b5.htm

**D.**

**THE DEED OF TRUST IS VOID AB INITIO Based on FORGERY**

17.    The alleged DOT is void ab initio as the signature of the borrower i.e. Isadore Rosenberg in the said DOT is forged and such DOT has been created by means of fraud and forgery apparently by  the criminal  caregiver, <u>David Curtis Harder</u>



(NCIC: A10433454)  as well as the lender bank and all other parties that have alleged beneficial and legal interest in the existence of the said DOT.

18.    The plaintiff in this adversary proceeding is the son (and sole heir) and the personal representative  of the estate of his father, Isadore Rosenberg who is the "Borrower" in the alleged DOT.  The "borrower" in the DOT died in 2008. In August 2009 the plaintiff had filed a petition pursuant to Probate Code § 850 as administrator and trustee of the estate of Isadore Rosenberg to determine title to Estate property where someone other than the decedent or trustor claims to have title to or an interest in the Estate  property before the Superior Court of California, County of Los Angeles,

the Honorable Maria E. Stratton, Judge , the last  presiding justice in the dismissed case.

19.    The plaintiff had in the petition claimed that Isadore Rosenberg had record title to Estate property in North Hills, California, but that prior to his death "Isadore Rosenberg's" name was forged on a number of written instruments that were recorded on the  Estate property. This resulted in the present Bankruptcy Estate property going from free and clear ownership in 2001 to approximately $390,000 of loans and liens being recorded on the  Estate property as of February  2007. The plaintiff had also stated in the petition that various individuals and financial institutions, including OneWest Bank and Mortgage Electronic Registration Systems, aided and abetted the Caregiver Harder in his aforesaid acts. These documents, included deeds of trust securing promissory notes and lines of credit, were allegedly forged  before Isadore Rosenberg's mysterious death, occurring in Orange County, more than 60 miles from his long time home.

20.    The aforesaid petition was <u>dismissed with prejudice</u>  on January 15, 2015, however  the plaintiff made a timely appeal in April 2015, before the Court Of Appeal of the State Of California, Second Appellate District, Division Seven, in Case No. B263242, wherein the Court of Appeal rule favorably  regarding  Plaintiff's appeal. The matter was remanded with directions to vacate the order dismissing the Probate Code 850  petition (Los Angeles County Super. Ct. Nos.BP109162 )**with prejudice**, and enter a new order dismissing the petition **without prejudice**.

21.    Plaintiff is informed and believes, and thereon alleges that the signatures in the DOT and all related endorsements and documents with regard to the Estate property that has been purported to be signed by Isadore Rosenberg are forged, and fraudulent.  A true and correct copy of the Forensic Handwriting Expert Summary Report is attached and incorporated by reference to this petition as <u>Exhibit -4-*( refer to page 36 #'s  to 43)*</u>

22.    Plaintiff is informed and believes that based on the report of the highly qualified handwriting expert the signatures of Isadore are forged with regard to the DOT, endorsements and such related documents, and the DOT, endorsements and all such documents are invalid and void ab initio.

23.    Plaintiff is informed, believes and alleges that **none** of the defendants in the previous petition that was filed in 2009, had produced a counter expert opinion that the documents and DOT were not forged nor did they avail themselves to do a deposition of Steven Mark Rosenberg's, retained handwriting forensic expert Howard C. Rile, Jr. in order to attempt impeachment or rehabilitation.

24.    The ground of forgery was raised by the plaintiff on August 29 , 2009 in the filed petition pursuant to Probate Code section 850 as administrator and trustee of the estate of Isadore Rosenberg to determine title to real *Estate property which is within the statutory time of three years in which such a case should be initiated.* The present adversary proceeding is a continuation of the litigation that was initiated in 2009 and therefore is maintainable according to the Statute of Limitations.

25.    Plaintiff is informed and believes, and based thereon alleges, that the DOT, endorsements, notes do not contain the true signing of Isadore Rosenberg, that the signings in the DOT and such other related documents are forged, there is no valid DOT, the DOT is void ab initio, all claims arising from such DOT are invalid and void and accordingly none of the defendants have the standing to claim.

## E.

## ASSIGNMENTS MADE BY ALLIANCE BANCORP, INC OF DEED OF TRUST ARE VOID

26.    Plaintiff is informed and believes, and based thereon alleges, that neither OneWest Bank nor Deutsche Bank has an interest in the Deed of Trust or is a real party in interest. One West Bank, joined by Deutsche Bank National Trust Company cannot

contend that they are holders thereof based on two "fabricated" recorded assignments *both* dated April 16, 2008 (at 7:55 am).

27.     Plaintiff is informed and believes, that the Lender under the Deed of Trust was contended to be  Ampro Mortgage, a Division of United Financial Mortgage Corp which was an assumed name of Alliance Bancorp, Inc. Alliance Bancorp, Inc filed a petition in Bankruptcy, Chapter 7 on July 13, 2007, and was involuntarily dissolved in Illinois, its State of Incorporation, February 1, 2008.  Exhibit -5-  (    pages 44 to 45).

28.     Plaintiff is informed and believes, and based thereon alleges, that as per the purported DOT, <u>the closing date in the mortgage backed security (MBS) prospectus was May 30, 2007</u>. It also stated that the Sponsor will convey the mortgage loans to the Depositor on the Closing Date and the Depositor will convey the mortgage loans to the Issuing Entity on the Closing date.

29.     Plaintiff is informed and believes, and based thereon alleges that Section 10.02 of the Pooling and Service Agreement (PSA), provides that the Depositor, Master Servicer, Trustee or the Securities Administrator **shall not accept any contributions to the REMICs after the closing date.**

30.     REMIC is an entity enjoying special tax treatment and the defendants were such entities that enjoyed benefits, required that the mortgages be purchased within a 3 month period. The appropriate processing for said Estate property was "botched" by never being  properly transferred to the Alliance Bancorp 2007 OA-1  Trust as per the requirements of the PSA prospectus by the closing date of May 30, 2007.  Exhibit -6- *(see page # 46 to 50)*.  Plaintiff will present fact pattern of harm to himself as result.

31.     Plaintiff is informed and believes, and based thereon alleges, that the two purported assignments recorded in the years 2009 & 2010 respectively and the Correction of Assignment recorded March 17, 2017  relied  by the defendants have serious unexplained anomalies which collectively show them to be ineffective and Void at Law.

32.    The first Assignment purports to have been executed  April 16, 2008 at 7:55 am. However, the purported Assignment is in the name of MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. By the time of the purported assignment the party on whose behalf MERS purported to act had filed a petition in bankruptcy and had been involuntarily dissolved. This gives rise to an ultra virous situation.

33.    Plaintiff is informed and believes, and based thereon alleges, that the signer of the first Assignment is Laura Hescott, who is identified as a "Robo Signer" in the  following case amongst others: *IndyMac Bank, FSB v. Bethley,* 2009 NY Slip Op.


34.    The second Assignment purports to have been made simultaneously with the first Assignment as of April 16, 2008 at 7:55 a.m. It was signed by Erica Johnson-Seck, also identified as a Robo signer. Both assignments in this instance were purportedly signed simultaneously—it would appear that neither of the defendants ever received any interest therein.

35.    Plaintiff is informed and believes, and based thereon alleges, that the trustee performing their required duties pursuant to 11 U.S. Code § 704 (1) under  Defendant AllianceBancorp, Inc bankruptcy estate;  while trying to sell newly discovered  loans ("assets of the Bankruptcy estate),   was severely hampered in such duty because the various mortgage loans of the Defendant Alliance Bancorp, Inc could not be located according to proceedings in their open bankruptcy case . Exhibit -7- *(pages 51 to 62 )*

36.    Questionable title & loan documentation substantiation was the situation involved  in *Yvanova v. New Century Mortgage Corp,*Case No. S218973 (Cal. Sup. Ct. February 18, 2016),

> *The Supreme Court held that a home loan borrower who has*
> *suffered a non-judicial foreclosure has standing to sue for wrongful*

*foreclosure based on an allegedly void assignment even though she was in default on the loan and was not a party to the challenged assignment because an allegation that the assignment was void will support an action for wrongful foreclosure.*

37.    This case implies that belated transfers would be void ab initio, (a public policy reason being that a contrary result exposes the trust and its certificate holders leading to a complete collapse of its favoured status as a REMIC) .

38.    Plaintiff is informed and believes, and based thereon alleges, that the defendants have not followed the regulations of PSA as required before the closing date making such late assignment void.  The Lender in the purported DOT had filed for bankruptcy before assignment of interest to any of the defendants, the purported two assignments are Robo signed making such late assignment **VOID**;  as well as most recently  the LA County Recorder Office recorded as  Instrument # 20170317787 "so called" "Correction  of Assignment" of the Assignee name,  dated March 17,2017;  the defendants CANNOT  make legitimate  claims and initiate proceedings of foreclosure on the bankruptcy estate  property.

## F.

## VIOLATIONS OF CALIFORNIA CIVIL CODE SECTION 2924.17

39.    Civil Code § 2924.17 requires that a declaration recorded pursuant to Civil Code § 2923.55, a notice of default, notice of sale, assignment of deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Civil Code § 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding, must be accurate complete and supported by competent and reliable evidence.

40.    Moreover, Civil Code § 2924.17(b) states that before recording or filing any of the documents described above, a mortgage servicer **shall** ensure that it has

reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclosure.

41.    From the year 2008 to the present the Defendants One West Bank and Deutsche Bank have been engaging in a pattern and practice scheme initiating wrongful foreclosure proceedings against the Plaintiff. Here once again, the foreclosure proceedings had been initiated by the Defendants but the Defendants rights to foreclosure are not based on any legitimate documentation, whatsoever.

42.    Plaintiff is informed and believes, and based thereon alleges, that the Defendant Alliance Bancorp, Inc on whose behalf MERS has assigned the trust deed on April 16, 2008 lacks proper loan documentation. This is clear from the relevant motion and corresponding issue Order in Alliance Bancorp inc Case 07-10942-CSS Doc 519 filed on 01/20/09 in the previously referred to Exhibit 7 ( page 51  #  to 62).

