# EXHIBIT 1

FIDELITY-VAN NUYS

Recording Requested By:
AMPRO MORTGAGE, A DIVISION OF
UNITED FINANCIAL MORTGAGE CORP.

03/15/07

**20070575007**

And After Recording Return To:
ALLIANCE BANCORP, C/O
NATIONWIDE TITLE CLEARING, INC.
ATTN: FINAL DOCS UNIT
2100 ALT 19 NORTH
PALM HARBOR, FLORIDA 34683
Loan Number: 1080101956

1950711-JO

2669-2515

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: 100039307020288900

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated    MARCH 1, 2007        , together with all Riders to this document.
(B)  "Borrower" is   ISADORE ROSENBERG, A WIDOWER

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is  AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP.
Lender is a   ILLINOIS CORPORATION                                        organized
and existing under the laws of   ILLINOIS
Lender's address is   2133 WEST PEORIA AVENUE, SUITE 130, PHOENIX, ARIZONA 85029-2370

(D)  "Trustee" is   FIDELITY NATIONAL TITLE COMPANY
6060 SEPULVEDA BOULEVARD, SUITE 100, VAN NUYS, CALIFORNIA 91411

(E)  "MERS" is  Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)   "Note" means the promissory note signed by Borrower and dated   MARCH 1, 2007        .
The Note states that Borrower owes Lender   THREE HUNDRED NINETY THOUSAND AND 00/100                        Dollars (U.S. $  390,000.00        ) plus interest.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 1 of 14

DocMagic *eFarms* 800-649-1362
*www.docmagic.com*

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2037 .

(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] |
| |     ADJUSTABLE RATE BALLOON RIDER |

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)    Page 2 of 14    DocMagic *eFarms* 800-649-1362
www.docmagic.com

LOS ANGELES,CA    Page 2 of 21    Printed on 12/27/2017 3:21:59 PM
Document: TD 2007.575007

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of LOS ANGELES :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2669-025-015

which currently has the address of 15814 SEPTO STREET
[Street]

NORTH HILLS AREA , California 91343 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic *eFørmas* 800-649-1362
Form 3005 01/01 (02/01/07)   Page 3 of 14   www.docmagic.com

Branch :FТ1,User :TZ05            Comment:           Station Id :FAIB

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

LOS ANGELES,CA                         Page 4 of 21                    Printed on 12/27/2017 3:21:59 PM
Document: TD 2007.575007

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *E*Forms* 800-649-1362
Form 3005 01/01 (02/01/07)                          Page 5 of 14                                   www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                    DocMagic ✆ Forms 800-649-1362
Form 3005 01/01 (02/01/07)                                    Page 6 of 14                                    www.docmagic.com

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                          Page 7 of 14
DocMagic *eRams* 800-649-1362
www.docmagic.com

Branch :F7I,User :TZ05                                                                    Station Id :FAIB

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic *(DocMagic)* 800-649-1362
Form 3005 01/01 (02/01/07)                     Page 8 of 14                                          www.docmagic.com

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 9 of 14                    DocMagic *eForms* 800-649-1362
www.docmagic.com

otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument:  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                              Page 10 of 14                              DocMagic *eForms* 800-649-1362
                                                                                                   www.docmagic.com

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
ISADORE ROSENBERG          -Borrower                                    -Borrower

_____ (Seal)                    _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)                    _____ (Seal)
                           -Borrower                                    -Borrower

Witness:                              Witness:

_____              _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *Forms* 800-649-1362
Form 3005 01/01 (02/01/07)                    Page 13 of 14                                www.docmagic.com

)

——————— [Space Below This Line For Acknowledgment] ———————

State of California )
) ss.
County of LOS ANGELES )

On MAR 5, 2007 before me, R.D. SALAZAR, NOTARY PUBLIC

personally appeared ISADORE ROSENBERG _____

_____

_____ ,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

```
R. D. SALAZAR
Commission # 1465444
Notary Public - California
Los Angeles County
My Comm. Expires Feb 4, 2008
```

NOTARY SIGNATURE

R. D. SALAZAR
(Typed Name of Notary)

NOTARY SEAL

)

Loan Number:  1080101956

Date:  MARCH 1, 2007

Property Address:  15814 SEPTO STREET, NORTH HILLS AREA, CALIFORNIA
91343

## EXHIBIT "A"

## LEGAL DESCRIPTION

Lot 15 of Tract No. 16376, in the City of Los Angeles, County of Los Angeles, State of
California, as per map recorded in Book 507 Pages 5 and 6 of Maps, in the office of the
County Recorder of said county.

Except therefrom all oils and minerals in and under said land, but without the right of entry
to the surface or subsurface of said land, to a depth of 500 feet, as reserved by
Raven-Spiegel Construction Co., a Corporation, in Book 50683 Page 227, Official Records.

A.P.N. # : 2669-025-015

DocMagic *Forms* 800-649-1362
www.docmagic.com

MIN: 100039307020288900          Loan Number: 1080101956

# ADJUSTABLE RATE BALLOON RIDER
## (MTA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS)

THIS ADJUSTABLE RATE RIDER is made this  1st  day of  MARCH
2007          , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to  AMPRO MORTGAGE, A
DIVISION OF UNITED FINANCIAL MORTGAGE CORP., AN ILLINOIS CORPORATION  .
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
   15814 SEPTO STREET, NORTH HILLS AREA, CALIFORNIA 91343

[Property Address]

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE.  UNLESS YOU MAKE
VOLUNTARY PREPAYMENTS, THERE MAY BE NEGATIVE AMORTIZATION
DURING THE LIFE OF THE LOAN. AS SUCH, THE PRINCIPAL AMOUNT YOU
WILL BE REQUIRED TO REPAY COULD BE GREATER THAN THE AMOUNT YOU
ORIGINALLY BORROWED. THE INTEREST RATE CAN NEVER EXCEED THE
LIMIT STATED IN THIS NOTE.

THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE
ENTIRE PRINCIPAL BALANCE OF THE NOTE AND UNPAID INTEREST THEN
DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT
THE TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT
OF OTHER ASSETS THAT YOU MAY OWN. OR YOU WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH,
WILLING TO LEND YOU THE MONEY.  IF YOU REFINANCE THIS LOAN AT
MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COST
NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF YOU OBTAIN
REFINANCING FROM, THE SAME LENDER.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**1.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and monthly payments as follows:

**2.     INTEREST**
(A) Interest Rate
Interest will be charged on unpaid Principal beginning on the  1st   day of  APRIL      .
2007               . and continuing until the full amount of Principal has been paid.

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)
06/21/06                    Page 1 of 6

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Interest will initially be charged at a yearly rate of        8.375 %. The interest rate I will be charged may change.

The interest rate required by this Section 2 of this Note is the rate I will be charged both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will be charged may change on the    1st  day of MAY                     , 2007              , and on that date every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment will be recalculated in accordance with Section 3.

**(C) Interest Rate Limit**

My interest rate will never be greater than        11.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin (as defined in Section 2(E)).

**(D) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which will be based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 448/1000                    percentage point(s) (     3.448 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments of any escrow payments Note Holder may require under the Security Instrument on the    1st    day of each month beginning on MAY, 2007                   .

I will make my monthly payments of Principal and/or interest on the    1st    day of each month beginning on    MAY 1, 2007             . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    APRIL 1, 2037            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    PO BOX 780, WATERLOO, IOWA 50704-0780
                                        or at a different place if required by the Note Holder.

ADJUSTABLE RATE BALLOON RIDER                    DocMagic *eForms* 800-649-1362
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)          www.docmagic.com
06/21/06                           Page 2 of 6

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first "Payment Change Date" (as defined in Section 3(C)) will be in the amount of U.S. $ 1,232.95   unless adjusted under Section 3(F) of this Note. My initial monthly payment is an amount that would be sufficient to repay the original Principal amount I borrowed in full in substantially equal payments over the Amortization Period (defined below) if my yearly rate was   2.250 % instead of my actual yearly interest rate set forth in Section 2(A) of this Note. The "Amortization Period" is the 40 year period beginning on the   1st   day of MAY, 2007   .

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st   day of   MAY, 2008   , and on that date every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with Section 3(D) or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due, which causes the Principal balance to increase rather than decrease.)

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least thirty (30) days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full over the remainder of the Amortization Period in substantially equal installments at the interest rate in effect during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless either Section 3(F) or 3(G) below applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than 7.5% of my prior Minimum Payment. This 7.5% limitation is called the "Payment Cap."

The Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Note Holder may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless either Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full over the remainder of the Amortization Period in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the then current interest rate determined in accordance with Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

---

ADJUSTABLE RATE BALLOON RIDER                              *DocMagic €Forms* 800-649-1362
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)                      *www.docmagic.com*
06/21/06                              Page 3 of 6

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to      115.000 % of the Principal amount I originally borrowed. My unpaid Principal balance could exceed the Maximum Limit (      115.000 % of my original Principal amount) due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment until the next Payment Change Date. This means that my monthly payment may change more frequently than annually and the payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full over the remainder of the Amortization Period in substantially equal installments at the interest rate in effect during the preceding month.

**(G) Required Full Payment**

Regardless of the Payment Cap limitation described in Section 3(D), on the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me each month with up to four (4) payment Options, three of which may be greater than the Minimum Payment, and all of which are called "Payment Options." The Payment Options that may be available are:

(1)   **Minimum Payment:** This is the minimum amount Note Holder will accept as my monthly payment. This amount will be provided by Note Holder after the First Interest Rate Change Date and monthly thereafter. The Principal balance will not be decreased by this Payment Option. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due and that causes the Principal balance to increase rather than decrease.)

(2)   **Interest Only Payment:** This is the amount that would pay only the interest on the Principal at the current interest rate. The Principal balance will not be decreased by this Payment Option.

