1  Steven Mark Rosenberg
2  106 ½ Judge John Aiso St,
   #225
3  LA, CA 90012
   Tel:  310-971-5037
4  Email: Founder@PuttingElders1st.org
5  In Pro Per, Plaintiff



6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

7

8

9  STEVEN MARK ROSENBERG        )
                                )
10                              ) **Bankruptcy Case No. 1:17-bk-11748-**
    Debtor                      ) **VK**
11                              ) **Chapter 7**
12                              )
13                              ) **Adversary Case No. 1:17-ap-01096-VK**
                                )
14  STEVEN MARK ROSENBERG        )
                                ) **MEMORANDUM OF POINTS AND**
15  Plaintiff                   ) **AUTHORITIES IN SUPPORT OF**
                                ) **THE OPPOSITION TO**
16      vs.                     ) **DEFENDANTS' MOTION FOR**
                                ) **JUDGMENT ON THE**
17  ALLIANCE BANCORP (Estate),MORTGAGE ) **PLEADINGS**
18  ELECTRONIC REGISTRATION SYSTEMS ; )
    OCWEN LOAN SERVICING, ONEWEST  )
19  BANK, DEUTSCHE BANK NATIONAL   )
    TRUST COMPANY, AS TRUSTEE FOR  ) **Hearing:**
20  ALLIANCE BANCORP MORTGAGE    )
    BACKED PASS-THROUGH CERTIFICATE ) **Date:** 4/8/18
21  SERIES 2007-OA1 AND DOES 1 THROUGH ) **Time:** 2:30 pm
    25, INCLUSIVE,               ) **Place:** Court Room 301
22                              )      21041 Burbank Blvd
23  Defendants                  )      WH, CA 91367

24

25

26

27

28

Page 1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1

# TABLE OF CONTENTS

## 1. INTRODUCTION .................................................................... 6

## 2. STANDARD OF REVIEW.................................................... 6-7

## 3. ARGUMENTS.................................................................. 7-21

### I. ALL OF PLAINTIFFS' CLAIMS ARE PROPERLY STATED
IN THE ADVERSARY PROCEEDING ........................................... 7-15

A. CLAIMS OF FORGERY, FRAUD AGAINST DEFENDANTS
IS WITHIN THE TIME PERIOD ...................................... 7-8

B. PLAINTIFF'S ALLEGATIONS WITH REGARD TO FORGERY,
FRAUD CONCEALMENT ARE SPECIFIC .................................... 8-12

C. PLAINTIFF CAN CHALLENGE THE ASSIGNMENTS
ON THE DOT ........................................................ 12-13

D. PLAINTIFF'S CLAIM WITH REGARD TO VOID ASSIGNMENT
IS SUFFICIENTLY PLEADED.................................................. 13-15

### II.    MOTION FOR JUDGMENT ON PLEADINGS CONSTITUTES
ESTOPPEL ........................................................ 15-21

A. DEFENDANTS ADMITS ALL FACTS AND ALLEGATIONS
OF THE PLAINTIFF............................................................. 15-18

B. DEFENDANTS DO NOT EXPRESSLY DENY FRAUD
COMMITTED.................................................................. 18-19

### III.    INITIATION OF DISCOVERY PROCEEDING INVALIDATES
THE MOTION FOR JUDGEMENT ON PLEADING.................. 19-20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

**IV.   341 MEETING IS MANDATORY FOR A BANKRUPTCY**

  **PROCEEDING** ................................................................. 20-21

**V.    EVEN IF THE MOTION IS GRANTED, PLAINTIFF SHOULD BE**

  **ALLOWED LEAVE TO AMEND THE COMPLAINT TO**

  **CORRECT DEFICIENCIES**.................................................. 21

**4. CONCLUSION**................................................................. 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

## Cases

*Bettencourt v. Hennessy Industries, Inc.*
(2012) 205 Cal.App.4th 1103, 1106.......................................... 7

*Civic Partners Stockton, LLC v. Youssefi*
(2013) 218 Cal.App.4th 1005, 1012-1013............................... 7

*Angelucci v. Century Supper Club*
(2007) 41 Cal.4th 160, 166.................................................... 7

*Collier v. Superior Court*
(1991) 228 Cal.App.3d 1117, 1120......................................... 7

*Cf. Castaneda v. Department of Corrections & Rehabilitation*
(2013) 212 Cal.App.4th 1051, 1060....................................... 7

*Everett v. State Farm General Ins. Co.*
(2008) 162 Cal.App.4th 649, 655........................................... 7

*Zhang v. Superior Court*
(2013) 57 Cal.4th 364, 370....................................................

*Indymac Bank FSB v. Bentley*
(2014) NY Slip Op 50256(U) ............................................ 11   18

*Orcilla v. Big Sur, Inc.*
(Feb. 11, 2016) __ Cal. App.4th __                                      11

*Royal Primo Corp. v. Whitewater W. Indus*
Case No. 15-cv-04391-JCS, Ltd, 2016 WL 467467......................... 14

*United States v. Hempfling*
431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006)............................ 14

*Hargrove & Constanzo v. C.I.R.*
240 F.R.D. 652, 658 (E.D. Cal. 2006)................................... 14

*In re Mortgages Ltd.*
771 F. 3d 623.............................................................. 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

*Yvanova v. New Century Mortgage Corp*
Case No. S218973 (Cal. Sup. Ct. February 18, 2016)........................... 15

*Ragsdale v. Kennedy*
286 N.C. 130, 209 S.E.2d 494 (1974)................................................ 19

*Juster Associates v. City of Rutland, Vt.*
901 F.2d 266, 269 (2nd Cir. 1990)..................................................... 20

*Sunset Mortgage Company, L.P. v. Lexington Fayette*
*Urban County Human Rights Commission*
No. 2005-CA-002581-MR (Ky. App. 4/6/2007) (Ky. App., 2007)........... 20

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*
386 F.3d 581, 588 (2004)................................................................ 20

*Walker  v. Liberty Mut. Ins. Co.*
No. 4:16-CV-01388-RBH, 2017 WL 1020884..................................... 20

*Smurfit-Stone Container Enterprises, Inc. v. Nat'l*
*Interstate Ins. Co.,*
No. 3:08CV093-HEH, 2008 WL 4153762............................................ 20

**U.S CONSTITUTION**

U. S. Const. art. XIV , § 1................................................................. 25

**Statutes**

**California Civil Code**
§ 1213 .................................................................................... 11
§ 3412.................................................................................... 17

Civil Procedure Code
§438(c)(1)(B............................................................................. 7
§ 337                                                                                            22
Civil Procedure before Trial (2006)
§7.......................................................................................... 7
§275....................................................................................... 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

Federal Rules of Civil Procedure
          Rule 9(b)..............................................................
          Rule 11...............................................................
          Rule 12 (c)........................................................... 19, 20
          Rule 15(a)(2).........................................................
          Rule 26............................................................... 20
          Rule 20...............................................................

Probate Code
          § 850............................................................... 7,8,9,10,18


United States Bankruptcy Code

U.S. Code › Title 11 › Chapter 3 › Subchapter III › § 341 MEETING ......

Local Bankruptcy Rules (LBR)
LBR 7016-1. STATUS CONFERENCE........................................ 24

**Books/Publications**
Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure,
s. 1367(3d ed. 1998)..................................................
Wright and Miller et al., Federal Practice and
Procedure § 1370 (3d ed.)..............................................
U.S. Department of Justice, Executive Office For Chapter 7 Trustees, Effective
October 1, 2012...................................................... 26

**EXHBITS**: ...........................................................
                                              #1 ... 29
                                    **1.**     #2 ... 37
                                              #3 ... 40

# INTRODUCTION

The Plaintiff had filed the adversary proceeding in November 27, 2017 to challenge

among other causes of action the wrongful non judicial foreclosure (e.g.;

concealment & fraud) of the Estate property situated at 15814 Septo Street, North

Hills, California 91343. It is in this very adversary proceeding that the Defendants

have filed the motion for judgment on pleadings to determine the case on a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

6

question of law, claiming insufficiency of claims and pleadings by the Plaintiff in the adversary proceeding.