43.    This was a motion filed by the above Trustees appointed in the bankruptcy case of Alliance Bancorp, Inc and referring to bottom half page 9 of  said  Exhibit 7 there is documentation clearly indicating the **"trustee's lack of loan documentation"** (emphasis added)  Page: 60

44.    The Plaintiff, exercising Freedom of Information Act (FOIA) citizen powers, on request to FDIC regarding information of executed (POA) *Jon Dickerson* assignments executed made by entities Alliance Bancorp, Inc/CIT BANK/ Onewest Bank/ IndyMac Bank et al. , was provided "buried" among the many  documents, an internal  Power of Attorney (POA) justification memo submitted  from Chris Brown, Director, Senior Counsel on behalf of   CIT Bank, N.A (OneWest Bank) to the FDIC Failed Bank Institution Department  regarding Failed Bank, Indymac Bank, F.S.B on form titled: ***Request Form for Renewal-Limited Power of Attorney For Assuming Bank/Institution Employees*** as  follows:

*Despite having exercised considerable efforts, we find at the commencement of collection or bankruptcy activities that we do not have a recorded assignment into the appropriate entity,*

*We have undertaken a thorough review of our books, records, and existing loan files of all of our group 2 loans, and we believe we have completed assignments into the appropriate entity for both portfolios where appropriate, available, and where such a need for an assignment is known. However, in our mortgage servicing activities, we continue to be faced with legal and technical challenges, such as borrower bankruptcies, and enjoined proceedings, requiring we recreate a chain of title based on factors that cannot be identified in advance without obtaining an updated title report on every loan serviced. It is cost prohibitive to obtain an updated loan level title report for each loan we are servicing, which again, would be the only way to insure a clean chain of title through all prior transfers.*

*Absent a renewed power of attorney, to avoid the risk of jeopardizing our lien position and to enable the bank to transfer title when legally permissible, we would be obliged to approach the FDIC for each instance requiring a signature on an assignment or other instrument of transfer or conveyance where, despite having exercised considerable efforts, we find at the commencement of collection or bankruptcy activities that we do not have a recorded assignment into the appropriate entity.*

Exhibit -8-(      pages(3 to 67)

45.     This information, accurately translated by any reasonable person, would prohibit any valid claim from being claimed in this action, and ultimately forms the basis, and backdrop for this adversary proceeding that will be  proving  that the Defendants not only did not file a proof of  claim in this disputed matter, they cannot…ever.

46.     The Defendants  are  asking for a pass under the cover of darkness with government oversight, while totally concealing from  the public, homeowners and government by the People and for the People",  what has been believed all along but could not be clearly established until the production of  the above-cited official documentation under the Freedom Of  Information Act,  has now shined a light  on

skullduggery, fraud, and criminal enterprise at the highest levels of business and government.

47.    These Exhibits herein  stand on their own to state that the assignments made by Defendant Alliance Bancorp, Inc were not in compliance with  required Pooling and Service Agreement (PSA) transfer into the trust as set forth in New York Security Law/Real Estate Investment Conduit (REIC) imposed deadline statutory codes. This makes it abundantly clear that the Defendants lacks valid documentation regarding their rights to foreclosure.

48.  Plaintiff is informed and believes, and based thereon alleges, that accordingly, pursuant to Civil Code §2924.17, under the California Homeowner's Bill of Rights (HBOR) Plaintiff has authority to seek redress of "material" violations of the foreclosure process. As fully explained above, Defendants willful and serious failure to comply with Civil Code §2924.17 directly undermines the intent of the Homeowners Bill of Rights. To use a clinique,  "Exhibit "A",  by way of example of  a recorded  document being presented  without it being verified for being accurate is the March 17, 2017 Correction of Assignment. . *(See Foia Exhibit -8-- with Jon Dickerson on POA list/ and this matching this LA County Recorder fake "correction of assignment").*   To be clear here: a key harm the Plaintiff  suffers  is slander /marketability upon their title (currently  the bankruptcy estate suffers).

This blatant failure to adhere to the statute renders it essentially meaningless and, if the statute is not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being rendered helpless.

49.    As directed and proximate result of Defendants failure to comply with Civil Code § 2924.17, Defendants' are liable to Plaintiff for any and all statutory and/or actual damages which have resulted from their conduct.

**G.**

## GROUND FOR THE INSTANT ACTION

50.    Notwithstanding that the foregoing information, beliefs, and allegations from a thorough and contextual background for relevance, and however factual and evidentiary they may be from the Plaintiff's perspective, these issues have become ultimately and finally, if not incredibly so…moot.

51.    Moot because in not  responding to  this Plaintiff/Debtor's Chapter 7 petition to some limited degree, and even if  appearing at a 341 meeting it/<u>they **never have  filed a proof of claim.**</u>

Note: Docket Number 12 in main Bankruptcy case, requesting for formal special service notice by:  **Deutsche Bank National Trust Company, As Trustee For Alliance Bancorp  Mortgage  Backed  Pass-Through  Certificate  Series  2007-OA1**.  The honorable Court should be aware that the above full name was fraudulently  concealed in the protracted Probate litigation.  <u>A close review of the LASC Probate  docket will show that above Entity Name as represented to this court as being a Real party in interest, WAS NEVER  in any captions or pleadings  filed by this particular defendant (spanning a period from 2009 to 2017)</u>  Exhibit - 9 - ( page 68 #  to 70) .

52.    Instantly, it is presumed, it/they would argue that in a Chapter 7 proceeding as a secured creditor, it/they do not have to file a secured creditors claim.   If that is it's/their argument it would appear that they are severely mistaken.  If  that is not their argument, and only sufficient argument for not having done so, then they have proceeded to its/their legal fatality.

53.    Federal Rules Of Bankruptcy Procedure, Rule 3001(c)(2)(B) clearly states, "If a security  interest is claimed in the debtor's  Estate property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim."   In the instant proceeding, and in the related matter, this is indeed the case.

54.    The exception to filing a proof of claim in a Chapter 7 case would be where there are no assets remaining for distribution before discharge. Yet the statute is clear that the amount in arrears to cure the default on a secured debt must be stated.   Any interpretation to the contrary of  the clearly written English would have to be a legal stretch at the very least, but inescapably overbroad, and void on its face.

55.    Further, the purported arrearages are wholly in dispute not only because of all that stated hereinabove, but the accrual of  debt based upon forgery fraudulent documents, loss of  chain of  assignment and title by creditor(s) own admission(which is inescapable), which has been fraudulently concealed from the Plaintiff when the creditor was bound to disclose it, precludes any possibility of not only filing a proof of claim, but one that can pass legal muster.

56.    FRBP, Rule 3001(c)(2)(C) states in pertinent part, "If a security interest is claimed in  Estate property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim.

57.    The record will show that to date no such claim was ever filed.

58.    Without the filing of  a proof of claim, the creditor, on the disputed claim lost any ability to recover Subject Property, along with the purported debt incurred upon the sudden, but instant discharge.   That is the law.

59.    Currently the Defendants are proceeding in an unlawful conversion type manner with nonjudicial foreclosure proceedings against a declaratory Debtor's Discharge Directive, with their intent to foreclose on the alleged  debt and sell or wrongfully  convert  Property on November 28, 2017. Exhibit -10- , *page #71 -72* .

60.    While this action is intended to preclude the violations from continuing, it is also brought forth to recover Estate  damages for past transgression, and in the future,  disgorgement/ with any such proceeds distributed  to the Bankruptcy Estate for creditor  allocation,  should that become necessary.

## FIRST CLAIM

### (Against All Defendants For VIOLATION OF 11 U.S.C. § 524(a)(2)- Debtor Discharge Injunction)

61.    Plaintiff refers to re-alleges and incorporates by reference the allegations of paragraphs 1 through 60 of this Adversary Pleading , as though fully set forth herein.

62.    Plaintiff is informed and believes and on that basis alleges that the defendants and each of them knew or should have known that by committing acts described hereinabove, that such acts constitute a cause of action for **VIOLATION OF FRBP, Rule 3001(c)(2)(B);Failure To File Proof Of Claim Re Security Interest Statement Of Amount To  Cure Default As Of Petition Filing Date,** based on the following:

      a)    each of the named defendant knows or should know that the debtors debts have been discharged;

      b)    the clerk of the court has notified the creditors of the debtors discharge;

      c)    the defendants know or should <u>know that they did not file a proof of claim in a timely manner, nor before debtor's debts were</u> <u>discharged;</u>

      d)    the defendants know or should know that because of the type of security interest that they are **illegally acting upon**, that before doing so <u>to effect legal process</u>, they have a **duty to file a claim;**

      e)    failing to do so they are inflicting upon Plaintiff severe mental anguish  suffering in the form of: 1) clinical diagnosis stress 2) anxiety 3) depression

while intentionally but illegally attempting to collect a  debt ( that also happens to be

time barred). Plaintiff has been and continues to be irreparably harmed by defendants

actions (e.g; slander of title/ infliction of won ton emotional distress requiring

psychiatric care through the Plaintiffs HMO over the  past 4 years).

63.    As a direct, proximate result of their actions, Plaintiff  seeks

compensatory damages commensurate with standards of  precedence in such matters.

64.    Plaintiff  seeks punitive damages in an amount that a jury may find just

proper.

## SECOND CLAIM

**(Against All Defendants, VIOLATION OF FRBP, Rule 3001(c)(2)(B);Failure
To File Proof Of Claim Re Security Interest Statement Of Amount To Cure
Default As Of Petition Filing Date)**

65.    Plaintiff  refers to re-alleges and incorporates by reference the allegations

of  paragraphs 1 through 64 of  this Adversary Proceeding, as though fully set forth

herein.

66.    Plaintiff is informed and believes and on that basis alleges that the

defendants and each of  them knew or should have known that by committing acts

described hereinabove, that such acts constitute a cause of action for *Violation Of*

*Rule 3001(c)(2)(B); For Failure To File Proof Claim Re  Security Interest*

*Statement*, based on the following:

a)    each of  the named defendant knows or should know that the

debtors debts have been discharged;

b)    the clerk of  the court has notified the creditors of  the debtors

discharge;

c)    the defendants know or should know that they did not file a proof

of claim in a timely manner, nor before debtor's debts were

discharged;

d)    the defendants know or should know that because of the type of security interest that they are illegally acting upon, that before doing so to effect legal process, they have a duty to file a proof of claim;

e)    the defendants know or should know that there is a declaratory injunction in force which prohibits the defendants from making any attempt whatsoever to take possession of, or sell Estate Subject Property or, otherwise collect the debt thereon

f)    failing to do so they are creating undue stress upon the while intentionally but illegally attempting to collect a debt.

67.    As a direct, proximate result of the actions, Plaintiff seeks sanctions prohibiting the Defendants from making any attempts of any kind whatsoever, and without exception, to collect the debt for Subject Property, or recover same through attempts to sell or take possession of same proper.

## THIRD CLAIM

**(Against All Defendants, VIOLATION OF FRBP, Rule 3001(c)(2)(C);Failure To File Attachment To Appropriate Official Form Re Security Interest In Debtor's Principal Residence)**

68.    Plaintiff refers to re-alleges and incorporates by reference the allegations of paragraphs 1 through 67 of this Complaint, as though fully set forth herein.