(3)   **30 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full at the Maturity Date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

(4)   **15 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full within a fifteen (15) year term from the first payment due date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

I may use the Payment Options reflected in H.(2) through H.(4) only if they are greater than the Minimum Payment. If any of these Payment Options results in a payment amount that is less than the Minimum Payment, I must still make the Minimum Payment.

---

ADJUSTABLE RATE BALLOON RIDER                                    *DocMagic* 800-649-1362
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)                  www.docmagic.com
06/21/06                         Page 4 of 6

**(I)  Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold the Note Holder responsible for any damages to me which may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means** any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)
06/21/06                                        Page 5 of 6

DocMagic *eForms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
ISADORE ROSENBERG          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower

*[Sign Original Only]*

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)
06/21/06                                          Page 6 of 6

DocMagic *€Fermis* 800-649-1362
www.docmagic.com

# EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**



# 20082107890

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/01/08 AT 02:30PM**

| | |
|---|---|
| FEES : | 13.00 |
| TAXES : | 0.00 |
| OTHER : | 0.00 |
| PAID : | 13.00 |

## TITLE(S) : AFFIDAVIT



LEADSHEET

200812010060015

001117552

**SEQ:
01**

**DAR - Counter (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**



12/01/2008

*20082107890*

Recording Requested By:

Steven Mark Rosenberg

**When recorded mail document to:**

NAME   Steven Mark Rosenberg

ADDRESS   15814 Septó Street

CITY   North Hills

STATE & ZIP   California, 91343

Above Space for Recorder's Use Only

# AFFIDAVIT OF DEATH OF TRUSTEE

Asssor's Parcel Number:   2669-025-015

State of California

County of   Los Angeles                           }

Steven Mark Rosenberg                           , of legal age, being first duly sworn, deposes and says:

1.   Isadore Rosenberg                           , the decedent mentioned in the attached certified

   copy of Certificate of Death, is the same person named as Trustee in the certain Declaration of

   Trustee Dated May 04,1990                 executed by Norma P. Rosenberg

   and Isadore Rosenberg                           as trustor(s).

2.   At the time of the decedent's death, decedent was the owner, as Trustee, of certain real property

   acquired by a deed recorded on   May 08, 1990                           , as instrument No.

   90-847083                 , in the Official Records of   Los Angeles                 County,

   California, covering the following described property situated in the said County, State of California:
   Lot 15 of Tract 16376, as per map recorded in Book 507, pages 5 and 6 of
   maps, in the Office of the COunty Recorder of said County.

3.   I am the surviving or successor Trustee of the same trust under which said decedent held title as

   trustee pursuant to the deed described above, and am designated and empowered pursuant to the

   terms of said trust to serve as Trustee thereof.

Dated   December 01,2008                           

Steven Mark Rosenberg

SUBSCRIBED AND SWORN TO (or affirmed) before me on this   1 ST   day of

Dec   2008   by Steven Mark Rosenberg   proved to me on the basis of

satisfactory evidence to be the persons(s) who appeared before me.

NOTARY SEAL

Notary Signature

Notary Public Commissioned for said County and State

OFFICIAL SEAL
DILIP C. PATEL
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1770323
LOS ANGELES COUNTY
My Commission Exp. October 22, 2011

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF ORANGE
### CLERK-RECORDER

**CERTIFICATE OF DEATH**
USE BLACK INK ONLY/NO WHITEOUTS, WHITE-OUT OR ALTERATIONS

STATE FILE NUMBER: 3200830001790

LOCAL REGISTRATION NUMBER

| 1. NAME OF DECEDENT — FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| ISADORE | | ROSENBERG |

AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE YRS | IF UNDER ONE YEAR | IF UNDER 24 HOURS | 6. SEX |
|---|---|---|---|---|
| 05/28/1918 | 89 | | | M |

| 7A. STATE OF BIRTH | 7B. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS (At Time of Death) | 13. DATE OF DEATH mm/dd/ccyy | 14. HOUR (24 Hours) |
|---|---|---|---|---|---|
| NH | 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 | X YES | NO | WIDOWED | 02/04/2008 | 2130 |

| 8. EDUCATION — Highest Level/Degree | 9/10. WAS DECEDENT HISPANIC/LATINO/SPANISH? If Yes, Specify | 10. DECEDENT'S RACE — Up to 3 races may be listed (see instructions for code) |
|---|---|---|
| MASTER'S | X NO | CAUCASIAN |

| 17. USUAL OCCUPATION — Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| COLLEGE PROFESSOR | EDUCATION | 30 |

| 20. DECEDENT'S RESIDENCE (Street and number or location) | | | | |
|---|---|---|---|---|
| 15814 SEPTO STREET | | | | |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| NORTH HILLS | LOS ANGELES | 91343 | 56 | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, ZIP) |
|---|---|
| ROBERT ROSENBERG, NEPHEW | 1525 MESA VERDE EAST DR #210, COSTA MESA, CA 92626 |

| 28. NAME OF SURVIVING SPOUSE — FIRST | 29. MIDDLE | 30. LAST (Maiden) |
|---|---|---|

| 31. NAME OF FATHER — FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| MORRIS | | ROSENBERG | RUSSIA |

| 35. NAME OF MOTHER — FIRST | 36. MIDDLE | 37. LAST (Maiden) | 38. BIRTH STATE |
|---|---|---|---|
| BELLA | | NEEDLE | RUSSIA |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION | | |
|---|---|---|---|
| 02/08/2008 | EDEN MEMORIAL PARK, 11500 SEPULVEDA BLVD, MISSION HILLS, CA 91345 | | |

| 41. TYPE OF DISPOSITION(S) | 42. EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| BURIAL | NOT EMBALMED | |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| GROMAN-EDEN MORTUARY | FD1070 | ERIC G. HANDLER, M.D. | 02/07/2008 |

| 101. PLACE OF DEATH | 103. FACILITY ADDR OR LOCATION WHERE FOUND (Street and number or location) | 105. CITY | |
|---|---|---|---|
| ORANGE COAST MEMORIAL MEDICAL CENTER | X | 9920 TALBERT AVE | FOUNTAIN VALLEY |

| 106. COUNTY | | | |
|---|---|---|---|
| ORANGE | | | |

| 107. CAUSE OF DEATH | | 118. SEEN IN ATTENDING PHYSICIAN | 117. BIOPSY PERFORMED? |
|---|---|---|---|
| Immediate Cause IA UPPER GASTROINTESTINAL BLEED | DAYS | | |
| B GASTRIC ULCERS | DAYS | | X NO |
| C ACUTE RENAL FAILURE | 1 WK | | |
| D HYPERTENSION | YRS | | |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| NONE |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? | |
|---|---|
| NO | |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| | RICHARD C. CHO M.D. | A55251 | 02/06/2008 |

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | |
|---|---|
| RICHARD C. CHO M.D., 7 TECHNOLOGY DRIVE, IRVINE, CA 92618 | |

*002044052*

104714

CERTIFIED COPY OF VITAL RECORDS
DATE ISSUED JUL 2 5 2008

STATE OF CALIFORNIA
COUNTY OF ORANGE } SS

This is a true and exact reproduction of the document officially registered and
placed on file in the office of the Orange County Clerk-Recorder.

TOM DALY
CLERK-RECORDER
ORANGE COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Clerk-Recorder.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT 3

**This page is part of your document - DO NOT DISCARD**





**20080669043**        Pages: 003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/17/08 AT 08:00AM**

| | |
|---|---|
| Fee: | 12.00 |
| Tax: | 0.00 |
| Other: | 0.00 |
| Total: | 12.00 |

**Title Company**

**TITLE(S) :**



L E A D    S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          **Number of AIN's Shown**

    E-600174          **THIS FORM IS NOT TO BE DUPLICATED**    

Recording requested by
Quality Loan Service Corp

When recorded mail to
Quality Loan Service Corp
2141 5th Avenue
San Diego, CA 92101



04/17/08

**20080669043**

Space above this line for Recorder's use

TS No ' **CA-08-153268-DL**                    Loan No.. **3002889594**

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice) This amount is **$5,903.39** as of 4/16/2008 and will increase until your account becomes current

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay   You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise, or (2) establish a schedule of payments in order to cure your default; or both (1) and (2)

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Indymac Bank FSB
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711**

3

TS No.. CA-08-153268-DL
Loan No · 3002889594
**Notice of Default and Election To Sell Under Deed of Trust**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN. That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 3/1/2007, executed by ISADORE ROSENBERG, A WIDOWER, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP , as beneficiary, recorded 3/15/2007, as Instrument No  20070575007, in Book xxx, Page xxx of Official Records in the Office of the Recorder of  LOS ANGELES County, California describing land therein. **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $390,000 00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned, that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of·

Installment of principal and interest plus impounds and / or advances which became due on 1/1/2008 plus amounts that are due or may become due for the following. late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby

Dated. 4/16/2008          **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
                          BY: Fidelity National Title Insurance Company

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

08 0669043

# EXHIBIT 4



**This page is part of your document - DO NOT DISCARD**



# 20082117184



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/02/08 AT 12:45PM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |

## TITLE(S) : DEED



**L E A D S H E E T**



200812020050032



001119900

**SEQ:**
**01**

**DAR - Counter (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

Recording requested by: Steven Mark Rosenberg

And when recorded, mail this deed and tax statements
to: Steven Mark Rosenberg
    15814 Septo Street
    North Hills, CA 91343



12/02/2008

*20082117184*

For recorder's use

### QUITCLAIM DEED

APN: 2669-025-015
**This conveyance transfers an
interest into or out of a Living
Trust, R & T 11930**

☐ This transfer is exempt from the documentary transfer tax.
☐ The documentary transfer tax is $ ___0___ and is computed on:
    ☐ the full value of the interest or property conveyed.
    ☐ the full value less the liens or encumbrances remaining thereon
      at the time of sale.
The property is located in ☐ an unincorporated area ☐ the city of
Los Angeles.