## 2.
## STANDARD OF REVIEW

As Defendants note, a motion for judgment on the pleadings is decided on much the same basis as a general demurrer. (Defendants' P&As at p. 3; Code of Civil Procedure §438(c)(1)(B); Weil & Brown, Civil Procedure Before Trial (2006) §7:275; ***Civic Partners Stockton, LLC v. Youssefi (2013) 218 Cal.App.4th 1005, 1012-1013.***) As with a demurrer, the court must assume the truth of all facts properly alleged in the complaint, (***Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 166***), regardless of any difficulty there might be in actually proving their truth at trial (***see Collier v. Superior Court (1991) 228 Cal.App.3d 1117, 1120*** [stating that the standard applies in considering a demurrer]).

A motion for judgment on the pleadings must be denied if the facts alleged in the complaint state a viable cause of action under any legal theory. (***Cf. Castaneda v. Department of Corrections & Rehabilitation (2013) 212 Cal.App.4th 1051, 1060; Zhang v. Superior Court (2013) 57 Cal.4th 364, 370 [stating the same standard for a demurrer].***) If a motion for judgment on the pleadings is granted, it *should generally be granted with leave to amend, so long as there is a reasonable* possibility that the deficiencies identified by the court can be cured by amendment. In such cases it is error for the court to refuse to grant leave to amend. (***Bettencourt v. Hennessy Industries, Inc. (2012) 205 Cal.App.4th 1103, 1006; Everett v. State Farm General Ins. Co. (2008) 162 Cal.App.4th 649, 655.***)

## 3.
## ARGUMENTS

## I.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

## ALL OF PLAINTIFFS' CLAIMS ARE PROPERLY STATED IN THE ADVERSARY PROCEEDING

### A.
### CLAIMS OF FORGERY, FRAUD AGAINST DEFENDANTS IS WITHIN THE TIME PERIOD

One of the main contentions of the Defendants in the Motion for judgment on pleadings is that the claims of the Plaintiff in the adversary pleading before this Court are time barred. They base their contention on the fact the Plaintiff has not initiated a case of forgery or fraud within the statutory period of three years as required by the Statute of Limitations.

The allegations of the Defendant that the Plaintiff's claims are time barred are false and not supported by law. The forgery with regard to the signature of Isadore Rosenberg creating the alleged Deed of Trust (hereinafter referred to as 'DoT') on the Estate Property located at 15814 Septo Street, North Hills, California 91343 (hereinafter referred to as 'Estate Property') came to be known to the Plaintiff only after the death of the Plaintiff's father's i.e. Isadore Rosenberg's death in 2008. In pursuance to the same, the Plaintiff on realizing that the alleged DoT was not executed by his father, Isadore Rosenberg,  had filed a petition as per Section 850 of the Probate Code as administrator and trustee of the estate of Isadore Rosenberg to determine title to real property where someone other than the decedent or trustor claims to have title to or an interest in the property before the Superior Court of Los Angeles County, and for forgery as  the signature of the key document was forged by a unscrupulous criminal  caregiver of Isadore Rosenberg. However, in 2015 after just over five years of defendant driven protracted litigation, the case was dismissed with prejudice to which the Plaintiff had filed an appeal that ordered the Lower Court to provide the Plaintiff dismissal of case without prejudice. The Plaintiff then filed the Adversary proceeding in November 27, 2017 as a continuation to the litigation that was initiated in 2009. The opposition make a bald face statement when they state a lapse of two years ensued from the time of reversal: Only 11 months had past since the time of that ruling to the filing of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

8

present action, NOT TWO years as indicated in their compliant.  In any event, the Plaintiff had made the first allegation with regard to forgery and fraud against the Defendants on or around August 27, 2009 which was well within the time period of initiating a case. Similarly, the limitation of 3 years, with regard to initiating fresh proceedings would start from the day on which the Plaintiff's Probate case was dismissed without prejudice by the lower court; that dismissal date being <u>January 19, 2017</u> (Remittitur Hearing- LASC BP109162).

The opposition makes a bald face patently false statement when they state in their motion, a lapse of two years ensued from the time of reversal: Only 11 months had passed since the time of that ruling to the filing of the present action, not over two  (2) years as indicated in their motion.  During the Appeal a stay was in effect.

This adversary proceeding alleging forgery and fraud with regard to the alleged DoT against the Defendants was initiated in <u>November 27, 2017</u> which is well within the time period stipulated and the adversary proceeding can be considered as a continuation to the proceedings initiated by the Plaintiff against the Defendants based on the forgery and fraud involved in the alleged DoT through which the Defendants are attempting to assert rights on the property to which the Plaintiff alone is legally entitled.

Thus, the Plaintiff asserts that the claim of the Defendant that the Adversary proceeding be dismissed on the ground that the claim of forgery and fraud was alleged after the period of limitation is baseless and the same cannot be considered.

## B.

### PLAINTIFF'S ALLEGATIONS WITH REGARD TO FORGERY, FRAUD CONCEALMENT ARE SPECIFIC

The Defendants in their Motion for Judgment on Pleadings claims that the Plaintiff in the adversary proceeding has made only vague allegations with regard

to forgery, fraud and concealment by the Defendants and therefore the Defendants have demanded striking off the pleadings as the case of the Plaintiff has no merits and is not sufficiently pleaded.

However, the Plaintiff has made specific allegations and pleaded the facts in detail with regard to the forgery, fraud and concealment by the Defendants. The Plaintiff had clearly stated that the alleged DoT was not signed by Isadore Rosenberg and on realization of the same had filed a case as per Section 850 of the Probate Code for declaratory relief to declare that the Plaintiff alone was the rightful and legal owner of the Estate property. The Plaintiff had stated that Isadore Rosenberg (1918-2008) was ill and had attained old age when the alleged DoT was executed in 2007. The execution of the alleged DoT led to the creation of $390,000 debt (based entirely on fraud) being wrongly recorded on the Estate property. The Plaintiff came to know about such DoT only upon the death of his father, Isadore Rosenberg. On examination of the documents the Plaintiff realized that on March 15, 2007, an alleged DoT securing a $390,000 promissory note was recorded against the Real property located at 15814 Septo Street, North Hills, California 91343 indicating Ampro Mortgage, a division of United Finance Mortgage Corp ("Alliance Bancorp, Inc") as the lender and MERS acting solely as a nominee for the lender and the lender's successors and assigns was the purported beneficiary under deed of trust. The trustor of the note and the March 15, 2007 DOT was indicated as deceased Isadore Rosenberg.

Furthermore red flags went off in the Plaintiff mind, upon coming across a Grant Deed transferring 15814 Septo Street, North Hills Area, CA from the Isadore & Norma Rosenberg Trust, May 03 1994 , into the vesting as Isadore Rosenberg as Widow. The retained Hand Writing Expert of the Plaintiff indicates specifically among others associated forged transaction documents that the signature attached to that sudden change of Grant Deed vesting recital is a forgery as well and not that of Isadore Rosenberg. A true and correct copy of the Forensic Handwriting Expert Report is attached and incorporated by reference to this petition as "Exhibit -1".