69.    Plaintiff is informed and believes and on that basis alleges that the defendants and each of them knew or should have known that by committing acts described hereinabove, that such acts constitute a cause of action for *Failure To File Attachment To Appropriate Official Form Re Security Interest In Debtor's Principal Residence* based on the following:

a)    each of the named defendant knows or should know that the

debtors debts have been discharged;

b)    the clerk of the court has notified the creditors of the debtors discharge;

c)    the defendants know or should know that they did not file a proof of claim in a timely manner, nor before debtor's debts were discharged;

d)    the defendants know or should know that because of the type of security interest that they are illegally acting upon, that before doing so to effect legal process, they have a duty to file a proof of claim **_with the proper attachment thereto according to statute;_**

e)    the defendants know or should know that there is a declaratory injunction in force which prohibits the defendants from making any attempt whatsoever to take possession of, or sell Subject Property or, otherwise collect the debt thereon

f)    the defendants know or should know that there is a declaratory injunction in force which prohibits the defendants from making any attempt whatsoever to take possession of, or sell BANKRUPTCY ESTATE Subject Property or, otherwise collect the debt thereon ( Note: as of the filing of this Adversary Proceeding, the Trustee has not made any Motion for Abandonment of Estate Property pursuant to governing Statute 11 U.S §554 ).

f)    failing to do so they are creating undue stress upon the while intentionally but illegally attempting to collect a debt.

70.    As a direct, proximate result of their actions, Plaintiff seeks sanctions prohibiting the Defendants from making any attempts of any kind whatsoever, and

without exception, to collect the debt for Bankruptcy Estate  Subject Property, or recover same through attempts to sell or take possession of same proper.

## FOURTH CLAIM

### (Against All Defendants, For Fraudulent Concealment(Related State Claim)

71.    Plaintiff refers to re-alleges and incorporates by reference the allegations of  paragraphs 1 through 70of this Complaint, as though fully set forth herein.

72.    Plaintiff is informed and believes and on that basis alleges that the defendants and each of  them knew or should have known that by committing acts described hereinabove, that such acts constitute a cause of action for intentional *Fraudulent Concealment Based* on the following:

        a)     Each of the Defendant in this action on any number of  occasions have falsely represented to this Plaintiff and courts of law, as well as the instant one,  that they have a valid security interest in Subject Property through a known broken  chain of assignment to title upon faulty securitization shenanigans  and other fraudulent   mortgage loan processing charades including significant misrepresentations to borrowers such as inflated appraisals.

        b)     In fact, the Defendants knew at all times relevant that in fact they could not and cannot reconstruct a chain of assignments and titles for presumably countless residential mortgages and Deeds of  Trust *-scienter*

c)      the knowing falsity of their claims was intentional because the defendants had mastered a scheme to commit literally the greatest heist against one's fellow man in the known history of mankind, and to date they continue to do so, with relative impunity.

d)      the Defendants and each of them, had a duty to disclose these facts about their lies, as required in federal Truth In Lending Laws among many others, but instead chose to conceal the fact that they "…we do not have a recorded assignment into the appropriate entity", for what is contended to be millions of homeowners, nor will they ever.

e)      the Plaintiffs' 88 year old father , although suffering from dementia, justifiably to the extent possible given his condition, relied on the representations of the defendants as did the American People at one time because they were among some of the most highly respected financial institutions in the world with a supposed reputation for honesty.

f)      Because of their fraud, and patent dishonesty, and deadly conspiracies through "Wall Street fraud incorporated", millions unjustly lost their home , many their will to live happy , and some even their lives due to suicide.

g)   Because of the Defendants' fraud and fraudulent concealment ***this Plaintiff is the poster child for the harm*** *associated with being* taken advantage of by the unchecked criminal acts of the Defendants and their cohorts who have been and are acting out with seeming impunity. ( <u>Jesse Eisinger, The Chickenshit Club: Why the Justice Department Fails to Prosecute Executives (Simon & Schuster 2017)</u>

73.   As a direct, proximate result of the actions of the Defendants and each of them, Plaintiff seeks compensatory damages commensurate to ones already adjudicated in this Court nationwide.

74.   Plaintiff seeks punitive damages in an amount that a Jury may deem just and proper.

## FIFTH CAUSE OF ACTION

### (Against All Defendants, For Violation Of 18 U.S.C. § 157-Re Fraud)

75.   Plaintiff refers to re-alleges and incorporates by reference the allegations of paragraphs1 through 74 of this Adversary Proceeding, as though fully set forth herein.

76.   Plaintiff is informed and believes and on that basis alleges that the defendants and each of them knew or should have known that by committing acts described hereinabove, that such acts constitute a cause of action for Violation Of *18 U.S.C. § 157* based on the following:

a)    Each of the Defendant in this action on any number of occasions have falsely represented to this Plaintiff and courts of law, as well as the instant one that they have a valid security interest in Subject Property through a known broken chain of assignment to title upon securitization (failure) and other fraudulent mortgage loan processing misrepresentation schemes.

b)    In fact, the Defendants knew at all times relevant that in fact they could not and cannot reconstruct a chain of assignments and titles for presumably countless residential mortgages and Deeds of Trust

*-scienter*

c)    the knowing falsity of their claims was intentional because the defendants had mastered a plan to commit literally the greatest heist against one's fellow man in the known history of mankind, and to date they continue to do so, with impunity.

d)    the Defendants and each of them, had a duty to disclose and not these facts about their untruthfulness, as required in federal Truth In Lending Act (TILA) / Real Estate Settlement Practices Act (RESPA), but instead chose to fraudulently conceal the fact per the obtained Freedom of Information Act Internal Memo seeking approval from the FDIC for Renewal Request For Limited Power

of Attorney for Assuming Bank/Institution Employees (in this instance CIT Bank/OneWest Bank) - **RE: FDIC FOIA Log Number 17-027**1, quoting verbatim:

"…<u>we do not have a recorded assignment into the appropriate entity</u>", it would not be conjecture to state that this holds true for for millions of homeowners with an entity such as MERS clouding their property title.

e)    the Plaintiffs' father , justifiably relied on the representations of the defendants as did the American People at one time because they were among some of the most highly respected financial institutions in the world with a supposed reputation for honesty.

f)    Because of the systematic industry fraud, and patent dishonesty, and deadly conspiracies through "mortgage fraud incorporated", millions lost their homes, many their will to live, and some their lives.

g)    Because of the Defendants' fraud and fraudulent concealment this Plaintiff is next in line to be taken advantage of by the unchecked criminal acts of the Defendants who have been and are acting out with seeming impunity.

h)    *18 U.S.C. § 157* in pertinent part states,

*A person who, having devised or intending to devise a scheme or
artifice to defraud and for the purpose of executing or concealing such
a scheme or artifice or attempting to do so—*
*(2)    files a document in a proceeding under title 11; or*
*(3)    makes a false or fraudulent representation, claim, in relation to
a proceeding under title 11, at any time before or after the filing of the
petition, or in relation to a proceeding falsely asserted to be pending
under such title, shall be fined under this title, imprisoned not more
than 5 years, or both.*
*i)    the mere appearance of the Defendants in this action through
their employees representatives, agents, assigns, and proxies, etc., as
they continue to conspire to break the law, and commit fraud to deceive
the People of America out of trillions of dollars of their hard earned
income, and possessions and then make the rest of America pay for
their criminal shortcomings, including the instant Plaintiff requires that
they too must suffer the consequences for their harmful actions.*

77.    As a direct, proximate result of the actions of the Defendants and each

of them, Plaintiff seeks compensatory damages commensurate to ones already

adjudicated in this Court nationwide.

78.    Plaintiff seeks punitive damages in an amount that a Jury may deem just

and proper.

## **RELIEF**

### **(Declaratory Relief)**

79.    Plaintiff refers to re-alleges and incorporates by reference the allegations

of paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.    Plaintiff has alleged that a dispute has arisen between himself and the

Defendants, if not in words, by their actions, where it appears they are in willful

violation of a Debtor's Discharge Injunction that somehow they feel does not apply to

them.

82.    Plaintiff alleges that the Defendants failed to file a proof of claim in this action re: <u>highly contested disagreements re possession and control of Subject Property, spanning over 9 (nine) plus years to date in the judicial system;</u> prior and subsequent to the filing of the relevant petition, and after discharge. They have continued to foreclose on Subject Property, even though, arguably, they no longer have any interest in it by operation of the law.

83.    As a result, the Court is being requested to resolve the dispute according to the strict confines of the statutes governing bankruptcies with the benefits and limitations available to the debtor vis-à-vis with the legitimate creditors claims.

85.    As a direct proximate result the Court is asked to find that the Defendants are declaratory enjoined from violating the discharge of the debts of the Debtor, while he is still and forever in possession of Subject Property as it relates to them and with respect to the Debtor.

WHEREFORE, Plaintiff prays for judgment as follows:

<u>On The First, Fourth, And Fifth Claims:</u>

1.    For compensatory damages commensurate with just, fair, and equitable damages as has been set by precedent.

2.    For punitive damages from all the Defendants and each of them that a jury may find just and proper.

3.    For allowed out-of-pocket expenses according to proof.

On The Second And  Third Claims:

4.    Plaintiff  seeks sanctions prohibiting all  the Defendants from making  any attempts of  any kind whatsoever, and without exception, to collect the debt for Subject Property, or recover same through attempts to sell or take possession of same proper .

5.    For out-of-pocket expenses according to proof.

6.    For cost of  suit.

7.    For such other further relief that the court may deem just and proper.

Dated:  November 22, 2017

STEVEN ROSENBERG, Plaintiff,
pro se

///

///

## EXHIBIT LIST                           Page #

EXHIBIT -1-                              29

EXHIBIT -2-                              31

EXHIBIT -3-                              34

EXHIBIT -4-                              36

EXHIBIT -5-                              44

EXHIBIT -6-                              46

EXHIBIT -7-                              51

EXHIBIT -8-                              63

EXHIBIT -9-                              68

EXHIBIT -10-                             71

# EXHIBIT  -1-

Recording requested by:

When recorded mail to:

Indymac Bank FSB
6900 Beatrice Drive
Kalamazoo, MI 49009

08/12/08
**2008145795**

Space above this line for recorders use

TS # CA-08-153268-DL          Order # E819844          Loan # 3002889591
                                                       Investor No. 6146077

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

IndyMac Bank F.S.B.

all beneficial interest under that certain Deed of Trust dated 3/1/2007 executed by **ISADORE
ROSENBERG, A WIDOWER**, as Trustor(s) to FIDELITY NATIONAL TITLE COMPANY, as Trustee and
recorded as Instrument No. 20070575007, on 3/15/2007, in Book xxx, Page xxx of Official Records, in
the office of the County Recorder of LOS ANGELES County, CA together with the Promissory Note
secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated: 4/16/2008 7:55 AM

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR AMPRO MORTGAGE, A
DIVISION OF UNITED FINANCIAL MORTGAGE CORP.**

By: _____

Laura Hescott   - VP

State of MN
County of Dakota

On _____ before me, _____, a notary public
, personally appeared _____ Laura Hescott, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to this within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2009

# EXHIBIT  -2-

Z

Recording requested by:

When recorded mail to:
OneWest Bank, FSB
888 East Walnut Street
Pasadena, CA 91101



02/24/2010

*20100248050*

Space above this line for recorders use

TS # CA-08-153268-DL          Order # E819844          Loan # 3002889594
                                                       Investor No. 6146077

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**Deutsche Bank National Trust Company as Trustee for ALLIANCE 2007-OA1**

all beneficial interest under that certain Deed of Trust dated **3/1/2007** executed by **ISADORE ROSENBERG, A WIDOWER**, as Trustor(s) to **FIDELITY NATIONAL TITLE COMPANY**, as Trustee and recorded as Instrument No. 20070575007, on **3/15/2007**, in Book xxx, Page xxx of Official Records, in the office of the County Recorder of **LOS ANGELES** County, CA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

Page 1 of 2

13

TS# CA-08-153268-DL
Page 2

Effective Date: 4/16/2008 7:55 AM

IndyMac Bank F.S.B.