For a valuable consideration, receipt of which is hereby acknowledged,
**Steven Mark Rosenberg, Successor Trustee of the Isadore and Norma P. Rosenberg Trust,
Dated May 4, 1990**

hereby quitclaims(s) to  **Steven Mark Rosenberg, an unmarried man**

the following real property in the City of  Los Angeles , County of  Los Angeles ,
California:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE
A PART HEREOF
Also Known as: 15814 Septo Street, North Hills, CA 91343

Date: December 02, 2008

_Steven Mark Rosenberg_
Steven Mark Rosenberg, Successor Trustee

State of California

County of  LOS ANGELES

On 12/2/, 2008, before me, DILIP C. PATEL Notary Public, personally appeared
Steven Mark Rosenberg, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I
certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.
WITNESS my hand and official seal.

_D. Patel_
Signature of Notary

OFFICIAL SEAL
DILIP C. PATEL
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1770323
LOS ANGELES COUNTY
My Commission Exp. October 22, 2011

3

# EXHITBIT "A"

Lot 15 of Tract No. 16376, in the City of Los Angles, County of Los Angeles, State of California, as per map recorded in Book 507 Pages 5 and 6 of Maps, in the office of the County Recorder of said county.

Expect therefrom all oils and minerals in and under said land, but without the right of entry to the surface or subsurface of said land, to a depth of 500 feet, as reserved by Raven-Spiegal Construction Co., a Corporation, in book 50683 Page 227, Official Records.

Assessor's Parcel No: 2669-025-015

EXHIBIT 5



**This page is part of your document - DO NOT DISCARD**

 **20081445795**    Pages: 002

**Recorded/Filed In Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/12/08 AT 08:00AM**

Fee: 10.00
Tax: 0.00
Other: 0.00
Total: 10.00

**Title Company**

## TITLE(S) :



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

γ

Recording requested by·

When recorded mail to.

Indymac Bank FSB
6900 Beatrice Drive
Kalamazoo, MI 49009



08/12/08

**20081445795**

_____
Space above this line for recorders use

TS # CA-08-153268-DL          Order # E819844          Loan # 3002889594
                                                       Investor No. 6146077

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**IndyMac Bank F.S.B.**

all beneficial interest under that certain Deed of Trust dated **3/1/2007** executed by **ISADORE ROSENBERG, A WIDOWER**, as Trustor(s) to **FIDELITY NATIONAL TITLE COMPANY**, as Trustee and recorded as Instrument No **20070575007**, on **3/15/2007**, in Book **xxx**, Page **xxx** of Official Records, in the office of the County Recorder of **LOS ANGELES** County, **CA** together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust

Dated· 4/16/2008 7·55 AM          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP.**

                                  By: _____

                                       Laura Hescott  - VP

State of MN
County of Dakota

On AUG 4 before me, _____ a notary public ,personally appeared _____ Laura Hescott _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____ (Seal)

JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2009

# EXHIBIT 6

**This page is part of your document - DO NOT DISCARD**

# 20100248050



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/24/10 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 21.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 21.00 |



**L E A D S H E E T**



201002240240005

00001969129



002554585

**SEQ:**
**13**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E441053                                    T35

LOS ANGELES,CA                    Page 1 of 3                    Printed on 12/27/2017 3:22:03 PM
Document: AS 2010.248050



02/24/2010

*20100248050*

Recording requested by:

When recorded mail to:
OneWest Bank, FSB
888 East Walnut Street
Pasadena, CA 91101



Space above this line for recorders use

TS # CA-08-153268-DL          Order # E819844          Loan # 3002889594
                                                        Investor No. 6146077

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**Deutsche Bank National Trust Company as Trustee for ALLIANCE 2007-OA1**

all beneficial interest under that certain Deed of Trust dated **3/1/2007** executed by **ISADORE ROSENBERG, A WIDOWER**, as Trustor(s) to **FIDELITY NATIONAL TITLE COMPANY**, as Trustee and recorded as Instrument No. **20070575007**, on **3/15/2007**, in Book **xxx**, Page **xxx** of Official Records, in the office of the County Recorder of **LOS ANGELES** County, CA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

**"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"**

Page 1 of 2

TS# CA-08-153268-DL
Page 2

Effective Date: 4/16/2008 7:55 AM

IndyMac Bank F.S.B.

By: _____

Erica A. Johnson-Seck
Attorney in Fact

State of     Texas      )
County of    Travis     )

On 12/19/09 before me, _____ a notary public
,personally appeared _____ Erica A. Johnson-Seck _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of _____ Texas _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

KRYSTLE GISSELLE PRICE
Notary Public, State of Texas
My Commission Expires
June 15, 2011

Page 2 of 2

# EXHIBIT 7



**This page is part of your document - DO NOT DISCARD**



## 20151344164



Pages:
0006

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/03/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 37.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 37.00 |





**L E A D S H E E T**



201511030300008

00011328037



007200150

**SEQ:**
**01**

ERDS - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**          TSG1509-CA-27017_547e

TS No.: 2015-04438-CA

RECORDING REQUESTED BY:
Premium Title of California

WHEN RECORDED MAIL TO:
Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328

TS No.: 2015-04438-CA

APN No.:2669-025-015

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO
BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY
TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you
may have the legal right to bring your account in good standing by paying all of your past due payments
plus permitted costs and expenses within the time permitted by law for reinstatement of your account,
which is normally five business days prior to the date set for the sale of your property. No sale date may be
set until approximately 90 days from the date this notice of default may be recorded (which date of
recordation appears on this notice).

This amount is **$ 183,122.41** as of **11/06/2015**, and will increase until your account becomes current. While
your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required
by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on
the property, provide insurance on the property, or pay other obligations as required in the note and deed of
trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account
in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that
you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance
premiums.

TS No.: 2015-04438-CA

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
# DEED OF TRUST

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1, By Ocwen Loan Servicing, LLC, its attorney in-fact**

**C/O Western Progressive, LLC**
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328
Servicer Phone: 877-596-8580

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Western Progressive, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 03/01/2007, executed by, **Isadore Rosenberg, A Widower**, as Trustor, to secure certain obligations in favor of AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP., As Lender, Mortgage Electronic Registration Systems, Inc., As Beneficiary ., recorded 03/15/2007 , as Instrument No. **20070575007** , in Book ---, Page --- , of Official Records in the Office of the Recorder of **Los Angeles** County, **California** describing land therein as: **As more particularly described on said Deed of Trust.**

TS No.: 2015-04438-CA

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
# DEED OF TRUST

Street Address or other common designation of real property:

**15814 Septo Street, North Hills Area, CA 91343**

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of $ **390,000.00.** A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**Installment of Principal and Interest plus impounds and/or advances which became due on 01/01/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, a copy of the deed of trust and other documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby. "See Attached Declaration"

YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

TS No.: 2015-04438-CA

**2.The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.**

Dated: October 30, 2015

Western Progressive, LLC, as Trustee for beneficiary

Stephanie Spurlock, Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Version 1.1 CA NOD 0515                                                Page 4 of 4

## California Declaration of Compliance
### (Civ. Code § 2923.55(c))

Borrower(s):   Estate of Isadore Rosenberg
Loan No.:      7191069157

The undersigned declares as follows:

I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect *one* of the following.

☐   The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

 ☑   The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

☐   The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐   The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan on "owner-occupied" residential real property as defined by California Civil Code § 2924.15(a)

Signed and Dated:

By: Ocwen Loan Servicing, LLC, as Servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1

_____                    _____  _____
      **Angel Ramos**                                   Signature           Date
Print Name    Contract Management Coordinator

                                                                        46960

# EXHIBIT 8

**This page is part of your document - DO NOT DISCARD**



## 20151367519



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/09/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201511090230010

00011349579



007210808

**SEQ:**
**01**

ERDS - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

TSG1509-CA-2131-17_5906

T.S. No.: 2015-04438-CA

APN No.: 2669-025-015

RECORDING REQUESTED BY:
Western Progressive, LLC

AND WHEN RECORDED MAIL TO
Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **2015-04438-CA**

## NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That **Western Progressive, LLC** is duly appointed Trustee under a Deed of Trust dated **03/01/2007**, executed by **Isadore Rosenberg, A Widower**, as Trustor, to secure certain obligations in favor of **AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP., As Lender, Mortgage Electronic Registration Systems, Inc., As Beneficiary,** as Beneficiary, recorded **03/15/2007** as **Instrument No.20070575007,** in book ---, page -, of Official Records in the Office of the Recorder of **Los Angeles County, California** describing land therein as more fully described on the above referenced deed of trust.

Notice is hereby given by this document that the Beneficiary and/or Trustee does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell. It is the intention of the Beneficiary that the above-described Deed of Trust and all obligations secured thereby shall remain in full force and effect and maintain its rightful priority as if said Notice of Default and Election to Sell had not been recorded.

Said Notice of Default and Election to Sell was recorded on **04/17/2008** in the office of the Recorder of **Los Angeles** County, **California**, Instrument No. **20080669043,** in Book ---, Page--- , of Official Records.