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Along with above fraudulent conveyance, a very suspect- <u>Notice of Abandonment of Homestead Declaration</u> was recorded in the County Recorder Grantee-Grantor Index a short time around the March 15, 2007 recording of the Dot as well. The plaintiff ascertained the elder Rosenberg, giving up his recorded protective Homestead Declaration did not seem to be a reasonable and prudent action on the part of 87 year of Isadore Rosenberg to take on his own volition.

The Plaintiff also came to realize as a result of logging approximately one hour on County of Los Angeles, Norwalk Recorder  Offices official computers over the course of several terminal usage sessions (*Note: Plaintiff in early 1990's had stint as  Title Examiner with the City of Los Angeles, Real Estate Division, Bureau of Engineering*  at said heretofore location,  indicating the alleged DOT had been further assigned by two assignments and a correction assignment; the first Assignment purports to have been made on April 16, 2008 (though not acknowledged until August 2008). The second assignment purports to have been made simultaneously with the first assignment as of April 16, 2008 at 7:55 am although it is not acknowledged until 2009 and recorded in 2010. The correction assignment had been Robo Signed by Jon Dickerson on behalf of FDIC. (See Exhibit 8 in Adversary Proceeding/ hereby incorporated by reference as well as Notice of Errata for Exhibit 3 indicated as Docket Pacer # Doc 5 Filed 12/15/17 Page 4 of 6, likewise hereby incorporated by reference.  It should be noted the following case holding that relates to **California Civil Code § 1213**: <u>Recording a conveyance as constructive notice to subsequent purchasers and mortgagees</u>; it was held in **Los Angeles v Morgan (1951) 105 CA 2d 726, 234 P2d 319** that where invalid documents are recorded *they do not give constructive notice.*

The following recent case is provided to refute the cited cases in the Motion for Judgment on the Pleadings as found on page 12 Lines 3 to 12"

**Orcilla v. Big Sur, Inc. (Feb. 11, 2016) __ Cal. App.4th __**

It is contended that a $390,000 "loan" to a mental impaired 87-year-old whose income was only a fixed pension, is <u>unconscionable.</u> Under that pattern there is a duty of care established by the financial entity.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

11

Refer to: Pacer DOCKET #499 & Docket #499-1

Case # 07-10943-CSS Filed 7/24/17/ Alliance Bancorp Chapter 7 BK

(Exhibits in the Alliance Bancorp Bankruptcy  going into detail why at the very inception- 15814 Septo Street, North Hills Area, CA **was never transferred into the Mortgage Backed Security at all!**

<u>Plaintiff makes such informed statement as to belief based on class lectures and course materials from their USC Advanced Real Estate Analysis Class (FBE 570).</u>


The purported recorded chain of title Assignments were in the name of Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as 'MERS') as nominee for Ampro Mortgage, a division of United Finance Mortgage Corp. By the time of the purported assignment the party on whose behalf MERS purported to act, had filed petition in Bankruptcy, Chapter 7 on July 13, 2007, and was voluntarily dissolved in Illinois, its State of Incorporation on February 1, 2008 as Case No. 07-10941 (CSS).

The Plaintiff had on understanding that his 88 year old father would not have executed of free will, the present contested DoT.

Based on the  examination of the County Recorder documents associated with regard to the DoT, Plaintiff subsequently filed the case under Section 850 of the Probate Code to declare himself as the sole owner of the Estate Property, based on both the *pour over Will* indicating such inheritance and Trust document (designating Plaintiff as the remainder beneficiary of the living trust) of the deceased. As previously noted- In pursuance to such case, the Plaintiff had sought the help of a forensic handwriting expert, Howard Rile, who produced the report that the signatures in the DoT and all related endorsements were forged and the Plaintiff had also stated that the then care taker of Isadore Rosenberg, David Curtis Harder was behind the forging of the signatures.

The Plaintiff had also asserted that the Defendants had a role to play with regard to such forging and fraudulent aspects with regard to the various documents and endorsements of the DoT because they contend are the holders of the instrument and had abetted the caregiver in all his activities with regard to forging of the documents. It can also be seen that the Defendants had involvement in the illegal ("robosigning" becoming illegal practice -2011 & forward by order of the Office of Currency & Comptroller as well as the State of California under the 2013 introduced statutes as found at: https://oag.ca.gov/hbor

Note:  This Honorable Court should find it appalling that within the RFN in conjunction with the Motion for Judgment on the Pleadings, damning fabricated documents that were the basis for such Government intervention are being passed off as being authenticated knowing full well lack of verification  and legitimately to this court. Plaintiff prays the proverbial wool is not pulled over the court eyes. The opposition continues to make non-supported assumptive statements throughout their filing:  Example:  MFJP Page 8 Lines 16-17. *Here, the Deed of Trust is a perfected security interest in the Property, which passed  through the bankruptcy unaffected.*

In the Schedule, Plaintiffs  attorney in the main Case, Charles Shamash, Counsel at Law, who prepared the schedules after lengthy consultation- put this above Deed of Trust   lien as disputed  and indicating contingence designation along with a short explanation on the Schedule that an action such as present was planned to be filed.

The Defendants have never provided any expert opinion or proof to refute the contention of the Plaintiff that the signatures in the DoT were forged. The only claim of the Defendants is that the Plaintiff filed the case of forgery and fraud after the period of limitation. Similarly, in the Motion for judgment on pleadings the Defendants do not have a contention that they were not involved in the forgery, their only stand is that the Plaintiff had not specifically alleged with regard to who

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

13

among the officers, acting in what capacity led the Plaintiff's father to execute the DoT and related documents.

The Plaintiff humbly submits that since the said forgery and fraud was committed just over ten years ago, and the real person who was defrauded was Isadore Rosenberg, who is no more and considering the fact that the Plaintiff knew about such fraudulent and forged DoT only after the death of his father, it impossible for the Plaintiff to specifically allege with regard to the officers of the Defendants who acted in a fraudulent manner.

Rule 9(b) of the Federal Rules of Civil Procedure (hereinafter referred to as 'FRCP') sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. However, it has been held that, where the alleged fraud occurred over a long period of time, "Rule 9(b)'s particularity requirement is less stringently applied." (**_See Royal Primo Corp. v. Whitewater W. Indus, Case No. 15-cv-04391-JCS , Ltd, United States v. Hempfling, 431 F. Supp. 2d 1069, 1076 (/case/us-v-hempfling-3#p1076) (E.D. Cal. 2006); see also Hargrove & Constanzo v. C.I.R., 240 F.R.D. 652, 658 (/case/hargrove-constanzo-v-cir#p658) (E.D. Cal. 2006)._**

Thus, the claim of the Plaintiff alleging fraud against the Defendants, being of an incident as early as 2007, would attract leniency and therefore the ground of the Defendants that the claims of fraud and concealment by the Plaintiff are not specific with regard to when, who and where ingredients do not stand ground.

Further, Rule 11 of FRCP after the 1983 amendment provides that, "absent a finding of bad faith, factual allegations in the complaint (or answer) must be tested through the normal mechanisms for adjudicating the merits."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This has been reiterated in *In re Mortgages Ltd., 771 F. 3d 623* wherein the Ninth Circuit Court held that the *Court must look into the pleadings in detail before striking them off* (emphasis added).

In other words, the Court cannot blatantly reject pleadings without providing sufficient reasons for striking off the facts.

Thus, the allegations of forgery and fraud against the Defendants are specific and sufficient to claim the reliefs sought for by the Plaintiff in the Adversary proceedings.

### C.

### PLAINTIFF CAN CHALLENGE THE ASSIGNMENTS ON THE DOT

The Defendants have in their Motion for judgment on pleadings stated that the Plaintiff does not have the standing to challenge the assignments because the Plaintiff nor his father, Isadore Rosenberg are parties to the assignment. This is because the so called alleged assignments have been done between the various Defendants who act as trustees/ beneficiaries and regardless of change of the person, the borrower/trustor is liable to pay.