By: _____
        Erica A. Johnson-Seck
        Attorney In Fact

State of    Texas     )
County of   Travis    )

On _11/19/09_ before me, _____ a notary public
,personally appeared_____Erica A. Johnson-Seck_____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of _____Texas_____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> KRYSTLE GISSELLE PRICE
> Notary Public, State of Texas
> My Commission Expires
> June 15, 2011

Page 2 of 2

# EXHIBIT  -3-

Recording Requested By:
OCWEN LOAN SERVICING, LLC

Temp Doc Number:10367432

Batch Number:6734733

When recorded return to:
Security Connections / WPB
240 Technology Drive
Idaho Falls, ID 83401

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #:7191854418 "LAZAROVITS" ~WPB
SELLER'S LENDER ID#: NW 24044.1
OLD SERVICING #: 1005003072

For Value Received, FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL
BANK, F.S.B. hereby grants, assigns and transfers to DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE
FOR INDYMAC INDX MORTGAGE LOAN TRUST 2005-AR1, MORTGAGE PASS-THROUGH CERTIFICATES SERIES
2005-AR1 at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL
33409 all its interest under that certain Deed of Trust dated 11/24/2004 , in the amount of $648,000.00, executed by
MOSHE LAZAROVITS AND SARIT LAZAROVITS, HUSBAND AND WIFE AS JOINT TENANTS to MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR INDYMAC BANK, F.S.B. A
FEDERALLY CHARTERED SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS and Recorded: 12/02/2004 as
Instrument No.: 04-3118060 in the County of Los Angeles, State of California.

In witness whereof this instrument is executed.

This assignment is made without recourse, representation
or warranty, express or implied, by the FDIC in its
corporate capacity or as Receiver.

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, F.S.B.
On ___MAR 1 8 2015___

Jon Dickerson
Attorney in Fact

*RBM'RRZIGMAC'01/26/2015 11:07:18 AM* GMAC40GMACA00000000000000445D147* CALOS A*7191854418 CASTATE_TRUST_ASSIGN_ASSN 'LC8'LC8GMAC*

D

36 35

# EXHIBIT  -4-

HOWARD C. RILE, JR.

*Forensic Document Examiner*

AMERICAN SOCIETY OF
QUESTIONED DOCUMENT EXAMINERS

AMERICAN ACADEMY OF
FORENSIC SCIENCES

100 OCEANGATE, SUITE 670
LONG BEACH, CALIFORNIA 90802-4312
TEL: (562) 901-3376
FAX: (562) 901-3378
E-MAIL: HCRODE@AOL.COM

FORMERLY AFFILIATED WITH
HARRIS & HARRIS

DIPLOMATE, AMERICAN BOARD OF
FORENSIC DOCUMENT EXAMINERS

July 23, 2009

83098R

**VIA PERSONAL DELIVERY**

Steven Mark Rosenberg
15814 Septo Street
North Hills, CA  91343

SIGNATURE REPORT

Re:    Estate of Isadore Rosenberg

Dear Mr. Rosenberg:

Pursuant to your request, I have examined:

1.  Certified true copy of an Abandonment of Homestead dated March 5, 2007,
    recorded as Instrument Number 20070575005 in Los Angeles County on
    March 15, 2007;

2.  Certified true copy of a Grant Deed dated March 5, 2007, recorded as
    Instrument Number 20070575006 in Los Angeles County on March 15, 2007;

3.  Certified true copy of a Deed of Trust dated March 5, 2007, with an
    Adjustable Rate Balloon Rider also dated March 5, 2007, recorded as
    Instrument Number 20070575007 in Los Angeles County on March 15, 2007;

4.  Redacted photocopy of notary log entries corresponding to the above three
    documents for notary R. D. Salazar dated March 5, 2007;

5.  Photocopy of an Amended Escrow Instruction dated March 5, 2007.

Specifically in question on each of these documents is the purported signature of

Isadore Rosenberg.  Attached as Exhibits A and B are copies of the Abandonment of Homestead

Declaration Exhibit B

Steven Mark Rosenberg                    2                        July 23, 2009

and Grant Deed.  Attached as Exhibit C are copies of the first and signature pages of the Deed of

Trust and the signature page of the Adjustable Rate Rider.  Attached as Exhibit D is a copy of the

notary log pages.  Attached as Exhibit E is a copy of the Amended Escrow Instruction.

    Submitted and identified as bearing the acknowledged genuine signature of

Isadore Rosenberg were:

1. Photocopy of California Driver License D0572742 dated May 20, 1978;

2. California Driver License D0572742 dated May 3, 1990;

3. Photocopy of a Health Insurance card dated May 1, 1983;

4. Original report card dated January 29, 1960;

5. Original of Isadore and Norma P. Rosenberg Trust dated May 4, 1990;

6. Original Individual Grant Deed dated May 4, 1990, recorded as Instrument Number 90-847083 on May 8, 1990;

7. NCR copy of Cemetary Purchase Agreement dated August 29, 1996;

8. Original check number 4029 dated November 6, 1996;

9. Machine copy of a Customer Account Transfer Form dated November 25, 1999;

10. Copy of an Affidavit of Domicile notarized March 2, 2000;

11. Machine copy of a Third Party Trading Authorization dated May 8, 2000;

12. Two original checks, numbers 1332 and 1334, both dated April 5, 2001;

13. Original check number 2332 dated April 4, 2004;

14. Fax copy of a Statement of No Loss dated June 20, 2004;

15. Copy of a Conditions of Admission dated October 21, 2005;

Steven Mark Rosenberg                    3                      July 23, 2009

16.   Patient Authorization dated October 21, 2005;

17.   Fax copy of a Transfer/1035 Exchange dated March 4, 2007;

18.   Machine copies of four checks consisting of:

    a.   check number 1597 dated January 3, 2007

    b.   check number 1606 dated January 29, 2007;

    c.   check number 1644 dated March 15, 2007;

    d.   check number 1521 dated May 21, 2007.

Attached as Exhibit F are photocopies of the above described documents.

As a result of the examination and analysis, my observations are as follows:

1.   The evaluation of original signatures is a three-step procedure. The first step is to determine if the purported original ink signature is, in fact, a signature written by a human and not a machine reproduction. In the second step, the overall spontaneity or naturalness of the original disputed signature is evaluated. The purpose of this is to determine if one is dealing with handwriting as opposed to a tracing or a slowly written simulation. The third step involves the comparison of the overall execution and design of the questioned signature to a verified representative sampling of the individual's signature.

2.   There are intrinsic limits in the examination of copies rather than original documents. Copies are subject to manipulation that may not always be detectable. Additionally, subtle details that are of significance in evaluating signatures are obscured. The assumption is made in this report that the copies provided depict the physical evidence to be found on the original documents. While copies are not the best evidence, they can be of value if their limitations are recognized. Should the originals become available, I would reserve the right to review them prior to testimony.

3.   With respect to evaluating copied reproductions of signatures, if there are gross differences in terms of design and construction between the questioned and known signatures, that is generally not the fault of the copy process.

Steven Mark Rosenberg                    4                    July 23, 2009

Consequently, an opinion that the signature is either not genuine or probably not genuine would be justified. If, on the other hand, there is agreement in terms of execution and design, and no blatant evidence of tracing or manipulation, the document may be what it purports to be and the signature may be genuine. The possibility of a carefully executed manipulation or simulation cannot be precluded. The only way to reach a definite opinion that the signature and document is authentic is to examine the original of the document in question.

4.   All of the submitted questioned documents are copies. I cannot completely evaluate the execution of the signatures. I can evaluate the individual letter design and overall construction.

5.   Bearing the above limitations in mind, I intercompared all of the submitted exemplars for Isadore Rosenberg. Attached as Exhibit G is an enlarged composite photocopy showing four of the six questioned signatures. In terms of overall design and construction, the six questioned signatures are consistent with being the work of one writer.

6.   I intercompared all of the submitted exemplars for Isadore Rosenberg, which are dated from 1960 through 2007. His signature throughout the 47-year-time period covered by the exemplars remained remarkably consistent in terms of overall design and construction. Mr. Rosenberg's signature was a complicated design executed in a spontaneous manner. On most of his checks, Mr. Rosenberg used a contraction, "I Rosenberg." The most proximate exemplar to the March 5, 2007 date on all six of the questioned documents [Exhibits A through E] are the copies of the four checks dated from January 3 through May 21, 2007 and the Transfer/1035 Exchange (known signatures #17 and #18, Exhibit F). The Transfer/1035 Exchange is dated March 4, 2007, the day before the date on all six questioned signatures. Attached as Exhibit H is a composite photocopy showing a sampling of the submitted exemplars.

7.   I next intercompared all of the six questioned Isadore Rosenberg signatures to his submitted exemplars. Comparing the questioned to all of the submitted exemplars, I observed what I consider to be significant consistent differences between the questioned and known signatures. Among the features that I considered significant were the "sad" combination in "Isadore," the capital "R" in "Rosenberg," and the "osen" combination in "Rosenberg."

Steven Mark Rosenberg                    5                    July 23, 2009

8.    I next examined and compared the handwriting and signature in the jurats on
the Abandonment of Homestead, Grant Deed and Deed of Trust to the
certified true copy of the Surety Bond for notary R. D. Salazar dated January
28, 2004. Attached as Exhibit I is a copy of the certified copy of the Surety
Bond. The handprinted name and signature of R. D. Salazar on the three
jurats and the bond were in very close agreement.

## O P I N I O N

After due consideration, and bearing in mind the limitations imposed by the

examination of copies, my opinions are as follows:

1.    The purported signature of Isadore Rosenberg on the Abandonment of

Homestead, Grant Deed, Deed of Trust, Adjustable Rate Rider, notary log, and Amended Escrow

Instruction described and copies attached as Exhibits A through E, and the exemplars attributed

to him, were not written by the same individual. The differences observed in the questioned and

known signatures cannot reasonably be explained as caused by the copy process(es).