Dated: November 2, 2015

Western Progressive, LLC, as Trustee

By: _____

Tanesha Humphrey, Trustee Sale Assistant

Version 1.1 CA NOR 0515

Page 1 of 1

# EXHIBIT 9

**This page is part of your document - DO NOT DISCARD**





## 20170317787



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/21/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |





**L E A D S H E E T**



201703210970020

00013494599



008215333

**SEQ:**
**01**

**SECURE - 8:00AM**



E494220

**THIS FORM IS NOT TO BE DUPLICATED**

TSG1701-CA-3170040_0bff7

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID  83401

2015 - 04458 - CA

CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #:7191069157 "ROSENBERG"
SELLER'S LENDER ID#:  NCR 24110
OLD SERVICING #:  3002889594

For Value Received, FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, F.S.B.
hereby grants, assigns and transfers to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR
ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1 at C/O OCWEN
LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL  33409 all its interest under
that certain Deed of Trust dated 03/01/2007 , in the amount of $390,000.00, executed by ISADORE
ROSENBERG, A WIDOWER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS
NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. ITS
SUCCESSORS AND/OR ASSIGNS and Recorded:  03/15/2007  as Instrument No.: 2007-0575007 in the County of Los
Angeles, State of California.

Legal:  See above referenced recorded deed of trust for full legal description

THE PURPOSE OF THIS CORRECTIVE ASSIGNMENT OF DEED OF TRUST IS TO CORRECT THE ASSIGNEE ON
THE ASSIGNMENT RECORDED ON 2/24/2010 IN INSTRUMENT NUMBER 20100248050

In witness whereof this instrument is executed.

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, F.S.B.

On _____MAR 1 0 2017_____

Jon Dickerson
Attorney In Fact

This assignment is made without recourse, representation
or warranty, express or implied, by the FDIC in its
corporate capacity or as Receiver.

*AAB*AABGMAC*02/28/2017 03:55:00 PM* GMAC40GMACA0000000000000005081849* CALOS A* 7191069157 CASTATE_TRUST_ASSIGN_ASSN **ROBGMAC*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF ____ **TEXAS**
COUNTY OF _____ **TRAVIS**

On __MAR 1 0 2017__ before me, _____ **Lucia C. Castro** ____ a Notary Public in and for ____ **TRAVIS** ____ in the State of _____ **TEXAS** ____, personally appeared _____ ~~Jon Dickerson~~ ____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Lucia C. Castro
Notary Expires: __/__/9-27-19



LUCIA C CASTRO
Commission # 128757157
My Commission Expires
September 27, 2019

(This area for notarial seal)

*AAB*AABGMAC*02/28/2017 03:59:01 PM* GMAC40GMACA00000000000005061849* CALOS A* 7191069157 CASTATE_TRUST_ASSIGN_ASSN **ROSGMAC*

# EXHIBIT 10



**This page is part of your document - DO NOT DISCARD**



# 20170554108



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/18/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |





**L E A D S H E E T**



201705180240094

**00013732462**



008336970

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

TSG1701-CA-2170040_cc21

TS No.: 2015-04438-CA

RECORDING REQUESTED BY
**Premium Title of California**

AND WHEN RECORDED MAIL TO:
**Western Progressive, LLC**
**Northpark Town Center**
**1000 Abernathy Rd. NE; Bldg. 400, Suite 200**
**Atlanta, GA 30328**

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **2015-04438-CA**                    A.P.N.:**2669-025-015**
Property Address: **15814 Septo Street, North Hills Area, CA 91343**

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a) and (d), THE SUMMARY OF INFORMATION
REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT
BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IMPORTANT NOTICE TO PROPERTY OWNER:**
YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 03/01/2007. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.

Trustor: **Isadore Rosenberg, A Widower**
Duly Appointed Trustee: **Western Progressive, LLC**
Deed of Trust Recorded **03/15/2007** as Instrument No. **20070575007** in Book ---, Page --- and of Official
Records in the office of the Recorder of **Los Angeles** County, California
Date of Sale: **07/05/2017** at **11:00 AM**
Place of Sale:      **BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC
CENTER PLAZA, POMONA, CA 91766**

Estimated amount of unpaid balance, reasonably estimated costs and other charges: **$672,534.94**

TS No.: 2015-04438-CA

## NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: **15814 Septo Street, North Hills Area, CA 91343**
A.P.N.: **2669-025-015**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$672,534.94.**

**Note:** Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

TS No.: 2015-04438-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(866)-960-8299** or visit this Internet Web site http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx using the file number assigned to this case **2015-04438-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

> **Western Progressive, LLC, as Trustee for Beneficiary**
> **C/o 30 Corporate Park, Suite 450**
> **Irvine, CA 92606**
> **Sale Information Line:  (866) 960-8299**
> http://www.altisource.com/MortgageServices/DefaultManagement/Trus
> teeServices.aspx

Date: May 16, 2017          _____
                            **Tanesha Humphrey, Trustee Sale Assistant**

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Version 1.1 CA NOS 0417                                    Page 3 of 3

# EXHIBIT 11



**This page is part of your document - DO NOT DISCARD**





## 20171454376

**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/14/17 AT 01:34PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201712141080068

00014654421



008787383

**SEQ:
01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E534011

17-080192 ROSENBERG DC

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

<del>_____</del>    ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #:7191069157 "ROSENBERG"
SELLER'S LENDER ID#:  DCR 24423.2
OLD SERVICING #:  3002889594

MIN #: 100039307020288900  SIS #: 1-888-679-6377

For Value Received, Mortgage Electronic Registration Systems, Inc. ("MERS"). solely as nominee for AMPRO
Mortgage, a division of United Financial Mortgage Corporation, its successors and/or assigns hereby grants, assigns
and transfers to INDYMAC BANK, F.S.B at 155 NORTH LAKE AVENUE, PASADENA, CA  91101 all its interest
under that certain Deed of Trust dated 03/01/2007 , in the amount of $390,000.00, executed by ISADORE
ROSENBERG, A WIDOWER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY
AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. ITS
SUCCESSORS AND/OR ASSIGNS and Recorded:  03/15/2007  as Instrument No.: 2007-0575007 in the County of
Los Angeles, State of California.

Legal:  See above referenced recorded Deed of Trust for full legal description

THE PURPOSE OF THIS CORRECTIVE ASSIGNMENT OF DEED OF TRUST IS TO ADD EXECUTION DATE AND
TO CORRECT THE ASSIGNOR ON THE ASSIGNMENT RECORDED ON 8/12/2008 IN INSTRUMENT NUMBER
20081445795

In witness whereof this instrument is executed.

Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for AMPRO Mortgage, a division of
United Financial Mortgage Corporation, its successors and/or assigns
On ____NOV 3 0 2017____

_____
Joe A. Simmons _____, Assistant
Secretary

"AAB"AABGMAC"1"G020"7.10"1:2:22 AM" GMAC40GMACA00000000000052190!2" CALOS A" 719" 069157 CASTATE_TRUST_ASSIGN_ASSN  "JOEGMAC"

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF _____ Florida
COUNTY OF _____ Palm Beach

On NOV 3 0 2017 _____ before me, _____ Shiline King _____, a Notary Public in and for _____ Palm Beach _____ in
the State of _____ Florida _____, personally appeared _____ Joe A. Simmons _____, Assistant Secretary, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____ Shiline King
Notary Expires: SEP 1 8 2020

Notary Public State of Florida
Shiline King
My Commission GG 031114
Expires 09/18/2020

(This area for notarial seal)

"AAB*AABGMAC*11/30/2017 /*6:12:22 AM* QMAC40GMACA0000000000000052110012* CALOS A* 7191083157 CASFATE_TRUST_ASSIGN_ASSN "*JOEGMAC*"

# EXHIBIT 12



**FILED**
Los Angeles Superior Court

**AUG 27 2009**

John A. Clarke, Executive Officer/Clerk
BY _____

**DATE OF HEARING:**
OCT 29 2009
**Times:** 8:30 **Dept.:** 11

1  STEWART LEVIN, ESQ., Bar #101034
2  415 N. Crescent Dr., Suite 320
   Beverly Hills, CA 90210
3  Tel: (310) 777-7550 Fax: (310) 860-1560

4  Attorneys for Petitioner STEVEN MARK ROSENBERG
   as Trustee of the Isadore Rosenberg Family Trust and
5  Petitioner STEVEN MARK ROSENBERG
   as Administrator of the Estate of Isadore Rosenberg

6

7                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          FOR THE COUNTY OF LOS ANGELES

9  In Re: Matter of ESTATE OF ISADORE        Case No: BP109162
   ROSENBERG, Deceased,
10                                           Case assigned for all purposes to:

11 ─────────────────────────────────          Dept. 11 Honorable Michael I. Levanas

12 STEVEN MARK ROSENBERG as Trustee of the
   Isadore Rosenberg Family Trust and STEVEN    **VERIFIED PROBATE CODE SECTION 850**
13 MARK ROSENBERG as Administrator of the       **PETITION TO DETERMINE TITLE TO**
   Estate of Isadore Rosenberg,                 **REAL PROPERTY TO ESTATE [AND**
14                                               **RELATED CAUSES OF ACTION]**
                          Petitioners,
15                                               1.  **DECLARATORY RELIEF AS TO**
   v.                                                **DEFENDANT ESTATE AND**
16                                                   **DEFENDANT FIDELITY TITLE**
   FIDELITY   NATIONAL   TITLE   INSURANCE          **COMPANY**
17 COMPANY,     MORTGAGE     ELECTRONIC
   REGISTRATION    SYSTEMS,    INC.,    R.D.     2.  **SLANDER OF TITLE AS TO**
18 SALAZAR AND DOES 1 THROUGH 100,                   **RESPONDENTS**
   INCLUSIVE.
19                                               3.  **CANCELLATION OF WRITTEN**
                          Respondents.               **INSTRUMENT BASED ON**
20                                                   **FORGERY (BY PETITIONERS**
                                                     **AGAINST ALL RESPONDENTS)**
21
                                                 4.  **RESCISSION UNDER CIVIL CODE**
22                                                   **SECTION 39 (BY PETITIONERS**
                                                     **AGAINST ALL RESPONDENTS)**
23
                                                 5.  **[Prob.C. §850(a)(2)(C)] (B)]**
24                                                   **[Prob.C. §850(a)(3)(B)] (C)]**
25
                                                 6.  **QUIET TITLE**
26