However, this claim of the Defendant that the Plaintiff does not have standing is refuted and completely baseless. In *Yvanova v. New Century Mortgage Corp, Case No. S218973 (Cal. Sup. Ct. February 18, 2016)*, "The California Supreme Court held that a home loan borrower who has suffered a non-judicial foreclosure has standing to sue for wrongful foreclosure based on an allegedly void assignment even though she was in default on the loan and was not a party to the challenged assignment because an allegation that the assignment was void will support an action for wrongful foreclosure".

Thus, in the present case, the very claim of the Plaintiff is that the DoT in itself is void abinitio, as it had been created by forgery and fraud by the caretaker of Isadore Rosenberg, with the help of the Defendants. This being the fact pattern the aforesaid rule that the Plaintiff would have standing to challenge assignment in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

1  case of void assignments <u>is applicable</u> in this case as the <u>Plaintiff is an affected</u>

2  <u>party and has the standing to challenge a wrongfull  foreclosure.</u>

3

4  **D.**

5  **PLAINTIFF'S CLAIM WITH REGARD TO VOID ASSIGNMENT**

6  **IS SUFFICIENTLY PLEADED**

7      The Plaintiff has in the adversary pleading clearly stated as to why the

8  assignments are <u>void ab initio</u>. The fact that the DoT in itself along with its

9  endorsements and documents are forged renders the DoT void.

10      Further, the alleged DoT securing a $390,000 promissory note was

11  recorded against the Estate Property indicating Ampro Mortgage, a division of

12  United Finance Mortgage Corp ("Alliance Bancorp, Inc") as the lender and MERS

13  acting solely as a nominee for the lender and the lender's successors and assigns

14  was the beneficiary under deed of trust. The trustor of the note and the March 15,

15  2007 DOT was deceased Isadore Rosenberg.

16  The Lender under the DoT was contended to be Ampro Mortgage, a Division of

17  United Financial Mortgage Corp which was an assumed name of Alliance Bancorp,

18  Inc. Alliance Bancorp, Inc filed a petition in Bankruptcy, Chapter 7 on July 13,

19  2007   and was involuntarily dissolved in Illinois, its State of Incorporation, on

    February 1, 2008.

20      Further, as per the purported DoT, the closing date in the mortgage backed

21  security (MBS) prospectus was May 30, 2007. It is also stated in the DoT that the

22  Sponsor will convey the mortgage loans to the Depositor on the Closing Date and

23  the Depositor will convey the mortgage loans to the Issuing Entity on the Closing

24  date.

25      As per Section 10.02 of the Pooling and Service Agreement (PSA), the

26  Depositor, Master Servicer, Trustee or the Securities Administrator **shall not**

27  **accept any contributions to the REMICs after the closing date.**

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

16

REMIC is an entity enjoying special tax treatment and the defendants were such entities that enjoyed benefits, required that the mortgages be purchased within a 3-month period. The said property was never properly transferred to the Trust as per the requirements of the PSA prospectus by the closing date. This massive illegal tax dodge scheme has egregiously & determinately harmed the "psyche" of the Plaintiff; given since 1975; has faithfully & dutifully filing & paying taxes in a responsible manner. The Plaintiff has a very strong moral compass as evidenced by testifying at the sentencing of his former USC professor (Marshall School of Business: FBE 570- Advanced Real Estate Analysis) who defrauded his former students and families of approximately $1,500,000. Exhibit 2   Page: 38-39

In continuance of the family home equity conversion scheme, the alleged DoT that supposedly encumbers the estate property and on later dates the two purported assignments and the correction of Assignment recorded March 17, 2017 relied by the defendants have unexplained anomalies which collectively show these recorded real estate documents to be ineffective and in violation of the California Homeowner Bill of Rights relating to verification of documents prior to recording.

Quoting direct from the opposition pleading: *"On **December 14, 2017**, a corrective Assignment of Deed of Trust was recorded against the Property. [RJN, Ex 11]. The purpose of this corrective assignment was to add the execution date and to **correct the assignor** on the Assignment recorded **on 8/12/2008** [RJN, Ex 5. [RJN, Ex 11-p2, lines 10-12]"*
(emphasis added).

The plaintiff prays the Court does not have the wool pulled over their eyes as to above!  Respectfully for the above contested document the Plaintiff is going on record in opposition of this RJN, Ex. 5 given it is fatally flawed, (Statue of Limitations Issue) and moreover December 13, 2018 is valid window of last day, to file a cause of action for said slandering title instrument and complain that the above  instrument to be cancelled pursuant to: **California Civil Code 3412.**
There is unquestionably   a broken chain of title   that exists i.e.; the first Assignment purports to have been made April 16, 2008 at 7:55 am. However, the

purported Assignment is in the name of MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. By the time of the purported assignment the party on whose behalf MERS purported to act had filed a petition in bankruptcy and had been involuntarily dissolved. <u>This in itself makes the assignment void.</u>

Further, the first Assignment is signed by Laura Hescott, who is identified as a "Robo Signer" in ***Indymac Bank FSB v. Bentley* (2014) NY Slip Op 50256(U)**

The second Assignment purports to have been made simultaneously with the first Assignment as of April 16, 2008 and this was signed by Erica Johnson-Seck, also identified as a Robo signer. Both assignments were purportedly signed simultaneously; it would appear that neither of the defendants ever received any interest therein.

Thus, besides the ground that the DoT, endorsements and documents in itself are void ab initio on the ground of forgery and fraud committed by the Defendants, the assignments are void due to the missing chain of title links and furthermore the lack of authority of MERS to further assign the interest to another entity/person. This statement is based on the requirements in the California Homeowners Bill of Rights.

Note:  MERS is listed as a creditor in the United Financial/Alliance Bancorp Bankruptcy- and it is well established that in order to have status in the MERS organization *membership dues* are to be up to date, in order to avail the financial entity access to the MERS platform and associated "benefits" of signing POA on their behalf. Nowhere in the United financial/Alliance Bancorp Bankruptcy docket  exists any filings showing  the Trustee sought  to make such MERS membership payments. A detailed search was conducted of the Alliance Bancorp/United Financial/Ampro docket to support the last damning statement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Additional Discovery of MERS (specifically Deposition of Person Most Knowledgeable) is needed to fully ascertain why assignments in the stream of commerce for this property at 15814 Septo Street, North Hills "Area", CA 91343 are Void and not voidable, given the fact pattern as revealed by multiple fraudulent and forged real estate documents going back to 2008.

## II.
## MOTION FOR JUDGMENT ON PLEADINGS
## CONSTITUTES ESTOPPEL

### A.
### DEFENDANTS ADMITS ALL FACTS AND ALLEGATIONS
### OF THE PLAINTIFF

A motion for judgment as per Rule 12 (c) of FRCP may be instituted after the pleadings are closed-but early enough not to delay trail. In ***Ragsdale v. Kennedy, 286 N.C. 130, 209 S.E.2d 494 (1974)***, it was observed that the motion for judgment on the pleadings is the proper procedure when all of the material allegations of fact are admitted in the pleadings and only questions of law remain.

When the pleadings do not resolve all factual issues, judgment on the pleadings is generally inappropriate. The motion for Judgment on pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided. This means that both parties agree to the facts put forth in the pleadings. Thereby, a motion for Judgment on pleadings constitutes an Estoppel in itself on the party who initiates the same.