2.    The handprinting and signature of R. D. Salazar on the jurats for the

Abandonment of Homestead, Grant Deed, and Deed of Trust, and on the Surety Bond were very

probably written by the same individual.

All of the submitted materials are being returned with this report by personal

delivery.

Respectfully submitted,

Howard C. Rile, Jr.

HCR:nad

## DECLARATION OF HOWARD C. RILE, JR.

1       ·     I, Howard C. Rile, Jr., having knowledge of the following facts, declare the same to be true.

         My qualifications as a forensic document examiner are set forth in the attached resume, which is marked Exhibit A and incorporated herein by reference.

         I was retained by Steven Mark Rosenberg to examine documents in connection with the Estate of Isadore Rosenberg. A copy of my report, based upon said examination, is attached, marked Exhibit B, and incorporated herein by reference.

         I have first-hand knowledge of the matters stated above, and if called as a witness, I could and would testify competently thereto under oath.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I am signing this declaration on July _____, 2009 at Long Beach, California.

Howard C. Rile, Jr.

DECLARATION OF HOWARD C. RILE, JR.

American Society of Questioned
Document Examiners

American Academy of
Forensic Sciences

# Howard C. Rile, Jr.
*Forensic Document Examiner*

100 Oceangate, Suite 670
Long Beach, CA  90802-4312
Tel: 562/901-3376  ♦  Fax: 562/901-3378
Website: www.asqde.org/rile.htm   Email: hcrqdc@aol.com

Successor to Harris & Harris

Diplomate, American Board of
Forensic Document Examiners

## <u>RÉSUMÉ</u>

### HOWARD C. RILE, JR.
### FORENSIC DOCUMENT EXAMINER

I graduated from California State University at Los Angeles in 1968 with a Bachelor of Science degree in Chemistry. From 1968 to 1972, I worked as a chemist at the Jet Propulsion Laboratory in Pasadena, California. Since 1972, I have devoted full time to the study and examination of problems relating to disputed handwriting, signatures, typewriting, and identification of photocopiers, ink, and papers.

From 1972 to 1974, I was employed and trained at the firm of Harris and Harris, Examiners of Questioned Documents, at Los Angeles, California. Between 1974 and 1979, I was employed by the Los Angeles County Auditor-Controller as a document examiner; and from 1979 to 1983, I was the questioned document examiner for the State of Colorado at the Colorado Bureau of Investigation in Denver. Since 1983 I have been an independent, private examiner; I was affiliated with Harris and Harris until 1996.

I am certified by and past president (1997-1999) of the American Board of Forensic Document Examiners, Inc. I am also a member of and past president (2006-2008) of the American Society of Questioned Document Examiners, Inc. I am a member and ex-Membership/Credentials Chairman of the Southwestern Association of Forensic Document Examiners. I am a member of the Canadian Society of Forensic Science; and the Document Section of the American Academy of Forensic Science, and the ASTM. I revised a chapter on signatures in *Scientific Examination of Questioned Documents, 2nd Edition.*

I have qualified and testified as an expert witness in my specialty in more than 500 cases involving criminal and civil matters in federal and/or state courts in California, Arizona, Colorado, Nevada, Hawaii, Kansas, New York, and Wyoming.

Our office and laboratory are equipped with microscopes, cameras, a digital and photographic darkroom, ESDA, a Video Scanning Comparator (VSC-4), measuring devices, and other specialized instruments. We maintain a library and extensive reference files.

References and a listing of cases in which I have testified are available upon request.

Declaration Exhibit A

# EXHIBIT  -5-



## JESSE WHITE
### SECRETARY OF STATE

**CORPORATION FILE DETAIL REPORT**

| | | | |
|---|---|---|---|
| File Number | 54233566 | | |
| Entity Name | ALLIANCE BANCORP, INC. | | |
| Status | DISSOLVED | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 04/30/1986 | State | ILLINOIS |
| Agent Name | VACATED | Agent Change Date | 10/31/2007 |
| Agent Street Address | VACANT | President Name & Address | STEVE KHOSHABE 815 COMMERCE DRIVE #100 OAK BROOK 60523 |
| Agent City | OAK BROOK | Secretary Name & Address | INVOLUNTARY DISSOLUTION 02 01 08 |
| Agent Zip | 60523 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 04/05/2007 | For Year | 2007 |
| Assumed Name | INACTIVE - AAA UNITED FINANCIAL MORTGAGE INACTIVE - PORTLAND MORTGAGE COMPANY INACTIVE - MORTGAGE SERVICE AMERICA INACTIVE - VISION MORTGAGE GROUP INACTIVE - AMPRO MORTGAGE INACTIVE - UNITED FINANCIAL MORTGAGE CORP. | | |
| Old Corp Name | 12/16/1993 - UNITED FINANCIAL MORTGAGE, CORP. 12/14/2006 - UNITED FINANCIAL MORTGAGE CORP. | | |

Return to the Search Screen

# EXHIBIT  -6-

## FREE WRITING PROSPECTUS

The issuing entity has filed a registration statement (including a prospectus) with the SEC for the offering to which this free writing prospectus relates. Before you invest, you should read the prospectus in that registration statement and other documents the issuing entity has filed with the SEC for more complete information about the issuing entity and this offering. You may get these documents for free by visiting EDGAR on the SEC Web site at www.sec.gov. Alternatively, the issuing entity, any underwriter or any dealer participating in the offering will arrange to send you the prospectus if you request it by calling toll-free 1-800-227-2275 ext. 2663.

This free writing prospectus is not required to contain all information that is required to be included in the prospectus and the prospectus supplement.

The information in this free writing prospectus is preliminary and is subject to completion or change.

The information in this free writing prospectus, if conveyed prior to the time of your commitment to purchase, supersedes information contained in any prior similar free writing prospectus relating to these securities.

This free writing prospectus is not an offer to sell or a solicitation of an offer to buy these securities in any state where such offer, solicitation or sale is not permitted.

$334,094,000
(Approximate)

**Alliance Bancorp**
Servicer and Sponsor

**Alliance Securities Corp.**
Depositor

**Alliance Bancorp Trust 2007-OA1**
Issuing Entity
**Mortgage Backed Pass-Through Certificates, Series 2007-OA1**

You should consider carefully the risk factors beginning on page 10 in this free writing prospectus.

**The Issuing Entity**

The issuing entity will be a trust consisting of a pool of adjustable-rate, first-lien, one-to-four family residential mortgage loans which may be subject to negative amortization.

The issuing entity will issue fifteen classes of certificates, twelve of which are offered under this free writing prospectus.

**Credit Enhancement**

The offered certificates will have credit enhancement in the form of excess interest, overcollateralization and subordination of certain classes of certificates.

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or passed upon the adequacy of this free writing prospectus. Any representation to the contrary is a criminal offense.

The Attorney General of the State of New York has not passed on or endorsed the merits of this offering. Any representation to the contrary is unlawful.

**Barclays Capital Inc.**
The date of this Free Writing Prospectus is May 25, 2007.

DVERSARY PROCEEDING-S.ROSENBERGPage

### European Economic Area

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a "**Relevant Member State**"), the Underwriter has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the "**Relevant Implementation Date**") it has not made and will not make an offer of certificates to the public in that Relevant Member State prior to the publication of a prospectus in relation to the certificates which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of certificates to the public in that Relevant Member State at any time:

(a)     to legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities;

(b)     to any legal entity which has two or more of (1) an average of at least 250 employees during the last financial year; (2) a total balance sheet of more than €43,000,000 and (3) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(c)     in any other circumstances which do not require the publication by the issuing entity of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression "offer of certificates to the public" in relation to any certificates in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the certificates to be offered so as to enable an investor to decide to purchase or subscribe the certificates, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression "**Prospectus Directive**" means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

### United Kingdom

The Underwriter has represented and agreed that:

(a)     it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of Section 21 of the FSMA) received by it in connection with the issue or sale of the certificates in circumstances in which Section 21(1) of the FSMA does not apply to the issuing entity; and

(b)     it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to the certificates in, from or otherwise involving the United Kingdom.

Important notice about information presented in this free writing prospectus and the accompanying prospectus

You should rely on the information contained in this document. We have not authorized anyone to provide you with different information.

We provide information to you about the offered certificates in two separate documents that provide progressively more detail:

- the accompanying base prospectus, which provides general information, some of which may not apply to this series of certificates; and

- this free writing prospectus, which describes the specific terms of this series of certificates.

The Depositor's principal offices are located at 1000 Marina Boulevard, Suite 100, Brisbane, California 94005 and its phone number is (650) 952-1000.

**Table of Contents**

**Free Writing Prospectus**

SUMMARY OF FREE WRITING PROSPECTUS
RISK FACTORS
THE MORTGAGE POOL
STATIC POOL INFORMATION
THE ISSUING ENTITY
THE DEPOSITOR
THE SPONSOR AND THE SERVICER
PERMITTED INVESTMENTS
YIELD ON THE CERTIFICATES
DESCRIPTION OF THE CERTIFICATES
POOLING AND SERVICING AGREEMENT
SERVICING OF MORTGAGE LOANS
FEDERAL INCOME TAX CONSEQUENCES
STATE AND OTHER TAX CONSEQUENCES
SECONDARY MARKET
LEGAL OPINIONS
LEGAL PROCEEDINGS
AFFILIATIONS, RELATIONSHIPS AND RELATED TRANSACTIONS
RATINGS
LEGAL INVESTMENT
ERISA CONSIDERATIONS
AVAILABLE INFORMATION
GLOSSARY
ANNEX I
ANNEX II

**SUMMARY OF FREE WRITING PROSPECTUS**

The following summary is a very broad overview of the offered certificates and does not contain all of the information that you should consider in making your investment decision. To understand all of the terms of the offered certificates, read carefully this entire free writing prospectus and the accompanying prospectus. A glossary is included at the end of this free writing prospectus. Capitalized terms used but not defined in the glossary at the end of this free writing prospectus have the meanings assigned to them in the glossary at the end of the prospectus.

| | |
|---|---|
| Issuing Entity | Alliance Bancorp Trust 2007-OA1 . |
| Title of Series | Alliance Securities Corp., Mortgage Backed Pass-Through Certificates, Series 2007-OA1. |
| Cut-off Date | May 1, 2007. |
| Closing Date | May 30, 2007. |
| Mortgage Loans | The mortgage loans will be adjustable-rate, first-lien, one-to-four family residential mortgage loans which may be subject to negative amortization. |
| Depositor | Alliance Securities Corp., an affiliate of Alliance Bancorp. |
| Sponsor | Alliance Bancorp. |
| Servicer | Alliance Bancorp. |
| Subservicer and Backup Servicer | GMAC Mortgage, LLC. |
| Securities Administrator | Wells Fargo Bank, N.A. |