27                                    1

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 1 - Doc ID = 1339743158 - Doc Type = OTHER

1

2

3      COMES NOW Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg

4  Family Trust and Petitioner STEVEN MARK ROSENBERG as Administrator of the Estate of Isadore

5  Rosenberg for their causes of action against Respondents FIDELITY NATIONAL TITLE INSURANCE

6  COMPANY, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., R.D. SALAZAR and Does 1

7  through 100, inclusive, complains and alleges as follows:

8                          **PRELIMINARY ALLEGATIONS**

9    1.   Isadore Rosenberg represented by STEVEN MARK ROSENBERG as Administrator of the Estate

10        of Isadore Rosenberg, (hereinafter referred to as "Petitioner" and referred to collectively with

11        Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg Family Trust dated

12        May 4, 1990, as "Petitioners") is, and at all times mentioned in this complaint, was a resident of Los

13        Angeles County, California. Isadore Rosenberg, as Trustee, as of March 6, 2007 was record title

14        holder of the real property identified as 15814 Septo Street, North Hills, California 91343 ("Subject

15        Property") and more specifically described as Lot 15 of Tract No. 16376, in the City of Los Angeles;

16        County of Los Angeles, State of California, as per map recorded in Book 507, Pages 5 and 6 of

17        Miscellaneous Maps; in the office of the county recorder of said county.

18

19   2.   Petitioner Steven Mark Rosenberg is Successor and currently acting Trustee of the Isadore

20        Rosenberg Trust dated May 4, 1990.

21   3.   Petitioner Steven Mark Rosenberg as Special Administrator of the Estate of Isadore Rosenberg

22        (hereinafter referred to as "the Estate") was appointed Administrator of the Estate of his late father,

23        Isadore, with Letters of Administration issued on April 24, 2008, pursuant to which a probate estate

24        has been opened with the Los Angeles County Superior Court, Probate Case #BP109162 and

25        pursuant to which Steven Mark Rosenberg was granted letters testamentary. Isadore Rosenberg

26

27                                    2

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 2 - Doc ID = 1339743158 - Doc Type = OTHER

1    (hereinafter referred to as "Decedent") was a resident of Los Angeles County, California and

2    resided at 15814 Septo Street, North Hills, California 91343, the Subject Property. Isadore

3    Rosenberg died on August 7, 1997.

4    4.    Prior to his death, Isadore Rosenberg's name was forged on a number of written instruments that

5    were recorded on the Subject Property. R.D. SALAZAR was the notary who affixed his notary seal

6    to the forged signature of Isadore Rosenberg, without ascertaining that Isadore Rosenberg was

7    really the person that he was purported to be at the time of the subject signatures on the subject

8    instruments. The caregiver of Isadore Rosenberg, who was at all times material hereto in his

9    eighties, and suffering from cognitive deficits, and dependent upon his caregiver for physical needs,

10    took advantage of Isadore Rosenberg's dependency, and cleaned him out of his life savings, and

11    then began initiating a series of forged documents that resulted in the subject property going from

12    free and clear ownership in the name of Isadore Rosenberg, Trustee U/T/D: May 4, 1990 to

13    approximately $390,000 of loans and liens being recorded upon the subject property. The caregiver

14    was aided and abetted by loan brokers, and the Respondents in this action and Isadore Rosenberg

15    received no benefit from any these loans. The purpose of this Petition is to cancel the Instrument

16    known as a Deed of Trust dated **March 1, 2007 recorded on March 15, 2007 as** Instrument #

17    20070575007. This instrument bears the forged signature of Isadore Rosenberg and is void at law.

18    5.    Defendant Fidelity National Title Insurance Company (hereinafter referred to as "Fidelity") is, and at

19    all times mentioned in this complaint, was a corporation duly organized and existing under the laws

20    of the State of California and doing business in Los Angeles County as a title insurance company.

21    6.    Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as "MERS") is,

22    and at all times mentioned in this complaint, was a corporation duly organized and existing under

23    the laws of the State of California and doing business in Los Angeles County.

24    7.    Defendant R.D. SALAZAR (hereinafter referred to as "Salazar") was, and now is, an individual

25    3

26    **VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

27

Doc# 1 Page# 3 - Doc ID = 1339743158 - Doc Type = OTHER

residing in the County of Los Angeles, State of California and doing business as a notary public.

8.  Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg Family Trust dated May 4, 1990 was record title holder on the subject property as of March 4, 2007. On March 5, 2007 the signature of Isadore Rosenberg was forged on Grant Deed Instrument #20070575006 attached hereto as Exhibit 1. Although recorded this document was apparently withdrawn and can no longer be found on title because it was forged.

9.  Petitioners do not know the true names of Respondents All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Petitioners' Title, or Any Cloud On Petitioners' Title Thereto and DOES 1 through 100, inclusive, and therefore sues them by those fictitious names. Petitioners are informed and believe and on that basis allege that each of the DOE Respondents claims, or may claim, some interest in the real property described in paragraph 1 of this complaint. The names, capacities and relationships of Does 1 through 100 will be alleged by amendment to this complaint when the same are known.

10. Petitioners are informed and believe and on that basis allege, that at all times mentioned in this complaint, Respondents were the agents and employees of their co-Respondents and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

11. Petitioners are informed and believe and on that basis allege that Respondents now claim an ownership interest or lien adverse to Petitioners' title in the Subject Property based on the allegation that Deed of Trust [Exhibit 2] identified further as Instrument # 20070575007 was duly executed by Isadore Rosenberg. In fact this instrument bears only the forged signature of Isadore Rosenberg, and is void. Petitioners' retain title to the Subject Property free of any liens, and this instrument along with the subject Grant Deed Exhibit #1 should be cancelled. At no time did

4

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 4 - Doc ID = 1339743158 - Doc Type = OTHER

1  Isadore Rosenberg ever obtain any benefit from the recording of these instruments, and all monies

2  purportedly loaned to Isadore Rosenberg or his trust were actually paid to the benefit of the criminal

3  caregiver of Isadore Rosenberg. Further, Petitioners have recorded a lis pendens on the Subject

4  Property based on the pendency of this Probate Code § 850 Petition to Establish Petitioners' Claim

5  of Ownership to the Subject Property. Upon cancellation of the subject instruments identified herein

6  and incorporated herein by reference as Exhibits 1 and 2, the Petitioners will own the subject

7  property free and clear of any liens.

8

9

10

11  **FIRST CAUSE OF ACTION**

12  **Declaratory Relief as to all Respondents**

13

14  12.  Petitioners reallege and incorporate by reference as if set forth herein in full each and every

15       allegation contained in paragraphs I through 16 of the Petition.

16  13.  An actual controversy has arisen and now exists between Petitioners and Respondents concerning

17       their respective rights and duties. More specifically, Petitioners contend that they are the legal

18       owners of the Subject Property and Respondents dispute this contention and contend that Fidelity

19       is or should be record title holder of a Deed of Trust on the Subject Property.

20  14.  Petitioners desire a judicial determination of their respective rights and duties and a declaration that

21       they are owners of the Subject Property in fee simple title without any liens as of the year 2001.

22       *Both Isadore Rosenberg and Norma Rosenberg are deceased, and Steven Mark Rosenberg is their*

23       *only heir, the sole beneficiary of the Petitioners.*

24  

25  15.  A judicial declaration is necessary and appropriate at this time under the circumstances in order

26       that Petitioners may ascertain their rights and duties as to ownership of the Subject Property.

27  

5

_____
**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 5 - Doc ID = 1339743158 - Doc Type = OTHER

16. An actual controversy has arisen and now exists between Petitioners and all Respondents concerning their respective rights and duties. More specifically, Respondents contend that IndyMac has a valid lien on the subject property.

17. Petitioners desire a judicial determination of their respective rights and duties and a declaration that the subject instruments Exhibits 1 and 2 were forged and void at law.

18. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Petitioners and Respondents may ascertain their rights and duties as to the subject property.

## SECOND CAUSE OF ACTION

### Slander of Title as to all Respondents

19. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs I through 23 of the Petition.

20. On or about March 1, 2007, Fidelity and MERS slandered Petitioners' title to the Subject Property in that a Deed of Trust, per Exhibit 2, without justification, was recorded on the Subject Property when in fact Respondents did not then and do not now have any lien or ownership rights in the Subject Property.

21. Petitioners have been damaged by the slander of title in that Petitioners' title to the Subject Property has been cast in doubt and the marketability, sale ability, and value of the Subject Property have been impaired.

22. Petitioners, therefore, request this court to cancel Exhibit 2 and thereby remove it as a lien on the subject property.

## THIRD CAUSE OF ACTION

### Cancellation of Written Instrument Based on Forgery as to all Respondents

23. Petitioners reallege and incorporate by reference as if set forth herein in full each and every

6

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

allegation contained in paragraphs I through 22 of the Petition.

24. The Deed of Trust (Exhibit 2) is in existence which purports to encumber the Subject Property.

25. On information and belief, Isadore Rosenberg never signed the Deed of Trust (Exhibit 2). Isadore Rosenberg's signature on that Deed of Trust is forged.

26. Petitioners intend service of the Summons and Complaint in this action to serve as a notice of cancellation of the forged Deed of trust. Isadore Rosenberg received no monies from the loan secured by this Deed of Trust nor any of the secured loans that this loan allegedly paid off.

27. Petitioners now seek to cancel the Deed of Trust pursuant to California Civil Code Section 3412.

### FOURTH CAUSE OF ACTION

#### Rescission Under Civil Code Section 39 as to all Respondents

28. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs I through 27 of the Petition.