In considering motions under Rule 12(c) FRCP, courts frequently indicate that a party moving for a judgment on the pleadings impliedly admits the truth of

its adversary's allegations and falsity of its own assertions that they have been denied by that adversary. (see also, Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure, s 1367(3d ed. 1998); ***accord Juster Associates v. City of Rutland, Vt., 901 F.2d 266, 269 (2rd Cir. 1990)***.

It was also stated that, 'For the purpose of this motion when a party moves for a judgment on pleadings he admits not only the trust of its adversary allegations but also the untruth of all his own allegations which have been denied by his adversary' ***(see Sunset Mortgage Company, L.P. v. Lexington Fayette Urban County Human Rights Commission, No. 2005-CA-002581-MR (Ky. App. 4/6/2007) (Ky. App., 2007)***; Wright and Miller et al., Federal Practice and Procedure § 1370 (3d ed.); ***see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 588 n.4 (4th Cir. 2004)***

So when "the plaintiff moves for judgment on the pleadings, the motion should be granted if, on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." ***(see Walker v. Liberty Mut. Ins. Co., No. 4:16-CV-01388-RBH, 2017 WL 1020884, at *1 (D.S.C. Mar. 16, 2017); see Smurfit-Stone Container Enterprises, Inc. v. Nat'l Interstate Ins. Co., No. 3:08CV093-HEH, 2008 WL 4153762, at *4 (E.D. Va. Sept. 5, 2008)***

In the instant case, the Defendants by moving for judgment on pleadings impliedly accepts all the facts alleged by the Plaintiff and constitute an estoppel from denying. Applying the principle of estoppel, wherein a person is precluded from alleging facts that are contrary to his previous claims or actions, the Defendants are estopped from denying any of the facts or allegations made by the Plaintiff with regard to the Defendants in the adversary proceeding.

In other words, estoppel prevents someone from arguing something contrary to a claim made or act performed by that person previously. Conceptually,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

estoppel is meant to prevent people from being unjustly wronged by the inconsistencies of another person's words or actions.

Thereby in the instant motion for judgment filed by the Defendant as a response to the Adversary proceedings filed by the Plaintiff on November 27, 2017, the Defendants affirm the claims and facts raised by the Plaintiff. The Plaintiff have stated all instances of forgery, fraud, concealment by the Defendants with regard to the DoT, and all violations of various rules with regard to further assignments of the alleged DoT by the Defendants, thereby authorizing every single charge made by the Plaintiff in the adversary proceeding. The Plaintiff has made all allegations with sufficient proof of claims and facts against the Defendants fraudulent and intentional concealments.

As stated in the Adversary proceeding, alleged deed of trust ("DOT") purported to have entered securing a $390,000 promissory note was recorded against the Real property located at 15814 Septo Street, North Hills, California 91343 indicating Ampro Mortgage, a division of United Finance Mortgage Corp ("Alliance Bancorp, Inc") as the lender and MERS acting solely as a nominee for the lender and the lender's successors and assigns was the beneficiary under deed of trust. The trustor of the note and the March 15, 2007 DOT was deceased Isadore Rosenberg.

The DOT has been further assigned by two false assignments and a fraudulent correction assignment/ creating a situation of introducing false documents into the stream of commerce; the first Assignment purports to have been made on April 16, 2008 at 7:55 am (though not acknowledged until August 2008). The second assignment purports to have been made simultaneously with the first assignment as of April 16, 2008 at 7:55 am although it is not acknowledged until 2009 and recorded in 2010. The correction assignment of March 21, 2017  has affixed Jon Dickerson, signing  on behalf of FDIC as the Defendants allege however contested by the Plaintiff as to validity.  This is a false

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

document also introduced into the stream of Commerce as indicated by Exhibit 8 of the November 27, 2017 filed Adversary Proceeding. It is impossible to make a correction to a recorded real estate assignment going back 7 plus years! **CCP 337**

The Plaintiff realized that there existed such a DoT only after his death of his father, Isadore Rosenberg. During the lifetime of his father the Plaintiff was never informed of the existence of such a DoT. The Plaintiff realized that the signature in the alleged DoT were by all appearances forged by the care taker of his own father, David Curtis Harder. Almost immediately given the circumstances of dealing with a hostile caretaker house "take over" and ultimately requiring sheriff eviction, upon realizing the DOT was not executed by his father and suspected forgery on August 29, 2009 the plaintiff filed a petition in Los Angeles Superior Court pursuant to Section 850 of the Probate Code as estate personal representative. <u>The DOT that was recorded is void ab initio as it was entered by forging the signature of his father, as mentioned above, thereby invalidating the two further assignments and one correction assignment as claimed by the Defendants</u>.

The Defendants have by filing this Motion for judgment on pleadings admitted all these facts that were alleged by the Plaintiff in the adversary proceeding including the facts alleging forgery, fraud and concealment by the Defendants with regard to the DoT.

**B.**

**DEFENDANTS DO NOT EXPRESSLY DENY FRAUD COMMITTED**

Even if the alleged facts were considered not to be admitted by the Defendants on the filing of the Motion for judgment on pleadings, the very fact that the Defendants in the instant motion for Judgment have not denied such forging or fraudulent activities committed by them anywhere in the motion. The only claim by the Defendants is with regard to the time period within which the forgery and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

fraud committed should have been alleged and the specificity with regard to such allegation of forgery and fraud. This itself proves that the Defendants have impliedly admitted to the facts and allegations of fraud alleged by the Plaintiff in the Adversary proceeding.

Whereas, the Plaintiff has clear and unambiguous report of the handwriting Expert and further evidences to prove the forgery with regard to the signature of Isadore Rosenberg in the alleged DoT.

Thus, by initiating the instant motion and non-denial of forgery and fraud committed the Defendants hereby admit to all the forgery, fraud, concealment by the Defendants with regard to the DoT and all violations of various rules with regard to further assignments of the alleged DoT as raised by the Plaintiff, thus, entitling Plaintiff for all the claims and reliefs sought in the adversary proceeding.

*(As indicated on the Cover Sheet for this Adversary Proceeding Plaintiff prays as damages collectively $390,000 via a global release and settlement from all parties).*

The opposition arguments set forth in their MJOP quoting directly from: at page 4 / lines 7 to 12 are patently presented in an out of context false manner.

"The property is encumbered by more than $674,534 in liens [RJN Ex 10]" is being presented to the Court **AS AN ASSUMPTIVE STATEMENT** subject to being impeach and or debunked. Discovery will impeach the set forth amount of $674,534.

Respectfully pointing out to the court yet another very serious weakness in the filed Motion for Judgment on the Pleadings: Attention is directed to Fed. R. Bank. P 7012 (b) requires objecting to the entry of final orders or judgments by the bankruptcy judge with certain time limits. The defendants raise this objection past the required deadline set forth in this Rule. See Docket # 2 Main Case Page 1 of 8 subtitle 6. (entered in Pacer: 11/29/17 11:06:53

Judge Victoria S. Kaufman's Status Conference Instructions

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Opposition was to file and serve not more than 14 days before the status conference a memorandum of points and authorities and evidence in support of position: i.e; within meaing of 28 U.S.C Section 157 (b)

They have not complied with this requirement.

## III.

### INITIATION OF DISCOVERY PROCEEDING INVALIDATES
### THE MOTION FOR JUDGEMENT ON PLEADING

In the instant case, the Defendants have filed for a motion for judgment on pleadings in violation of Rule 12(c) of FRCP. The Motion for Judgment on Pleadings is a motion made by a party, up to a point where trial is not delayed, claiming the opposing party has insufficient evidence to reasonably support its case. Judgment on the pleadings is a motion made after pleading and before discovery. Thus as per Rule 12 (c) of FRCP the motion for judgment on pleadings can be initiated only for deciding on a case without appreciating evidence. A motion for judgment on the pleadings is essentially trials on the pleadings and is not admissible if the discovery proceedings are initiated by either party.