EDGAR ONLINE – ALLIANCE BANCORP TRUST 20 ... – FWP – 5/29/2007                     9/7/09 12:11 PM

| | |
|---|---|
| Master Servicer | Wells Fargo Bank, N.A. |
| Trustee | Deutsche Bank National Trust Company. |
| Custodian | Deutsche Bank National Trust Company. |
| Distribution Date | Distributions on the offered certificates will be made on the 25 th day of each month or, if the 25 th day is not a business day, on the next business day, beginning in June 2007. |
| Offered Certificates | The classes of offered certificates and their pass-through rates and certificate principal balances are set forth in the table below. |

DVERSARY PROCEEDING-S.ROSENBERGPage

# EXHIBIT  -7-

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Alliance Mortgage Investments, Inc., | ) | Case No. 07-10941 (CSS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Chapter 7 |
| | ) | |
| Alliance Bancorp, | ) | Case No. 07-10942 (CSS) |
| | ) | |
| Debtor. | ) | Objection deadline: February 2, 2009 at 4:00 p.m. |
| _____ | ) | |
| | ) | Hearing date: February 9, 2009 at 10:00 a.m. |

## MOTION FOR ENTRY OF ORDER AUTHORIZING SALE OF CERTAIN MORTGAGE LOANS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE

Tracy L. Klestadt, permanent chapter 7 trustee ("Trustee") appointed in the above-captioned bankruptcy cases, by his co-counsel, Klestadt & Winters, LLP and Fox Rothschild LLP[1], hereby files his Motion for Entry Of An Order Authorizing Sale Of Certain Mortgage Loans Free And Clear Of All Liens, Claims, Encumbrances And Other Interests Pursuant To Sections 363(b), (f) and (m) Of The Bankruptcy Code (the "Motion"), and in support thereof respectfully represents:

### Case Background

1.     On July 13, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief with this Court under chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases").

_____

[1] As more fully set forth in the application of the Chapter 7 Trustee for Authority to Employ Fox Rothschild LLP as Co-counsel to the Chapter 7 Trustee, nunc pro tunc to December 18, 2008 [Docket nos. 262; 517], Jeffrey M. Schlerf and Eric M. Sutty, the attorneys primarily responsible for this engagement, recently left Bayard, P.A. and joined Fox Rothschild LLP ("Fox"). Fox's retention application is pending.

WM1A 918134v2 01/20/09

2.      On July 16, 2007, Montague S. Claybrook was appointed as interim chapter 7 trustee ("Interim Trustee") in the Chapter 7 cases of Alliance Bancorp ("AB"), Alliance Mortgage Investments, Inc. ("AMI") and Alliance Bancorp, Inc. ("ABI").

3.      By order of this Court dated September 12, 2007, the Trustee was appointed permanent chapter 7 trustee in the Chapter 7 cases of AB and AMI.

4.      No committee of unsecured creditors has been elected pursuant to section 705 of the Bankruptcy Code.

5.      AMI is a corporation, organized under the laws of the State of Delaware, with its principal place of business formerly located at 1000 Marina Boulevard #100, Brisbane, California 94005.

6.      AB is a wholly owned corporate subsidiary of AMI, organized under the laws of the State of California, with its principal place of business formerly located at 1000 Marina Boulevard #100, Brisbane, California 94005.

### Jurisdiction

7.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Factual Background

8.      Prior to the Debtors' Chapter 7 filings, the Debtor AB was in the business of, among other things, mortgage loan origination and servicing. To maintain liquidity, the Debtor AB would sell and/or securitize the loans it originated to financial institutions and others.

2

9.      Shortly after his appointment, with the assistance of his financial advisors, FTI
Consulting, Inc., the Trustee learned that the debtor AB owned certain mortgage loans (the
"Mortgage Loans"). Upon information and belief, the Mortgage Loans were repurchased by AB
prior to the Petition Date pursuant to terms of various loan purchase agreements under which AB
had previously sold the Mortgage Loans to third parties. To the best of the Trustee's knowledge,
information and belief, no party to such loan purchase agreements have asserted any continuing
interest in the Mortgage Loans that were repurchased by AB.

10.     Wells Fargo Bank, National Association ("WF"), in its capacity as Administration
Agent, Term A Collateral Agent, and Term B Collateral Agent (the "Agent") and the other Pre-
Petition Lenders, from time to time parties to that certain Term Loan Agreement dated as of June
9, 2005 (as amended and/or modified from time to time, the "Pre-Petition Credit Agreement"),
assert fully perfected security interests and liens in substantially all the assets of the Debtors.

11.     Since the Petition Date, the Loans have been serviced by GMAC Mortgage
pursuant to a servicing agreement entered into between the debtor AB and GMAC Mortgage
prior to the Petition Date.

12.     The Trustee has actively sought to sell the Loans since his appointment; however,
his efforts have been severely hampered by his lack of books and records, and in addition, the
loan documents, e.g., promissory notes and mortgages ("Loan Documents") evidencing the
Mortgage Loans have never been located. The inability of the Trustee to deliver the Loan
Documents to prospective purchasers has proven to be a significant difficulty, as many
prospective purchasers of the Loans were unwilling to purchase the Mortgage Loans without the
Loan Documents.

3

13.    Notwithstanding this difficulty, the Trustee persisted in his efforts to identify parties who may have an interest in purchasing the Loans. In addition to contacts made by the Trustee's financial advisors in these cases, FTI Consulting, the Trustee offered to surrender the Mortgage Loans to WF on the condition that WF agree to take over the servicing obligations for the loans. WF declined to do so.

14.    Eventually, the Trustee received an offer for the purchase of the Mortgage Loans for ten percent (10%) of the unpaid principal balance of the Mortgage Loans, or approximately $194,310, as of January 9, 2009, from Hexagon Mortgage LLC or its designee (the "Purchaser") on the terms and conditions set forth in the Mortgage Loan MLPA (the "MLPA") to be executed substantially in the form annexed hereto as Exhibit A. The sale of the Mortgage Loans to Purchaser is conditioned only upon Purchaser's ability to obtain title insurance for the Mortgage Loans evidencing a valid first or second lien as the case may be, and other standard closing conditions. The sale of the Mortgage Loans shall be on a servicing-released basis, i.e., the servicing of the Mortgage Loans will be transferred from GMAC to a servicer to be designated by the Purchaser.

15.    The Trustee believes that under the circumstances, the offer made by Purchaser is fair and reasonable, particularly in light of current market conditions, the nature of the Mortgage Loans, and the lack of Loan Documents. Therefore, by this Motion, the Trustee requests that the Court approve the sale of the Mortgage Loans pursuant to the MLPA, without recourse, on an as-is, where-is basis, with no representations or warranties of any kind by the Trustee, free and clear of all liens, claims, encumbrances and other interests pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code.

4

WMIA 918134v2 01/20/09

Case 1:17-ap-01096-VK   Doc 1   Filed 11/27/17   Entered 11/27/17 15:02:20   Desc
Case 07-10943-CSS   Doc 499-1   Filed 07/29/09   Page 6 of 84
Main Document   Page 56 of 75

Case 07-10942-CSS   Doc 519   Filed 01/20/09   Page 5 of 11

### Nature Of The Mortgage Loans

16.     A schedule of the Mortgage Loans that the Trustee proposes to sell by this Motion is annexed hereto as <u>Exhibit B</u>.  In summary, as of January 9, 2009, there were twenty one (21) Mortgage Loans, with an aggregate unpaid principal balance ("UPB") of approximately $1,943,102. Of the twenty-one (21) Mortgage Loans, five (5) are first priority liens and mortgages on the property securing the Mortgage Loans, and sixteen (16) are second priority liens and mortgages on the property securing the Mortgage Loans.[2]

17.     According to data provided by GMAC Mortgage, four (4) of the Mortgage Loans are current, one (1) of the Mortgage Loans is currently thirty (30) days delinquent; one (1) of the Mortgage Loans is sixty (60) days delinquent; three (3) of the first-lien Mortgage Loans are currently in foreclosure; one of the Mortgage Loans is in REO; and eleven (11) of the Mortgage Loans have been charged off due to the first priority lien holder have foreclosed on the property securing the Mortgage Loans and there having been insufficient proceeds to satisfy such first priority liens. As of the date hereof, GMAC, pursuant to the terms of the Subservicing Agreement, has been pursuing deficiencies against the borrowers of the nine Mortgage Loans which have been charged off.

### Salient Terms Of The MLPA

18.     The MLPA contains the following salient terms and conditions[3]:

(a)   The Trustee, will sell, and Purchaser will purchase, all of the Trustee's right, title and interest in the Mortgage Loans, without recourse, as-is, where-is, and

---

[2] Of the five first priority lien mortgages, JP Morgan Chase Bank has asserted that it purchased one of the loans [Alliance #110001287, GMAC #0359487985] from AB prior to the Petition Date. The Trustee has requested from JP Morgan Chase Bank evidence that it purchased and paid consideration for said loan, but to date, has not received evidence satisfactorily responding to the Trustee's request. If JP Morgan Chase Bank provides such evidence prior to the return date hereon, the Trustee will withdraw this loan from the sale contemplated hereby, to which Purchaser has consented.

5

without any surviving representations or warranties of any kind, free and clear
of all liens, claims, encumbrances or other interests pursuant to sections
363(b), (f) and (m) of the Bankruptcy Code;

(b) The Purchase Price shall be ten percent (10%) of the aggregate UPB of the
Mortgage Loans as of the Closing Date;

(c) The Purchase Price shall be paid in full in cash on the Closing Date;

(d) The sale of the Mortgage Loans to Purchaser shall be subject to higher and
better offers; provided, however, that if the Purchaser is not ultimately the
purchaser of the Mortgage Loans due to a higher and better offer having been
received, then Purchaser shall be entitled to up to $10,500 for actual out-of-
pocket expenses incurred (the "Expense Reimbursement") plus a $20,000
break-up fee (the "Break-up Fee"), payable from, and only from, the proceeds
of sale of the Mortgage Loans, as an expense reimbursement.

## Competitive Bidding

19.    In addition, since the proposed sale is subject to higher and better offers, the
Trustee has agreed with the Purchaser to apply the following procedures for any competing
offers for the Mortgage Loans[4]:

### Characteristics of Competing Offers:

(a) Any competing offer must be for all of the Mortgage Loans to be purchased
by the Purchaser, as-is, where-is, with no representations or warranties by the
Trustee.

---

[3]  The following is a summary only, and is presented herein only for the convenience of the Court. To the extent any
provision of the summary is inconsistent with the terms of the MLPA, the terms of the MLPA shall control.
[4]  These procedures are by agreement of the Trustee and the Purchaser.  Under the circumstances of these cases and
the nature of the sale, the Trustee is not seeking prior approval of bidding procedures by this Court.