29. At all times material to this Petition Isadore Rosenberg was a person of unsound mind due to age and infirmity and who was substantially unable to manage her own financial resources and/or resist fraud and/or undue influence.

30. As a result, under the provisions of Civil Code Section 39(a), the Grant Deed [Exhibit 1], the Deed of Trust [Exhibit 2] and the underlying loan are subject to rescission as provided in Civil Code Section 1688.

31. On information and belief, Isadore Rosenberg, whether as Trustee or in an individual capacity, received no actual benefits from the loans that were taken out on his property by his caregiver. Since Isadore Rosenberg received no benefits from the loans Petitioners have nothing to restore.

32. At all times material hereto Respondents should have been aware that the pattern of loans on the home of an elderly person was suspicious and they had grounds for investigation which each Respondent purposely ignored in order to make a profit. This aided and abetted the plan of the

7

---

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 7 - Doc ID = 1339743158 - Doc Type = OTHER

caregiver to put a false lien on the subject property.

## FIFTH CAUSE OF ACTION

**Probate Code Sections 850(a)(2)(C), 850 (a)(2)(D), 850(a)(3)(B) and 850(a)(3)(C) as to all Respondents**

33. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs I through 37 of the Petition.

34. Petitioners request that pursuant to Probate Code Sections 850(a)(2)(C) and 850 (a)(2)(D), this Court determine that title to the above-described Subject Property be free and clear of any liens or encumbrances, is vested in Petitioner as administrator of The Estate of Isadore Rosenberg, and further, Petitioners request that, in the alternative, the court determine that per Probate Code Sections 850(a)(3)(B) and 850(a)(3)(C) title to the above described Subject Property be free and clear of any liens or encumbrances, is vested in Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg Family Trust dated May 4, 1990.

## SIXTH CAUSE OF ACTION

### Quiet Title as to all Respondents

35. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs I through 39 of the Petition.

36. Petitioners allege that all of the Respondents have failed to respond to Petitioners or demonstrate to Petitioners that the signature of Isadore Rosenberg was not forged.

37. Petitioners allege that because the signature of Isadore Rosenberg was forged Petitioners contend the following transactions were unlawful, are an impermissible cloud on the title, and are required to be cancelled, with title quieted.

38. Petitioners are entitled to a judicial declaration quieting title in Petitioners, as of the filing of this Petition, that Petitioner is the fee owner of a one hundred percent (100%) undivided interest in the Subject Property, subject only to legitimate obligations and encumbrances

8

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 8 - Doc ID = 1339743158 - Doc Type = OTHER

WHEREFORE, Petitioners STEVEN MARK ROSENBERG, as Trustee of the Isadore Rosenberg Family Trust, and Petitioner STEVEN MARK ROSENBERG, as Administrator of the Estate of Isadore Rosenberg, pray for judgment against Respondents FIDELITY NATIONAL TITLE INSURANCE COMPANY, R.D. SALAZAR, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND DOES 1 THROUGH 100, INCLUSIVE as follows:

1. Declaring that the Grant Deed (Exhibit 1), Deed of Trust (Exhibit 2) and underlying loan are void and of no effect at law and are cancelled;

2. Requiring Respondent Fidelity Title Company and/or any assignees to sign a Full Reconveyance of the Deed of Trust, and should Respondent fail to so execute said Full Reconveyance upon verified application filed by Petitioners' counsel, the Clerk of the Court shall forthwith execute a Full Reconveyance on behalf of Respondent and/or any assigns. The Full Reconveyance executed by the Clerk of Court shall state that it is being executed in accordance with the judgment in this case and shall state the case number;

3. For a declaration that Petitioners' have fee simple title to the Subject Property and that Respondents have no right, title, or interest in or to the Subject Property;

4. That this Court declare and enter an order and judgment that the Deed of Trust dated March 1, 2007 Exhibit 2 is null and void ab initio and never encumbered the Subject Property;

5. The above-described Subject Property belongs to the Petitioners or one Petitioner and that title to the above-described Subject Property rightfully belongs to Petitioner as administrator of the estate of Isadore Rosenberg or the Petitioner as Trustee of the Isadore Rosenberg Family Trust dated May 4, 1990 and that Exhibits 1 and 2 are cancelled, and that no other party, including any of the Respondents have any lien or equitable rights related to the Subject Property.

6. For actual damages against R.D. Salazar according to proof at trial.

9

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 9 - Doc ID = 1339743158 - Doc Type = OTHER



7.  For costs of suit and fees;

8.  For such other and further relief as this court deems just and proper.

Dated: August 24, 2009              Respectfully Submitted,

                                    By  _____
                                        STEWART LEVIN, ESQ.
                                        Attorneys for Petitioner STEVEN MARK ROSENBERG
                                        as Trustee of the Isadore Rosenberg Family Trust
                                        and Petitioner STEVEN MARK ROSENBERG as
                                        Administrator of the Estate of Isadore Rosenberg

10

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 10 - Doc ID = 1339743158 - Doc Type = OTHER

STATE OF CALIFORNIA      )
                                 )

COUNTY OF LOS ANGELES   )

## VERIFICATION

I, STEVEN MARK ROSENBERG am the party in this matter in the above

entitled action or proceeding.  I have read the foregoing **PROBATE CODE 850**

**PETITION AND RELATED CAUSES OF ACTION** and know the contents

thereof; and I certify that the same is true of my own knowledge, except as to those

matters which are therein stated upon my information or belief, and as to those

matters I believe it to be true.

I declare, under penalty of perjury, that the foregoing is true and correct

according to the laws of the State of California.

Executed on August  26, 2009 at BEVERLY HILLS, CALIFORNIA

STEVEN MARK ROSENBERG

65

RECORDING REQUESTED BY
Fidelity National Title Company

AND WHEN RECORDED MAIL TO:

Mr. Isadore Rosenberg
15814 Septo Street
North Hills, CA  91343

03/15/07



**20070575006**

THIS SPACE FOR RECORDER'S USE ONLY

| Title Order No.: 19507711 | | Escrow No.: 060878-SV |
|---|---|---|

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $NONE**
This Conveyance transfers the Grantor's interest out of his/her/their revocable living trust.  No Tax is due per R & T Code 11911.
[X] computed on full value of property conveyed, or
[  ] computed on full value less value of liens or encumbrances remaining at time of sale.
[  ] Unincorporated area   [X]  City of Los Angeles AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Isadore Rosenberg, Successor Trustee of the Isadore and Norma P. Rosenberg Trust, dated May 4, 1990**

hereby GRANT(s) to:

**Isadore Rosenberg, a Widower**

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as:  15814 Septo Street, North Hills, CA  91343
AP#: 2669-025-015

DATED March 5, 2007
STATE OF CALIFORNIA
COUNTY OF   *LOS ANGELES*
On  *MAR 5 2007*
Before me,  *R.D. SALAZAR*
A Notary Public in and for said State, personally appeared
*ISADORE ROSENBERG*

*Isadore Rosenberg   Successor Trustee*

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

R. D. SALAZAR
Commission # 1465444
Notary Public - California
Los Angeles County
My Comm. Expires Feb 4, 2008

Signature  *R.A. Salazar*                              (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

SILVERADO
Your Care ▪ Your Resource
AT HOME ▪ SENIOR LIVING ▪ HOSPICE

EXHIBIT B                    *EXHIBIT #1*



**Recording Requested By:**
AMPRO MORTGAGE, A DIVISION OF
UNITED FINANCIAL MORTGAGE CORP.

03/15/07

**20070575007**

And After Recording Return To:
ALLIANCE BANCORP, C/O
NATIONWIDE TITLE CLEARING, INC.
ATTN: FINAL DOCS UNIT
2100 ALT 19 NORTH
PALM HARBOR, FLORIDA 34683
Loan Number: 1080101956

19507711-JC

2669-2S-15

[Space Above This Line For Recording Data]

# DEED OF TRUST

**MIN:**  100039307020288900

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**  "Security Instrument" means this document, which is dated   MARCH 1, 2007            , together
with all Riders to this document.
**(B)**  "Borrower" is   ISADORE ROSENBERG, A WIDOWER

Borrower is the trustor under this Security Instrument.
**(C)**  "Lender" is  AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL
MORTGAGE CORP.
Lender is a   ILLINOIS CORPORATION                                            organized
and existing under the laws of   ILLINOIS
Lender's address is   2133 WEST PEORIA AVENUE, SUITE 130, PHOENIX,
ARIZONA 85029-2370

**(D)**  "Trustee" is  FIDELITY NATIONAL TITLE COMPANY
6060 SEPULVEDA BOULEVARD, SUITE 100, VAN NUYS, CALIFORNIA 91411

**(E)**  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security
Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)**  "Note" means the promissory note signed by Borrower and dated  MARCH 1, 2007    .
The Note states that Borrower owes Lender  THREE HUNDRED NINETY THOUSAND AND
00/100                      Dollars (U.S. $ 390,000.00        ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 1 of 14

DocMagic *eFerms* 800-649-1362
www.docmagic.com

EXHIBIT C          EXHIBIT #2

_____ (Seal)          _____ (Seal)
ISADORE ROSENBERG              -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower


Witness:                                          Witness:


_____                  _____


CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 13 of 14

DocMagic €Farms 800-649-1362
www.docmagic.com

EXHIBIT C                    EXHIBIT #2

# EXHIBIT 13

ORIGINAL

FILED
Superior Court of California
County of Los Angeles

JAN 20 2015

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
         Herman Tam

FAXED

1  FIDELITY NATIONAL LAW GROUP
   DONALD E. LEONHARDT (SBN 185350)
2  915 Wilshire Blvd., Suite 2100
   Los Angeles, CA 90017
3  Telephone: (213) 438-7205
   Facsimile: (213) 438-4417
4  Email: Donald.Leonhardt@fnf.com

5  Attorneys for Respondents ONEWEST BANK, N.A.
   (formerly OneWest Bank, FSB) and DEUTSCHE BANK
6  NATIONAL TRUST COMPANY, Pursuant to the Trustee
   Pooling and Servicing Agreement Dated as of May 1, 2017,
7  as trustee for the Mortgage Back Pass-Through
   Certificates Series 2007-OA1

8

9          SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10         COUNTY OF LOS ANGELES – CENTRAL DISTRICT

11

12  STEVEN MARK ROSENBERG, as Trustee          Case No.: BP109162 (Related to Case No.
    of the Isadore Rosenberg Family Trust and   BP128307)
13  STEVEN MARK ROSENBERG as                    Hon. Maria E. Stratton, Dept. 5
    Administrator of the Estate of Isadore
14  Rosenberg,

15         Petitioner,                          NOTICE OF ORDER DISMISSING
                                                ACTION WITH PREJUDICE
16         vs.