In the instant case, the Plaintiff has initiated the Discovery process. An initial conference is one of the first steps of the discovery process in a civil case as per Rule 26 of FRCP. Thereby, the Plaintiff has already started with the process of discovery by requesting for the initiating conference.

In the meanwhile, it is important to make note of, the Plaintiff is currently in the process of seeking to add one or more parties (Law firm of Garrett & Tulley) via required filed Motion (Fed.Rule Civ. Proc. 20) to the Adversary Proceeding and for addressing this concealment concern adequately. Note: the Plaintiff has experienced two postponements of the initial status conferences (Local Bankruptcy Rule (LBR) 7016-1) concurrently with   the Defendant's now premature moving for the motion for Judgment on pleadings. April 4, 2018 has been set by the Honorable Court as the third continued date for conducting both the required LBR

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

7016-1 Initial Status Conference & the hearing on the present Motion for Judgment on the Pleadings on the same day.

This in itself is contradictory to Rule 12 (c) and Rule 26 of FRCP for motion for judgment and discovery process respectively.

This fast track calendaring of the MJOP is also in violation of Plaintiff's right to seek discovery; pertaining to their due process rights as it pertains to their PROPERTY (Residence of Debtor) as pursuant to **U. S. Const. art. XIV, § 1**. The Defendants on the other hand it is  contended are  concealing important material case facts absent discovery,  and yet have filed for the Motion for Judgment without adhering to the set rules and procedures.

## IV.

### U.S. Code › Title 11 › Chapter 3 › Subchapter III › § 341 MEETING IS MANDATORY FOR A BANKRUPTCY PROCEEDING

In the Motion for judgment on pleadings filed by the Defendants, they have alleged that the Bankruptcy Proceeding with respect to the Estate property was discharged by the Bankruptcy Court prior to the Adversary Proceeding. The Discharge of the Bankruptcy proceeding would invalidate the Adversary proceeding in itself is the argument of the Defendants.

However, 341 creditor meeting is a mandatory rule for bankruptcy proceeding prior to the issue of the "discharge" which was not complied in the instant case. The primary purpose of the section 341(a) meeting (the meeting of creditors), as in a chapter 7 case, is to provide the trustee and the creditors the opportunity to examine the debtor and determine whether there are any grounds for objecting to the plan.  Exhibit -3- Pages 40 - 42 .

The said meeting with the creditors is done prior to the discharge of the debtor in the bankruptcy case which was NOT adhered too, in the Plaintiff's case

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

and the Plaintiff was moreover "auto" discharged in the bankruptcy case prior to the completion of this mandatory Creditors Meeting rule.

Source:  **U.S. Department of Justice, Executive Office for Chapter 7 Trustees, Effective October 1, 2012.**  Handbook for Chapter 7 Trustees Page 3-4 Under: C. FINANCIAL DOCUMENTS.

*"Any continued or rescheduled meeting should be held before the time for objection to discharge has expired, unless the trustee has obtained an extension of time to object to the debtor's discharge. The debtor should not receive a discharge unless the debtor has been examined..."*

This in itself would render the present main bankruptcy case to have been discharged prematurely. Thus the said argument by the defendants in the Motion for Judgment On pleadings i.e.; post discharge violation, of the Adversary Proceeding filing is invalid.

## V.

## EVEN IF THE MOTION IS GRANTED, PLAINTIFF SHOULD BE ALLOWED LEAVE TO AMEND THE COMPLAINT TO CORRECT DEFICIENCIES

As noted earlier, even if a motion for judgment on the pleadings is granted, it is generally appropriate to do so while allowing the plaintiffs leave to amend their complaint. As per Rule 15(a)(2) of FRCP, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. Indeed, failure to grant leave to amend where amendment to correct the defects identified in the motion is possible is an abuse of discretion. *(Bettencourt v. Hennessy Industries, Inc. (2012) 205 Cal.App.4th 1103, 1106.)*

Here, none of Defendants' arguments identify the kind of irremediable flaw, that would justify denying leave to amend. Therefore, it is submitted by the Plaintiff that in the event the Court decides to grant Defendants' motion, the Honorable Court should, it is prayed, also in fairness grant the Plaintiff the leave to amend their complaint to correct any deficiencies identified in the court's ruling.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

In the alternative it is prayed the Court use their granted powers and refer this matter, forthwith, to mediation under the Central District of California Bankruptcy program. Plaintiff is confident that 4 hours of mediation will resolve this conflict among the parties; - previous JAMS Court ordered Mediation back in Summer of 2013 came very close in resulting of a meeting of the minds.

## 4.

## CONCLUSION

For all the above reasons, Defendants' motion should be denied and the case should move forward towards a trial on the merits of Plaintiffs' claims. Plaintiff adamantly contends they are very likely to succeed on all or if not a part of set forth claims.

Dated: 3/21/18

Respectfully submitted by,

Steven Mark Rosenberg.
Plaintiff
In Pro Per

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

# Exhibits

28

# Exhibit 1

HOWARD C. RILE, JR.
*Forensic Document Examiner*

AMERICAN SOCIETY OF
QUESTIONED DOCUMENT EXAMINERS

AMERICAN ACADEMY OF
FORENSIC SCIENCES

100 OCEANGATE, SUITE 670
LONG BEACH, CALIFORNIA 90802-4312
TEL: (562) 901-3376
FAX: (562) 901-3378
E-MAIL: HCRODE@AOL.COM

FORMERLY AFFILIATED WITH
HARRIS & HARRIS

DIPLOMATE, AMERICAN BOARD OF
FORENSIC DOCUMENT EXAMINERS

July 23, 2009

83098R

**VIA PERSONAL DELIVERY**

Steven Mark Rosenberg
15814 Septo Street
North Hills, CA  91343

SIGNATURE REPORT

Re:    Estate of Isadore Rosenberg

Dear Mr. Rosenberg:

Pursuant to your request, I have examined:

1.  Certified true copy of an Abandonment of Homestead dated March 5, 2007, recorded as Instrument Number 20070575005 in Los Angeles County on March 15, 2007;

2.  Certified true copy of a Grant Deed dated March 5, 2007, recorded as Instrument Number 20070575006 in Los Angeles County on March 15, 2007;

3.  Certified true copy of a Deed of Trust dated March 5, 2007, with an Adjustable Rate Balloon Rider also dated March 5, 2007, recorded as Instrument Number 20070575007 in Los Angeles County on March 15, 2007;

4.  Redacted photocopy of notary log entries corresponding to the above three documents for notary R. D. Salazar dated March 5, 2007;

5.  Photocopy of an Amended Escrow Instruction dated March 5, 2007.

Specifically in question on each of these documents is the purported signature of

Isadore Rosenberg.  Attached as Exhibits A and B are copies of the Abandonment of Homestead

Declaration Exhibit B

30

Steven Mark Rosenberg                    2                    July 23, 2009

and Grant Deed.  Attached as Exhibit C are copies of the first and signature pages of the Deed of

Trust and the signature page of the Adjustable Rate Rider.  Attached as Exhibit D is a copy of the

notary log pages.  Attached as Exhibit E is a copy of the Amended Escrow Instruction.