6

Case 1:17-ap-01096-VK  Doc 1  Filed 11/27/17  Entered 11/27/17 15:02:20  Desc
Case 07-10943-CSS  Doc 499-1  Filed 07/24/12  Page 8 of 64
Main Document  Page 58 of 75

Case 07-10942-CSS  Doc 519  Filed 01/20/09  Page 7 of 11

(b) Any competing offer must be for the Purchase Price plus (i) an overbid of $25,000 and (ii) an amount equal to the Expense Reimbursement plus the Break-Up Fee.

(c) Any competing offeror must submit a written bid to the Trustee on a form substantially similar to the MLPA (with any proposed different terms to be blacklined to the MLPA) ("Competing Bid").

<u>Bid Deadline:</u>

(d) on or before February 5, 2009 at 5:00 p.m. (prevailing eastern time) ("Bid Deadline"). Any Competing Bid must be accompanied by an earnest-money deposit equal to 20% percent of the Competing Bid.

<u>Auction:</u>

(e) In the event a Competing Bid is received, an auction shall be held on February 9, 2009 at 9:00 a.m. (prevailing eastern time) at the offices of Fox Rothschild LLP, 919 North Market Street, Suite 1600, Wilmington, DE 19801.

<u>Sale Hearing:</u>

(f) The Trustee shall seek approval of the sale of the Mortgage Loans to the Purchaser or Competitive Bidder at a hearing to be held on February 9, 2009 at 10:00, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #6, Wilmington, Delaware 19801 (the "Sale Hearing"). The Sale Hearing may be adjourned without further notice except as announced in the Bankruptcy Court at the Sale Hearing.

### Relief Requested and Basis Therefor

20.    By this Motion, the Trustee is seeking entry of an order (the "Order", substantially in the form attached hereto as Exhibit C) under sections 105 and 363(b), (f) and (m) of the Bankruptcy Code authorizing the Trustee to enter into the MLPA.

### Sale Outside Ordinary Course Of Business

21.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...."

22.    A sale of assets pursuant to section 363(b) of the Bankruptcy Code should be authorized as long as the transaction is supported by sound business judgment. See, e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Trans World Airlines, Inc., No. 01-0056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

23.    Courts typically consider the following factors in determining whether a proposed sale satisfies the sound business judgment standard: (a) whether a sound business justification exists to support the transaction; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property proposed to be sold; and (d) whether the parties to the sale have acted in good faith. See Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (D. Del. 1987).

24.    A sound business purpose for the sale of assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of the assets for the

8

estate, its creditors or interest holders. See e.g. In re Abbotts Dairies of Pennsylvania, 788 F.2d
143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983). The primary goal of any
proposed sale of estate property is to maximize the proceeds received by the estate.

25.     The Trustee respectfully submits that the foregoing criteria are satisfied herein.
First, the Trustee submits that sound business justification exists for the sale of the Mortgage
Loans in that the Trustee was appointed to liquidate the Debtors' assets. Second, the Trustee
proposes to serve notice of the proposed sale on such parties as is required by the Bankruptcy
Code and Bankruptcy Rules at least twenty (20) days prior to the return date hereon, and in
addition, intends to publish notice of the sale in *National Mortgage News*, an industry
publication which reaches approximately 9,000 readers weekly in the mortgage industry (or in a
similar publication). The Trustee submits that such notice is more than adequate and is
imminently reasonable under the circumstances. Third, the Trustee believes that the Purchase
Price is fair and reasonable. This determination is based, inter alia, upon the Trustee's efforts to
sell the Mortgage Loans, the current economic climate and status of the mortgage industry, the
nature of the Mortgage Loans, and the Trustee's lack of Loan Documentation. Under these
circumstances, the Trustee believes that the sale of the Mortgage Loans at the Purchase Price is
the highest and best offer attainable. Moreover, the continuing deterioration of capital markets
and recessionary conditions make it possible, if not probable, that the value of the Mortgage
Loans is maximized by a sale as soon as reasonably practicable. Finally, the Trustee and
Purchaser have negotiated the terms of sale of the Mortgage Loans at arms-length and in good
faith.

### Sale Free And Clear Of Liens And Interests

26. The Trustee proposes to sell the Mortgage Loans free and clear of any and all liens, claims, encumbrances or other interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances or other interests, if any, attaching to the proceeds of sale of the Mortgage Loans.

27. Section 363(f) of the Bankruptcy Code allows for the sale of assets free and clear of liens, claims, encumbrances or interests if any one of the following are met: (i) applicable nonbankruptcy law permits sale of such property free and clear of such interests; (ii) such entity consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f) (2008).

28. To the best of the Trustee's knowledge, information and belief, no party other than WF, the Debtors' pre-petition lender, has asserted a lien or other interest in the Mortgage Loans. The Trustee believes that WF will consent to the sale of the Mortgage Loans on the terms set forth in the MLPA. Therefore, section 363(f) will be satisfied.

### Notice

29. Notice of the relief sought herein will be given to: (a) the Office of the United States Trustee; (b) any known prospective purchasers; (c) known holders of pre-petition liens against the Debtors' property; (d) the twenty (20) largest unsecured creditors of each of the Debtors; and (e) those parties requesting notice by filing of a notice of appearance in accordance with Bankruptcy Rule 2002. The Trustee will also publish a notice of the sale proposed hereby in *National Mortgage News* or similar publication. The Trustee submits that such notice is

targeted to reach all parties who may have an interest in the Mortgage Loans or may be interested in submitting a competing offer, and submits that no other or further notice need be given.

## No Prior Request

30.     No previous motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Trustee respectfully requests that this Court grant the relief requested herein and such other relief as may be just and proper.

Dated:      Wilmington, Delaware
            January 20, 2009

                                            FOX ROTHSCHILD LLP

                                            By: _____
                                            Jeffrey M. Schlerf (No. 3047)
                                            Eric M. Sutty (No. 4007)
                                            919 North Market Street
                                            16th Floor
                                            Wilmington, Delaware 19801
                                            (302) 654-7444

                                            -and-

                                            KLESTADT & WINTERS, LLP
                                            Tracy L. Klestadt
                                            Joseph C. Corneau
                                            292 Madison Avenue, 17th Floor
                                            New York, New York 10017
                                            Telephone no. (212) 972-3000

                                            Attorneys for Tracy L. Klestadt,
                                            Chapter 7 Trustee

WM1A 918134v2 01/20/09

11

# EXHIBIT  -8-



**FDIC**
Federal Deposit Insurance Corporation
550 17th Street, NW, Washington, DC 20429-9990                                      Legal Division

June 29, 2017

Steven Rosenberg
15814 Septo Street
North Hills, California 91343

RE: FDIC FOIA Log Number 17-0271

Dear Mr. Rosenberg:

This will respond to your Freedom of Information Act (FOIA) request received on May 25, 2017, in which you requested any FDIC power of attorney records that reference Jon Dickerson.

Enclosed please find copies of the records located by the FDIC (consisting of a total of 42 pages) which are responsive to your request. However, certain information in these records has been redacted pursuant to FOIA Exemptions 4 and/or 6, 5 U.S.C. §552(b)(4), and/or (b)(6).

Exemption 4 permits the withholding of trade secrets, and confidential or privileged commercial or financial information obtained from a person. Exemption 6 permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

You may contact me at 703-562-2067, or our FOIA Public Liaison, Acting FDIC Ombudsman Benjamin E. Vaughn, by email at BenVaughn@fdic.gov or telephone at 703-562-6040, for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the FDIC's General Counsel. Your appeal must be postmarked or electronically transmitted within 90 days of the date of the response to your request. Your appeal should be addressed to the FOIA/PA Group, Legal Division, FDIC, 550 17th Street, NW, Washington, D.C. 20429. Please refer to the log number and include any additional information that you would like the General Counsel to consider.

                                                      Sincerely,


                                                      Natasha Smith
                                                      Government Information Specialist

Page 40    03-2023    42564

## Request Form for Renewal - Limited Power of Attorney
### For Assuming Bank/Institution Employees

**1.   Renewal of Limited Power of Attorney:**

Is this a renewal? **Yes** _____        Justification **See attached** _____

Who is requesting this Renewal:

| Name | Chris Moore |
|------|-------------|
| Title | Director, Senior Counsel |

**2.   Receivership Information (Failed Bank)**

| Failed Bank Name | Indymac Bank, F.S.B. and IndyMac Federal Bank, FSB | Group 2 |
|------|------|------|
| Failed Bank City/State | Pasadena, California | |
| *Original Closing Date | IMB 7/11/08 and IMFB 3/19/09  Effective From: 8/3/16 | To: 8/3/16 |

**3.   Assuming Bank Information**

| Assuming Bank/Institution Name | CIT Bank, N.A.[1] |
|------|------|
| Street Address | 2900 Esperanza Crossing |
| City/State/Zip | Austin, TX 78758 |
| Phone Number(s) | 512.250.2798 |
| Assuming Bank Contact (the Individual providing the list of employees for the POA) | Christopher Moore |

**Assuming Bank Employee for the Power of Attorney (the employees are the Attorney-in-Fact(s))**
(**need at least one employee, if more than ten employees LPOA will include an Exhibit)
~Do Not Include Titles~

| 1.  Employee Name | See attached list |
|------|------|
| 2.  Employee Name | |
| 3.  Employee Name | |
| 4.  Employee Name | |
| 5.  Employee Name | |
| 6.  Employee Name | |
| 7.  Employee Name | |
| 8.  Employee Name | |
| 9.  Employee Name | |
| 10. Employee Name | |

**4.   Billing Information for POA Recording**

| (Failed Bank Institution ID #) | 29730 |
|------|------|

**5.   After completing this form, please Email the form, as soon as possible to:**

(b)(6)    [_____] (customer service)

**6.   After Customer Service processes the Power of Attorneys, where should they be delivered?**

| Name of FDIC Requestor | |
|------|------|
| Contact Phone Number | |
| Email Address | |

OR, if requesting delivery to the Assuming Bank/Institution or other designation, please provide information below.

(***POA's will be sent via Overnight Delivery to assure delivery**)

| Name | Rebecca Marie |
|------|------|
| Street Address | 2900 Esperanza Crossing, 5th Floor |
| City/State/Zip | Austin, TX 78758 |
| (b)(6)  Phone & Email | 512-250-3719; |

[1] OneWest Bank merged with CIT Group and changed its name to CIT Bank, N.A.