17  FIDELITY NATIONAL TITLE                     Date: January 20, 2015
    INSURANCE COMPANY, MORTGAGE             Time: 8:30 a.m.
18  ELECTRONIC REGISTRATION                     Dept.: 5
    SYSTEMS, INC., ONEWEST BANK, R.D.
19  SALAZAR, KIM BATEMAN, SAMIA S.
    SWEISS, CHRIS THOMPSON, LILIAN
20  GARCIA, and DOES 1 through 100,
    inclusive,
21
22         Respondents.

23

24

25

26

27

28

                                       1

1  **TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

2      **PLEASE TAKE NOTICE** that, on January 20, 2015 at 8:30 a.m., the hearing on the

3  Court's Order to Show Cause re: (1) Petitioner's Failure to Appear at the December 9, 2014

4  Hearing, (2) Petitioner's Failure to Obtain Counsel; and (2) Petitioner's Failure to Sign

5  Settlement Documents came on for hearing before the Honorable Maria E. Stratton in the above

6  captioned court. Donald E. Leonhardt of Fidelity National Law Group appeared on behalf of

7  Respondents ONEWEST BANK, N.A. (formerly OneWest Bank, FSB) and DEUTSCHE BANK

8  NATIONAL TRUST COMPANY, Pursuant to the Trustee Pooling and Servicing Agreement

9  Dated as of May 1, 2017, as trustee for the Mortgage Back Pass-Through Certificates Series

10  2007-OA1 (collectively "Respondents"); Steven Mark Rosenberg appeared (in pro per) as Trustee

11  of the Isadore Rosenberg Family Trust and as Administrator of the Estate of Isadore Rosenberg

12  (collectively "Petitioner").

13      At the hearing, Petitioner requested dismissal of the above-captioned action. Respondents

14  did not object to Petitioner's request, and asked that the dismissal be made with prejudice.

15  Petitioner did not object to Respondent's additional request. **The Court then ORDERED that**

16  **the action was dismissed with prejudice,** and requested that Respondents provide notice.

17

18  Date: January 20, 2015                    FIDELITY NATIONAL LAW GROUP

19

20                                           Donald E. Leonhardt, Esq.
                                             Attorneys for Respondents
21                                           OneWest Bank, N.A. (formerly OneWest Bank,
                                             FSB) and Deutsche Bank National Trust
22                                           Company, Pursuant to the Trustee Pooling and
                                             Servicing Agreement Dated as of May 1, 2017,
23                                           as trustee for the Mortgage Back Pass-Through
                                             Certificates Series 2007-OA1
24

25

26

27

28

2

NOTICE OF ORDER DISMISSING ACTION WITH PREJUDICE

Doc# 1 Page# 2 - Doc ID = 1602404708 - Doc Type = Notice

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 915 Wilshire Boulevard, Suite 2100, Los Angeles, California 90017.

    On January 20, 2015, I served the foregoing document(s) described as **NOTICE OF ORDER DISMISSING ACTION WITH PREJUDICE** on the interested parties in said action:

    [X]    By placing    [ ] the original [XX] a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X]    (BY U.S. MAIL) I deposited such envelope in an internal collection basket. The envelope was mailed with postage thereon fully prepaid from Los Angeles, California. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if a postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

[ ]    (BY NORCO OVERNITE) I delivered to an authorized driver authorized by Norco Overnite to receive documents, in an envelope or package designated by Norco Overnite with delivery fees paid or provided for, addressed to the person on who it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; or at that party's place of residence.

[ ]    (EMAIL) I caused a true copy of the document to be sent to the persons at the corresponding electronic address as indicated above on the above-mentioned date. My electronic notification address is nichole.myles@fnf.com. I am readily familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

[X]    (STATE) I declare under the penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

    Executed on January 20, 2015, at Los Angeles, California.

                                        Nichole Myles

**PROOF OF SERVICE**

DOCUMENT PREPARED
ON RECYCLED PAPER

## SERVICE LIST
*Rosenberg v. Fidelity National Title Insurance Company, et al.*
Los Angeles County Superior Court Case No. BP109162

1

2

3    Steven Mark Rosenberg
4    106 ½ Judge John Aiso Street, #225
     Los Angeles, CA 90012
5    *Petitioner in Pro Per*

6    Richard S. Busch, Esq.
     2660 Townsgate Road, Suite 400
7    Westlake Village, CA 91361
     *Attorneys for Respondent*
8    *R.D. Salazar*

9    Western Surety Company
     P.O. Box 5077
10   Sioux Falls, SD 57117

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

**SERVICE LIST**

73

# EXHIBIT 14

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
JOSEPH A. LANE, CLERK

**FILED**
LOS ANGELES SUPERIOR COURT

JAN 1 0 2017

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy

DIVISION 7

Los Angeles County Superior Court
111 North Hill Street
Los Angeles, CA 90012

> STEVEN MARK ROSENBERG,
> Petitioner and Appellant,
> v.
> ONEWEST BANK, N.A. et al.,
> Respondents.
> B263242
> Los Angeles County No. BP109162, BP128307

### *** REMITTITUR ***

I, Joseph A. Lane, Clerk of the Court of Appeal of the State of California, for the Second Appellate District, do hereby certify that the attached is a true and correct copy of the original order, opinion or decision entered in the above-entitled cause on October 26, 2016 and that this order, opinion or decision has now become final.

The parties are to bear their costs on appeal.

Witness my hand and the seal of the Court affixed at my office this

Joseph A. Lane, Clerk

by: J. Renteria,
Deputy Clerk



cc:    All Counsel (w/out attachment)
       File

DEC 3 0 2016

Filed  11/17/16

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

COURT OF APPEAL – SECOND DIST.

# FILED

## Nov 17, 2016

JOSEPH A. LANE, Clerk

Derrick L Sanders  Deputy Clerk

| | |
|---|---|
| Estate of ISADORE ROSENBERG, Deceased. | B263242 |
| STEVEN MARK ROSENBERG, Petitioner and Appellant, v. ONEWEST BANK, N.A. et al., Objectors and Respondents. | (Los Angeles County Super. Ct. Nos. BP109162 and BP128307) **ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT** |

The opinion filed October 26, 2016, and not certified for publication, is modified as follows:

1.  The title reads as follows:

| | |
|---|---|
| STEVEN MARK ROSENBERG, Plaintiff and Appellant, v. ONEWEST BANK, N.A., et al., Defendants and Respondents. | B263242 (Los Angeles County Super. Ct. Nos. BP109162 and BP128307) |

76

It should read:

| | |
|---|---|
| Estate of ISADORE ROSENBERG, Deceased. | B263242 |
| STEVEN MARK ROSENBERG,<br><br>Petitioner and Appellant,<br><br>v.<br><br>ONEWEST BANK, N.A. et al.,<br><br>Objectors and Respondents. | (Los Angeles County<br>Super. Ct. Nos. BP109162<br>and BP128307.) |

2.  On the title page, the listing of counsel reads:

Steven Mark Rosenberg, in pro. per., for Plaintiff and Appellant.

Fidelity National Law Group and Donald E. Leonhardt for Defendants and Respondents.

It should read:

Steven Mark Rosenberg, in pro. per., for Petitioner and Appellant.

Fidelity National Law Group and Donald E. Leonhardt for Objectors and Respondents.

This order does not change the judgment.  Appellant's petition for rehearing is denied.

ZELON, Acting P. J.          SEGAL, J.          GARNETT, J. (Assigned)

2

77

Case 1:17-ap-01096-VK    Doc 17-1    Filed 02/13/18    Entered 02/13/18 09:52:54    Desc
Exhibit Exhibits 1-14    Page 89 of 96
Case 1:17-ap-01096-VK    Doc 7-1    Filed 12/29/17    Entered 12/29/17 11:37:37    Desc
Exhibits A-K    Page 76 of 83

(Page 4 of 10)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEVEN MARK ROSENBERG, | B263242 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. Nos. BP109162 and BP128307) |
| ONEWEST BANK, N.A., et al., | |
| Defendants and Respondents. | |

COURT OF APPEAL - SECOND DIST

F I L E D

OCT 26 2016

JOSEPH A. LANE          Clerk

Deputy Clerk

APPEAL from an order of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Reversed and remanded with directions.

Steven Mark Rosenberg, in pro. per., for Plaintiff and Appellant.

Fidelity National Law Group and Donald E. Leonhardt for Defendants and Respondents.

# INTRODUCTION

Steven Mark Rosenberg (Rosenberg) appeals an order dismissing, at his request, two related probate actions. He argues that the probate court erred by dismissing those actions with prejudice rather than without prejudice. We agree the probate court erred by dismissing the actions with prejudice, and remand with directions to enter an order of dismissal without prejudice.

# FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Petition*

Rosenberg is the administrator of the estate of his father, Isadore Rosenberg, and the trustee of the Isadore Rosenberg Family Trust. In August 2009 Rosenberg, represented by counsel, filed a petition as administrator and trustee pursuant to Probate Code section 850 to determine title to real property where someone other than the decedent or trustor claims to have title to or an interest in the property.[1]

The third amended petition alleged that Isadore Rosenberg had record title to property in North Hills, California, but that prior to his death "Isadore Rosenberg's name was forged on a number of written instruments that were recorded on the" property. Rosenberg alleged that his father's caretaker, David Curtis Harder, "took advantage of Isadore Rosenberg's dependency, and cleaned him out of his life savings, and then began initiating a series of forged documents that resulted in the . . . property going from free and clear ownership . . . to approximately $390,000 of loans and liens being recorded" on the property. Rosenberg further alleged that various individuals and financial institutions, including OneWest Bank and Mortgage Electronic Registration Systems, Inc., both of which Rosenberg named in his petitions, aided and abetted Harder in his

---

[1]    Rosenberg filed petitions in both the estate and the trust actions. The petitions he filed in the trust action are not in the record.

2

scheme. These documents, included deeds of trust securing promissory notes and lines of credit, were allegedly forged both before and after Isadore Rosenberg's death. Rosenberg also alleged that OneWest Bank conspired with Harder to commit elder abuse. Rosenberg's petition included causes of action for declaratory relief, cancellation, rescission, elder abuse, and determinations under Probate Code section 850, subdivisions (a)(2)(C), (a)(2)(D), (a)(3)(B), and (a)(3)(C), that Rosenberg, as administrator of the estate and trustee of the trust, held the property "free and clear of any liens or encumbrances" and owned a 100 percent undivided interest in the property.

### B.   *The Hearings*

After several unsuccessful settlement conferences in June 2014, at which Rosenberg was representing himself, the probate court on August 19, 2014 set a trial setting conference for December 9, 2014. Rosenberg did not appear at the December 9, 2014 hearing. Consequently, the court set an order to show cause for Rosenberg "to answer why no appearance [was] made" on December 9, 2014, why the court should not dismiss the petition, "and why [the] settlement has not been signed." The court set a hearing on the order to show cause for January 20, 2015, and issued a "citation" requiring Rosenberg to appear on that date.

Rosenberg appeared at the January 20, 2015 hearing, and asked the court to dismiss his petition pursuant to Code Civil Procedure section 583.310,[2] which provides: "An action shall be brought to trial within five years after the action is commenced against the defendant." This is what occurred at the hearing:

"The Court: Mr. Rosenberg, first tell me about the settlement agreement that hasn't been signed.

"Mr. Rosenberg: I wanted to go --

"The Court: Are you going to sign it or are you backing out? That's all I need to know.

---

[2]      Undesignated statutory references are to the Code of Civil Procedure.

3

"Mr. Rosenberg: This court needs to dismiss this case immediately. The rule where claimant fails to bring an action to trial within five years, and the manner in which the delay is brought to the court's attention is immaterial. And when the courts become aware of the facts, it must dismiss the action. I am telling you right now, it has been more than five years.

"In your respectful affidavit and the citation for me to appear -- no, I didn't just come from Twin Towers yet -- but in the citation, it says this original petition was filed 9/16/11. That is absolutely, patently false. This . . . petition was filed back [on] August . . . 29, 2009. It's a public policy matter for . . . cases to be dismissed after five years, mandatory. Why? Because people die who are integral to the case. People's memories fade. In this case, one of the key witnesses has dementia. . . . It's [Code of Civil Procedure section] 583.310. No, I'm not going to -- Mr. Fidelity lawyer, I'm not going silently into the night. . . .

"The Court: Can you stop a minute?

"Mr. Rosenberg: Yes.

"The Court: Okay. Isn't this your petition?

"Mr. Rosenberg: I want out. It's done. I'll have other causes of action, a lot of other causes of action, counselor.

"[¶¶]

"The Court: Do you have any objection to his request that the petition be dismissed?"

"Mr. Leonhardt [counsel for OneWest Bank]: No, your Honor.

"The Court: All right. The petition is dismissed.

"Mr. Leonhardt: With prejudice, your Honor?

"Mr. Rosenberg: It's under -- but I want to make sure it is under. . . .

"The Court: It's dismissed with prejudice and the [order to show cause] is off calendar. Okay. You got what you want, Mr. Rosenberg.

"Mr. Rosenberg: It should be dismissed through -- please make sure on the record it's dismissed under [section] 583 --

4

Doc# 1 Page# 7 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

"The Court: It's dismissed pursuant to your request. You've made your record.

"Mr. Rosenberg: 583, [section] 583.310.

"The Court: It's dismissed pursuant to your request, so you're all set."

C.   *The Appeal*

The court signed and filed a judgment of dismissal on February 3, 2015. The judgment references the two related cases and states the "entire action" is dismissed with prejudice. OneWest Bank gave notice of entry of judgment on February 11, 2015. Rosenberg timely appealed on April 6, 2015.

## DISCUSSION

Rosenberg appeals from the probate court's order granting his request to dismiss his petition. Rosenberg does not argue he was confused, did not intend to voluntarily dismiss his action, or dismissed it by mistake. Instead, Rosenberg argues that the probate court erred by dismissing his petition with prejudice. Although Rosenberg also suggests that the probate court erred by dismissing his case under the five-year statute, section 583.310, and he argues that the court should have had an evidentiary hearing, his primary contention appears to be that the court should not have dismissed the case with prejudice.[3]

And that contention has merit. Because trial on the petition had not commenced (indeed, the December 9, 2014 hearing was supposed to be a trial setting conference), Rosenberg had the right to voluntarily dismiss his petition with or without prejudice.

---

[3]    For example, Rosenberg argues, "To dismiss a case with prejudice regarding the five-year limitation requires [a] hearing." There was, however, no motion or order to show cause under section 583.310, and the court did not dismiss Rosenberg's petition under the five-year statute. Rosenberg also suggests that the court's order deprived him of an evidentiary hearing, but he appears to be arguing that, because the dismissal with prejudice was "on the merits," it will preclude him from having an evidentiary hearing in connection with any future claims he may bring.

5

(See § 581, subds. (b)(1), (c); *Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th
1199, 1209; *Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp.* (2009) 174 Cal.App.4th 67,
75; *Gogri v. Jack In The Box Inc.* (2008) 166 Cal.App.4th 255, 261.) The transcript of
the January 20, 2015 hearing reflects that Rosenberg communicated, perhaps not as
precisely as an attorney would have but nevertheless sufficiently, that he wanted his
petition voluntarily dismissed without prejudice by trying to tell the court he wanted his
case dismissed under section 583.310. Rosenberg apparently believed that a dismissal for
failure to bring an action to trial within five years under section 583.310 is a dismissal
without prejudice (see § 581, subd. (b)(4); *Ashworth v. Memorial Hospital* (1988) 206
Cal.App.3d 1046, 1053, 1063 & fn. 2), and he wanted the court to dismiss his petition
pursuant to that statute. Rosenberg also made it clear that, although he wanted the court
to dismiss his case, he was not finished litigating with his adversaries. He told counsel
for OneWest Bank that he did not intend to go "silently into the night" and that he had
many other causes of action he intended to bring. As Rosenberg puts it in his reply brief,
he "did not ask for a dismissal with prejudice" and "made clear that he fully intended to
continue to enforce his rights." Whether such causes of action are barred by applicable
statutes of limitations and whether they state claims will be determined if and when
Rosenberg ever brings those claims.

Moreover, Rosenberg never asked the court to dismiss his petition with prejudice.
It was counsel for OneWest Bank who asked, after the court had dismissed the petition,
whether the dismissal could be with prejudice. Although the court stated the dismissal
was "pursuant to" Rosenberg's request, and OneWest Bank asserts on appeal Rosenberg
"did not object to [its] additional request," Rosenberg tried, in the split-second he had, to
object by starting to say that was not what he wanted and that he wanted the case
dismissed under section 583.310. The court, however, perhaps in its haste to resolve the
proceeding involving an indecisive, self-represented litigant who apparently had backed
out of a settlement, interrupted Rosenberg and stated it would dismiss the petition with
prejudice. But Rosenberg was entitled, as it appears he was trying to do, to dismiss his
petition without prejudice. (See *Steffens v. Rowley* (1935) 10 Cal.App.2d 628, 630 [in a

6

plaintiff's appeal from an order of dismissal, the trial court erred in granting a motion to dismiss by adding "with prejudice" to the order of dismissal, and, "[w]hile the oral motion to dismiss might have been denied by the court [citation], it should not have been granted with prejudice over the objections of the [plaintiff]"].)

## DISPOSITION

The order of dismissal is reversed.  The matter is remanded with directions to vacate the order dismissing the petition with prejudice, and enter a new order dismissing the petition without prejudice.  The request for judicial notice is denied.  The parties are to bear their costs on appeal.


SEGAL, J.

We concur:


ZELON, Acting P. J.


GARNETT, J. *


---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7

plaintiff's appeal from an order of dismissal, the trial court erred in granting a motion to dismiss by adding "with prejudice" to the order of dismissal, and, "[w]hile the oral motion to dismiss might have been denied by the court [citation], it should not have been granted with prejudice over the objections of the [plaintiff]"].)

## DISPOSITION

The order of dismissal is reversed. The matter is remanded with directions to vacate the order dismissing the petition with prejudice, and enter a new order dismissing the petition without prejudice. The request for judicial notice is denied. The parties are to bear their costs on appeal.

SEGAL, J.

We concur:

ZELON, Acting P. J.

GARNETT, J. [*]

_____

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7

Doc# 1 Page# 10 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other