Submitted and identified as bearing the acknowledged genuine signature of

Isadore Rosenberg were:

1.    Photocopy of California Driver License D0572742 dated May 20, 1978;

2.    California Driver License D0572742 dated May 3, 1990;

3.    Photocopy of a Health Insurance card dated May 1, 1983;

4.    Original report card dated January 29, 1960;

5.    Original of Isadore and Norma P. Rosenberg Trust dated May 4, 1990;

6.    Original Individual Grant Deed dated May 4, 1990, recorded as Instrument
Number 90-847083 on May 8, 1990;

7.    NCR copy of Cemetary Purchase Agreement dated August 29, 1996;

8.    Original check number 4029 dated November 6, 1996;

9.    Machine copy of a Customer Account Transfer Form dated November 25,
1999;

10.    Copy of an Affidavit of Domicile notarized March 2, 2000;

11.    Machine copy of a Third Party Trading Authorization dated May 8, 2000;

12.    Two original checks, numbers 1332 and 1334, both dated April 5, 2001;

13.    Original check number 2332 dated April 4, 2004;

14.    Fax copy of a Statement of No Loss dated June 20, 2004;

15.    Copy of a Conditions of Admission dated October 21, 2005;

Steven Mark Rosenberg                          3                          July 23, 2009

    16.    Patient Authorization dated October 21, 2005;

    17.    Fax copy of a Transfer/1035 Exchange dated March 4, 2007;

    18.    Machine copies of four checks consisting of:

        a.  check number 1597 dated January 3, 2007

        b.  check number 1606 dated January 29, 2007;

        c.  check number 1644 dated March 15, 2007;

        d.  check number 1521 dated May 21, 2007.

Attached as Exhibit F are photocopies of the above described documents.

As a result of the examination and analysis, my observations are as follows:

1.    The evaluation of original signatures is a three-step procedure. The first step is to determine if the purported original ink signature is, in fact, a signature written by a human and not a machine reproduction. In the second step, the overall spontaneity or naturalness of the original disputed signature is evaluated. The purpose of this is to determine if one is dealing with handwriting as opposed to a tracing or a slowly written simulation. The third step involves the comparison of the overall execution and design of the questioned signature to a verified representative sampling of the individual's signature.

2.    There are intrinsic limits in the examination of copies rather than original documents. Copies are subject to manipulation that may not always be detectable. Additionally, subtle details that are of significance in evaluating signatures are obscured. The assumption is made in this report that the copies provided depict the physical evidence to be found on the original documents. While copies are not the best evidence, they can be of value if their limitations are recognized. Should the originals become available, I would reserve the right to review them prior to testimony.

3.    With respect to evaluating copied reproductions of signatures, if there are gross differences in terms of design and construction between the questioned and known signatures, that is generally not the fault of the copy process.

Steven Mark Rosenberg                    4                        July 23, 2009

> Consequently, an opinion that the signature is either not genuine or probably
> not genuine would be justified. If, on the other hand, there is agreement in
> terms of execution and design, and no blatant evidence of tracing or
> manipulation, the document may be what it purports to be and the signature
> may be genuine. The possibility of a carefully executed manipulation or
> simulation cannot be precluded. The only way to reach a definite opinion
> that the signature and document is authentic is to examine the original of the
> document in question.

4.   All of the submitted questioned documents are copies. I cannot completely
     evaluate the execution of the signatures. I can evaluate the individual letter
     design and overall construction.

5.   Bearing the above limitations in mind, I intercompared all of the submitted
     exemplars for Isadore Rosenberg. Attached as Exhibit G is an enlarged
     composite photocopy showing four of the six questioned signatures. In
     terms of overall design and construction, the six questioned signatures are
     consistent with being the work of one writer.

6.   I intercompared all of the submitted exemplars for Isadore Rosenberg, which
     are dated from 1960 through 2007. His signature throughout the 47-year-
     time period covered by the exemplars remained remarkably consistent in
     terms of overall design and construction. Mr. Rosenberg's signature was a
     complicated design executed in a spontaneous manner. On most of his
     checks, Mr. Rosenberg used a contraction, "I Rosenberg." The most
     proximate exemplar to the March 5, 2007 date on all six of the questioned
     documents [Exhibits A through E] are the copies of the four checks dated
     from January 3 through May 21, 2007 and the Transfer/1035 Exchange
     (known signatures #17 and #18, Exhibit F). The Transfer/1035 Exchange is
     dated March 4, 2007, the day before the date on all six questioned
     signatures. Attached as Exhibit H is a composite photocopy showing a
     sampling of the submitted exemplars.

7.   I next intercompared all of the six questioned Isadore Rosenberg signatures
     to his submitted exemplars. Comparing the questioned to all of the
     submitted exemplars, I observed what I consider to be significant consistent
     differences between the questioned and known signatures. Among the
     features that I considered significant were the "sad" combination in
     "Isadore," the capital "R" in "Rosenberg," and the "osen" combination in
     "Rosenberg."

Steven Mark Rosenberg                    5                         July 23, 2009

8.    I next examined and compared the handwriting and signature in the jurats on
the Abandonment of Homestead, Grant Deed and Deed of Trust to the
certified true copy of the Surety Bond for notary R. D. Salazar dated January
28, 2004.  Attached as Exhibit I is a copy of the certified copy of the Surety
Bond.  The handprinted name and signature of R. D. Salazar on the three
jurats and the bond were in very close agreement.

## O P I N I O N

After due consideration, and bearing in mind the limitations imposed by the

examination of copies, my opinions are as follows:

1.    The purported signature of Isadore Rosenberg on the Abandonment of

Homestead, Grant Deed, Deed of Trust, Adjustable Rate Rider, notary log, and Amended Escrow

Instruction described and copies attached as Exhibits A through F, and the exemplars attributed

to him, were not written by the same individual.  The differences observed in the questioned and

known signatures cannot reasonably be explained as caused by the copy process(es).

2.    The handprinting and signature of R. D. Salazar on the jurats for the

Abandonment of Homestead, Grant Deed, and Deed of Trust, and on the Surety Bond were very

probably written by the same individual.

All of the submitted materials are being returned with this report by personal

delivery.

Respectfully submitted,

Howard C. Rile, Jr.

HCR:nad

34

## DECLARATION OF HOWARD C. RILE, JR.

I, Howard C. Rile, Jr., having knowledge of the following facts, declare the same to be true.

My qualifications as a forensic document examiner are set forth in the attached resume, which is marked Exhibit A and incorporated herein by reference.

I was retained by Steven Mark Rosenberg to examine documents in connection with the Estate of Isadore Rosenberg. A copy of my report, based upon said examination, is attached, marked Exhibit B, and incorporated herein by reference.

I have first-hand knowledge of the matters stated above, and if called as a witness, I could and would testify competently thereto under oath. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I am signing this declaration on July ⟨24⟩, 2009 at Long Beach, California.

Howard C. Rile, Jr.

---

DECLARATION OF HOWARD C. RILE, JR.

American Society of Questioned
Document Examiners

American Academy of
Forensic Sciences

# Howard C. Rile, Jr.
*Forensic Document Examiner*

100 Oceangate, Suite 670
Long Beach, CA 90802-4312
Tel: 562/901-3376 ♦ Fax: 562/901-3378
Website: www.asqdc.org/rile.htm   Email: hcrqdc@aol.com

Successor to Harris & Harris

Diplomate, American Board of
Forensic Document Examiners

## RÉSUMÉ

## HOWARD C. RILE, JR.
## FORENSIC DOCUMENT EXAMINER

I graduated from California State University at Los Angeles in 1968 with a Bachelor of Science degree in Chemistry. From 1968 to 1972, I worked as a chemist at the Jet Propulsion Laboratory in Pasadena, California. Since 1972, I have devoted full time to the study and examination of problems relating to disputed handwriting, signatures, typewriting, and identification of photocopiers, ink, and papers.

From 1972 to 1974, I was employed and trained at the firm of Harris and Harris, Examiners of Questioned Documents, at Los Angeles, California. Between 1974 and 1979, I was employed by the Los Angeles County Auditor-Controller as a document examiner; and from 1979 to 1983, I was the questioned document examiner for the State of Colorado at the Colorado Bureau of Investigation in Denver. Since 1983 I have been an independent, private examiner; I was affiliated with Harris and Harris until 1996.