Renewal Request for Limited Power of Attorney for Assuming Bank/Institution Employees 9/8/10 drw

Page 41

CIT Bank, N.A. employees requested to be attorneys in fact on IndyMac Bank, F.S.B. and IndyMac
Federal Bank, FSB LPOA:

Aaron Wade
Alisa Ashikyan
Ashley Stephenson
Bart Lerud
Bernadette Nelson
Darcy Peters
David Fawer
David Rodriguez
Emmett Myatt
Fran Varner
Jay Jones
JC San Pedro
Jeanie Caldwell
Jon Dickerson ✓
Kenneth E. Jancarz
Kurt Johnson
Louise Chavez
Mike Stanford
Sandy Schneider
Sean Costarell
Stephanie McQueen
Sue North
Sujata Raman

Renewal Request for Limited Power of Attorney for Assuming Bank/Institution Employees  9/8/16 dlw

Page 42

### Justification

We have undertaken a thorough review of our books, records, and existing loan files for all the Group 2 loans and believe we have completed assignments into the appropriate entity for both portfolios where appropriate, available, and where such a need for an assignment is known. However, in our mortgage servicing activities, we continue to be faced with legal and technical challenges, such as borrower bankruptcies and enjoined proceedings, requiring we recreate a chain of title based on factors that cannot be identified in advance without obtaining an updated title report on every loan serviced. It is cost prohibitive to obtain an updated loan level title report for each loan we are servicing, which, again, would be the only way to ensure a clean chain of title through all prior transfers. Absent a renewed power of attorney, to avoid the risk of jeopardizing our lien position and to enable the bank to transfer title when legally permissible we would be obliged to approach the FDIC for each instance requiring a signature on an assignment or other instrument of transfer or conveyance where, despite having exercised considerable efforts, we find at the commencement of collection or bankruptcy activities that we do not have a recorded assignment into the appropriate entity. See below for the form of signature block in the new LPOAs, as we request signature authority for both IndyMac Bank and IndyMac Federal Bank.

The form which the Attorney(s)-in-Fact shall use for endorsing promissory notes or preparing allonges to promissory notes is as follows:

> Pay to the order of
> CIT Bank, N.A.
> Without Recourse
>
> FEDERAL DEPOSIT INSURANCE CORPORATION as
> Receiver for IndyMac Federal Bank, FSB, Pasadena, California,
> And IndyMac Bank, F.S.B., Pasadena, California

All other documents of assignment, conveyance, or transfer shall contain this sentence: "This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver."

*Renewal Request for Limited Power of Attorney for Assuming Bank/Institution Employees 9/8/10 dtw*

# EXHIBIT  -9-

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO VALLEY DIVISION

IN RE:                                                     CASE NO.: 1:17-bk-11748-VK
                                                                          **CHAPTER 7**
Steven Mark Rosenberg,

   Debtor.

_____/

### REQUEST FOR SERVICE OF NOTICES

**PLEASE TAKE NOTICE THAT,** on behalf of DEUTSCHE BANK NATIONAL

TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP MORTGAGE BACKED

PASS-THROUGH CERTIFICATE SERIES 2007-OA1 ("Secured Creditor"), and pursuant to

Rule 2002 of the Federal Rules of Bankruptcy Procedure, the undersigned requests all notices

given or required to be given and all papers required to be served in this case to creditors, any

creditors committees, and any other parties-in-interest, be sent to and served upon the

undersigned counsel and the following be added to the Court's Master Mailing List:

### ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
### BANKRUPTCY DEPARTMENT
### 6409 CONGRESS AVE., SUITE 100
### BOCA RATON, FL 33487

> Robertson, Anschutz & Schneid, P.L.
> Authorized Agent for Secured Creditor
> 6409 Congress Ave., Suite 100
> Boca Raton, FL 33487
> Telephone: 561-241-6901
> Facsimile: 561-997-6909
> By: /s/Sean Ferry
> Sean Ferry, Esquire
> Email: sferry@rasflaw.com

17-080192 - TcU
ROSENBERG, ESTATE OF
Request for Service
Page 1

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 9, 2017, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been

served via CM/ECF or United States Mail to the following parties:

CACERES & SHAMASH LLP
8200 WILSHIRE BLVD STE 400
BEVERLY HILLS, CA 90211

STEVEN MARK ROSENBERG
106 1/2 JUDGE JOHN AISO ST #225
LOS ANGELES, CA 90012

DIANE C WEIL (TR)
1900 AVENUE OF THE STARS, 11TH FLOOR
LOS ANGELES, CA 90067

UNITED STATES TRUSTEE (SV)
915 WILSHIRE BLVD, SUITE 1850
LOS ANGELES, CA 90017

Robertson, Anschutz & Schneid, P.L.
Authorized Agent for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/Sean Ferry
Sean Ferry, Esquire
Email: sferry@rasflaw.com

17-080192 - TeU
ROSENBERG, ESTATE OF
Request for Service
Page 2

# EXHIBIT -10-

TS No.: 2015-04438-CA

October 17, 2017

VIA First Class Mail
VIA Certified Mail (return receipt requested)
Certified Number:
Reference Code:

Isadore Rosenberg
15814 Septo Street, North Hills Area, CA
91343

Property Address
15814 Septo Street, North Hills Area, CA
91343

Trustee's Sale No.:       2015-04438-CA
Re:                       Notice to Borrower of Postponement of Trustee's Sale Pursuant
                          to Civil Code § 2924(a)(5)

## FORECLOSURE SALE HAS BEEN POSTPONED

Notice is hereby given by Western Progressive, LLC, that the Trustee's Sale set for 10/18/2017,
at the hour of 11:00 AM, at BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER
PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA 91766
, County of Los Angeles, State of California, **has been postponed and rescheduled.**

New Foreclosure Sale Date:
The sale is now scheduled to occur on 11/28/2017 at the hour of 11:00 AM, at BEHIND THE
FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA,
POMONA, CA 91766
, County of Los Angeles, State of California, for the property located at the address above, as
more fully described on said Security Instrument.

The real property is secured by a Deed of Trust dated 03/01/2007, and recorded 03/15/2007,
under Instrument No. 20070575007, Book ---, Page ---, records of Los Angeles County,
California, from Isadore Rosenberg, A Widower, as Grantors, to FIDELITY NATIONAL TITLE
COMPANY, as Trustee, to secure an obligation in favor of AMPRO MORTGAGE, A
DIVISION OF UNITED FINANCIAL MORTGAGE CORP., As Lender, Mortgage Electronic
Registration Systems, Inc., As Beneficiary ., as Beneficiary ("Security Instrument").

Stay Informed About Sale Activity
YOU MAY NOT RECEIVE WRITTEN NOTICE OF POSTPONEMENT EACH TIME THE
TRUSTEE'S SALE IS POSTPONED. To ensure you have current information about the sale, we
encourage you to monitor all sale activity and attend the sale to protect your interest. The sale
may proceed without further notification.

Version 1.1 CA PPLTR 0417                                                      Page 1 of 2





B1040 (FORM 1040) (12/15)

**RECEIVED**

NOV 27 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Steven Mark Rosenberg, In Pro Per<br>15814 Septo Street<br>North Hills, CA 91343 | DEUTSHE BANK NATIONAL TRUST COMPANY, As Trustee For Alliance Bancorp mortgage Backed-Pass-Through Certificate series 2007-01 Additional Defendants on Attached Page |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| N/A | Robertson, Anschutz & Schneid, PL 6409 Congress Ave Suite 100 Boca Raton, FL 33487 PER: Docket #12/1:17-bk-11748 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☒ Other SMR<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

ARising From a predatory home Loan, to Plaintiffs' deceased father who suffered Dementia & poor eye sight (Age 87 @ Time), a casading result of Fraud, Negligence, Need for Declaratory relief & other Torts has occured. Also Fraudulent concealment/18 U.S.C § 157: Violation @ Docket #12/MAIN CASE

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☐ 11-Recovery of money/property – §542 turnover of property | ☐ 61-Dischargeability – §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property – §547 preference | ☐ 68-Dischargeability – §523(a)(6), willful and malicious injury |
| ☐ 13-Recovery of money/property – §548 fraudulent transfer | ☐ 63-Dischargeability – §523(a)(8), student loan |
| ☒ 14-Recovery of money/property – other | ☐ 64-Dischargeability – §523(a)(15), divorce or separation obligation |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | (other than domestic support) |
| ☒ 21-Validity, priority or extent of lien or other interest in property | ☐ 65-Dischargeability – other |
| **FRBP 7001(3) – Approval of Sale of Property** | **FRBP 7001(7) – Injunctive Relief** |
| ☐ 31-Approval of sale of property of estate and of a co-owner – §363(h) | ☐ 71-Injunctive relief – imposition of stay |
| | ☒ 72-Injunctive relief – other |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | |
| ☐ 41-Objection / revocation of discharge – §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest** |
| | ☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation** | |
| ☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment** |
| | ☒ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability** | |
| ☐ 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims | **FRBP 7001(10) Determination of Removed Action** |
| ☐ 62-Dischargeability – §523(a)(2), false pretenses, false representation, | ☐ 01-Determination of removed claim or cause |
| actual fraud | **Other** |
| ☐ 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq. |
| **(continued next column)** | ☐ 02-Other (e.g. other actions that would have been brought in state court<br>if unrelated to bankruptcy case) |

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 390,000.°°/₁₀₀ |

| Other Relief Sought |
|---|
| |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR Steven Mark Rosenberg | BANKRUPTCY CASE NO. 1:17-bk-11748-VK | |
| DISTRICT IN WHICH CASE IS PENDING Central District of California | DIVISION OFFICE San Fernando Valley | NAME OF JUDGE Hon. Victoria Kaufman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF N/A | DEFENDANT N/A | ADVERSARY PROCEEDING NO. N/A |
| DISTRICT IN WHICH ADVERSARY IS PENDING N/A | DIVISION OFFICE N/A | NAME OF JUDGE N/A |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) Steven Mark Rosenberg (Plaintiff) | | |
| DATE November 27, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Steven Mark Rosenberg | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Adversary Proceeding Cover Sheet- Cont:

Additional Defendents

Ocwen Loan Servicing, Inc
P.O Box 24781
West Palm Beach, FL 33416-4781

*One West Bank*
*888 East Walnut Street*
*PAsadena, CA 91101*

Alliance Bancorp, Inc
815 Commerce Drive
Oak Brook, Il 60523

Alliance Bancorp Estate Trustee
Charles A. Stanziale, Jr
100 Mulberry Street
Four Gateway Center
Newark, NJ 07102

MERS
Mortgage Electronic Registration Systems, Inc
1818 Library Street
Suite 300
Reston, VA 20190

Deutche Bank National Trust Company, As Trustee
For Alliance Bancorp Mortgage Backed Pass Through
Certificate Series 2007 - OA01
Authorized Agent: Robertson, Anschutz, Schneid, P.L
6409 Congress Ave, Suite 100
Boca Raton, Florida 33487


*............ Notice only ...........................................*

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

Trustee Amy Goldmang
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071