I am certified by and past president (1997-1999) of the American Board of Forensic Document Examiners, Inc. I am also a member of and past president (2006-2008) of the American Society of Questioned Document Examiners, Inc. I am a member and ex-Membership/Credentials Chairman of the Southwestern Association of Forensic Document Examiners.  I am a member of the Canadian Society of Forensic Science; and the Document Section of the American Academy of Forensic Science, and the ASTM.  I revised a chapter on signatures in *Scientific Examination of Questioned Documents, 2nd Edition.*

I have qualified and testified as an expert witness in my specialty in more than 500 cases involving criminal and civil matters in federal and/or state courts in California, Arizona, Colorado, Nevada, Hawaii, Kansas, New York, and Wyoming.

Our office and laboratory are equipped with microscopes, cameras, a digital and photographic darkroom, ESDA, a Video Scanning Comparator (VSC-4), measuring devices, and other specialized instruments. We maintain a library and extensive reference files.

References and a listing of cases in which I have testified are available upon request.

Declaration Exhibit A

36

# Exhibit 2



**NEWS
RELEASE**

For Immediate Distribution

July 10, 2007

# United States
# Attorney's Office
### Central District of California

Thom Mrozek, Public Affairs Officer
(213) 894-6947
thom.mrozek@usdoj.gov
www.usdoj.gov/usao/cac

## FORMER USC REAL ESTATE PROFESSOR WHO BILKED
## STUDENTS, OTHERS OUT OF $1.5 MILLION IN REAL ESTATE
## INVESTMENT SCAM SENTENCED TO FEDERAL PRISON

An Orange County man who ran a real estate investment scam that lured victims with bogus claims of large returns on investments in commercial real estate developments was sentenced today to six years in federal prison.

Barry Landreth, 38, formerly of Coto de Caza and now of Fullerton, was sentenced this morning by United States District Judge Cormac J. Carney. A hearing has been set for August 20, 2007, to determine the amount of restitution owed by Landreth. Judge Carney ordered Landreth to surrender to custody by July 30, 2007.

At today's hearing, six victims addressed the Court, with one man, a former student of Landreth's at USC, saying that Landreth was a professor he trusted and went to for career advice.  Several victims testified that the losses they incurred from the scheme have ruined them financially.  At least one victim said he would have to work well beyond his planned retirement to recoup the money he lost to Landreth.

Landreth pleaded guilty in March to a federal wire fraud charge. By pleading guilty, Landreth, a former adjunct professor of real estate finance at the University of Southern California, admitted that he ran two schemes involving purported real estate development projects in Chicago and Las Vegas. Through his company,

38

Webster Realty Investors, Landreth offered short-term, high-yield real estate investments in two projects that he called Discovery Chicago LLC and Discovery Las Vegas LLC. Landreth induced victims, including wealthy investors and several USC students, to invest with promises that their money would be used in one of the two projects. In fact, Landreth did not use the victims' money for either project, but instead spent the money on business expenses for Webster Realty Investors and on personal expenses.

As part of the scheme, Landreth falsely represented to victims that the projects would provide 190 percent returns on investments within 30 days to 45 days.

In court documents, the government presented evidence that Landreth used victims' money to buy a Cadillac Escalade and several show jumping horses.

This case was investigated by the Federal Bureau of Investigation, which received assistance from the California Department of Corporations.

CONTACT:  Assistant United States Attorney Gregory Staples
(714) 338-3535

Release No. 07-090

# Exhibit 3

**Repeat-cacb, RepeatPACER, NoFeeRequired**

# U.S. Bankruptcy Court
# Central District of California (San Fernando Valley)
# Bankruptcy Petition #: 1:17-bk-11748-VK

*Date filed:* 06/30/2017

*Assigned to:* Victoria S. Kaufman
Chapter 7
Voluntary
No asset

*Debtor discharged:* 10/10/2017
*341 meeting:* 01/05/2018
*Deadline for objecting to* 09/29/2017
*discharge:*
*Deadline for financial* 09/29/2017
*mgmt. course:*

*Debtor disposition:* Standard Discharge

| | |
|---|---|
| **Debtor**<br>**Steven Mark Rosenberg**<br>106 1/2 Judge John Aiso St #225<br>Los Angeles, CA 90012<br>LOS ANGELES-CA<br>SSN / ITIN: xxx-xx-7342 | represented by **Charles Shamash**<br>Caceres & Shamash<br>LLP<br>8200 Wilshire Blvd Ste<br>400<br>Beverly Hills, CA 90211<br>310-205-3400<br>Fax : 310-878-8308<br>Email: cs@locs.com |

**Trustee**
**Diane C Weil (TR)**
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
(310) 277-0077
*TERMINATED: 09/18/2017*

**Trustee**
**Amy L Goldman (TR)**
633 W 5th Street, Suite 4000
Los Angeles, CA 90071
(213) 250-1800

**U.S. Trustee**
**United States Trustee (SV)**
915 Wilshire Blvd, Suite 1850

## 1:17-bk-11748-VK Steven Mark Rosenberg
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Victoria S. Kaufman
**Date filed:** 06/30/2017 **Date of last filing:** 01/05/2018
**Debtor discharged:** 10/10/2017

# Pending Statuses

| Status | Begin Date | Time in Status | # | Status Set By |
|--------|-----------|----------------|---|---------------|
| Awaiting Closing | 10/10/2017 | 143 days | 21 | ❍ ORDER OF DISCHARGE - Chapter 7 (CACB AutoDischarge) (BNC) |
| Awaiting Discharge | 01/05/2018 | 56 days | | ❍ Chapter 7 Trustee's Report of No Distribution |

Click here to view terminated Statuses.

42

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
*2729 W. 78 EST, Inglewood, CA 90305*

A true and correct copy of the foregoing document entitled (specify): *Reply To Defendants (Ocwen Loan*
*As to only* *Servicing & MERS)*
*Memorandum of Points AND Authorities MOTION FOR JUDGMENT*
*IN Support of The opposition To Defendants Mtc For Judgment ON THE PLEADINGS*
*on the pleadings*
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☐ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL:**
On (date) *3/21/18*_____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| *3/21/18* | *Canny Hudson* | *[signature]* |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case 1:17-ap-01096-VK

Reply To Defendants [AS TO ONLY:
Motion For Judicial Judgment (Ocwen Loan Servicing &
On the Pleading    MERS)

F 7016-1.1

| In re | CHAPTER: 7 |
| Steven Mark Rosenberg | CASE NO.: 1:17-bk-11748-VK |
| Debtor(s). | ADVERSARY NO.: 1:17-ap-01096 |

**ADDITIONAL SERVICE INFORMATION** (if needed):

Honorable Judge Victoria S. Kaufman
U.S. Bankruptcy Court - Central District
(San Fernando Valley)
21041 Burbank Blvd
Woodland Hills, CA 91367-6603

Wright, Finlay & Zak, LLP
Attn: Attorneys T. Robert Finlay & Nicole S Dunn
4665 Mac Arthur Court, Suite 200
Newport Beach, CA 92660

Law Firm of Garrett & Tully
225 South Lake Avenue
Suite 100
Pasadena, CA
Attn: Robert Garrett

Boca Raton, Florida 33487

Trustee
Amy L Goldman, Esq
633 W. 5th Street, St. 4000
Los Angeles, CA 90071

Department of Justice
U.S. Trustee (SV)
915 Wilshire Blvd, St 1850
Los Angeles, CA
90017

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 7016-1.1

January 2009