1   Steven Mark Rosenberg,
2   106 ½ Judge John Aiso Street, #225
    Los Angeles, CA 90012
3   Phone: 310.971.5037
4
    Email: Founder@PuttingElders1st.org
5
6   Plaintiff, In Pro Per
7

**FILED**
APR 0 2 2018
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:          Deputy Clerk

8                 **UNITED STATES BANKRUPTCY COURT**
9       **CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**
10

11  STEVEN MARK ROSENBERG          ) **Bank. Case No. 1:17-BK-11748-VK**
12              Debtor,            ) **Chapter 7**
                                   ) **Adversary Case No. 1:17-ap-01096-vk**
13  STEVEN MARK ROSENBERG,         )
                                   ) **APPLICATION FOR APPOINMENT OF**
14              Plaintiff,         ) **COUNSEL (U.S.C. 1915 (e) (1) &**
                                   ) **ATTACHED DECLARATION**
15  vs.                            )
                                   ) Hearing:
16  ALLIANCE BANCORP, INC (ESTATE),) Date:  MAY 02,
    MORTGAGE ELECTRONIC SYSTEMS,   ) Time:  2:30
17  INC; OCWEN LOAN SERVICING,     ) Courtroom: 301
    ONEWEST BANK, DEUTSCHE BANK    )
18  NATIONAL TRUST COMPANY AS      )
19  TRUSTEE FOR ALLIANCEE BANCORP  )
    MORTGAGE BACKED PASS-THROUGH   )
20  CERTIFICATE SERIES 2007-OA1    )
21  2007-OA1 AND DOES 1 THROUGH 25,)
    INCLUSIVE                      )
22                                 )

23
24  **POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPOINT COUNSEL**
25  The Plaintiff, Steven Mark Rosenberg respectfully requests that this Court grant the instant
26  application to appoint counsel in the interests of justice and judicial economy. Plaintiff requires
27
    ───────────────────────────────────────────────────
                                    1
28  APPLICATION FOR APPOINMENT OF COUNSEL (U.S.C. 1915 (e) (1)
                    & ATTACHED DECLARATION

1    assistance so as to fairly and adequately address the issues presented in this case. Plaintiff's

2    probate case has been languishing for a decade. If Plaintiff had counsel to represent him in the

3    action, it could have certainly expedited the process and assisted in quickly resolving the matter.

4    The instant case involves legal issues that are too complex and esoteric for Plaintiff to fully

5    understand in a manner that a trained attorney could contend with. Moreover, Plaintiff is

6    bringing claims against opponents with massive financial resources. Defendants have

7    successfully dragged the state court case out all these years, knowing that Plaintiff's ability to

8    fight their war of attrition is extremely limited. Yet, despite Defendants' best efforts to destroy

9    Plaintiff's claims, his causes of action remain viable in the Superior Court, demonstrating the

10   strong likelihood that Plaintiff will succeed on the merits of that case. There is no reason to

11   determine that Plaintiff's claims will be unsuccessful here. Finally, Plaintiff simply cannot afford

12   to retain counsel. The foregoing circumstances place Plaintiff at an enormous disadvantage. In

13   the interests of justice, the Court should appoint an attorney to Plaintiff.

14   "In proceedings in forma pauperis, the district court 'may request an attorney to represent any

15   person unable to afford counsel.'" Agyeman v. Corrections Corp. of America, 390 F.3d 1101

16   (9th Cir. 2004) (denial of application for counsel vacated and remanded). Here, as in Agyeman,

17   the movant "lacks legal training" and is at an enormous disadvantage in representing himself

18   versus a major financial institution. Id. at 1104. Legal procedure alone is daunting for the novice

19   and bankruptcy matters are further complicated by financial accountings. It is for these reasons

20   that bankruptcy courts throughout the country have court-appointed trustees. Plaintiff requires a

21   lawyer to properly prosecute this matter. Id.

22   This case entails the requisite complexity to require assistance of counsel. Id. "The decision to

23   appoint such counsel is within 'the sound discretion of the trial court and is granted only in

exceptional circumstances.'" Id., quoting Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir.

1984). A finding of exceptional circumstances of the plaintiff seeking assistance requires at least

an evaluation of the likelihood of plaintiff's success on the merits and an evaluation of the

plaintiff's ability to articulate his claims "in light of the complexity of the legal issues involved."

Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). This case involves the most

complex issues that arise in a probate action, coupled with bankruptcy issues. Thus far,

Defendants have taken advantage of these facts, along with Plaintiff's lack of knowledge and

experience, resulting in a protracted matter in the Probate Court. These facts demonstrate

exceptional circumstances, that this Court is asked to consider in its sound discretion.

The merits of Plaintiff's case are also strong enough to demonstrate likelihood of success. (In

Edmonds v. E.I. DuPont deNemours Co., 315 F. Supp. 523 [D.Kan. 1970)], which is not

controlling, but, nevertheless, may add to the principle, the Court remarked that the strength of a

litigant's case may justify appointing counsel). It is important to note that the instant case is like

thousands of similar cases being filed across the country. For instance, the Consumer Financial

Protection Bureau has brought suit against Ocwen for consumer protection violations similar to

the instant case. See Consumer Fin. Prot. Bur. V. Ocwen, 9:17-CV-80495 (SDFL 2017). The

case against "one of the largest mortgage services in the United States" alleges illegally

foreclosing on people's homes. In fact, a Consent Decree from the California Department of

Business Oversight was issued last year against Ocwen, precluding them from continuing to file

unverified real property documents with County Recorder Offices & Courts within the State.

See Exhibit 1 ( 14 ) ; Page 5 Lines 1 to 6 .

There, as here, the defendant has used inaccurate and incomplete information in a manner that

harms borrowers (California Civil Code Section 2924.17).

APPLICATION FOR APPOINMENT OF COUNSEL (U.S.C. 1915 (e) (1)
& ATTACHED DECLARATION

1   Another factor in determining eligibility for the appointment of counsel relates to Plaintiff's

2   efforts to obtain counsel. See Caston v. Sears, Roebuck Co, Hattiesburg, 556 F.2d 1305 (5th Cir.

3   1977). Here, Plaintiff has made many attempts to retain counsel within his means, to no avail.

4   Some attorneys have been employed in the probate action to assist Plaintiff, but their retention

5   could not be maintained. Plaintiff even went so far as to commence a "GoFundMe" campaign

6   online, but was unable to secure enough funds to proceed with retaining an attorney. While

7   Plaintiff is not expected to exhaust the local legal directory, he has shown "diligence in

8   attempting to obtain a lawyer to assist him;" this "may properly be considered by the [] court in

9

10  assessing the justness in the application for counsel." Id.

11  "The refusal to appoint counsel may in some circumstances effectively deny a potential plaintiff

12  his only remedy under law. Caston v. Sears, Roebuck Co, Hattiesburg, 556 F.2d 1305 (5th Cir.

13  1977), citing Beverly v. Lone Star Lead Constr. Corp., 437 F.2d 1136, 1141 (5th Cir. 1971).

14
    With a motion to dismiss pending, Plaintiff asks that this application be considered prior to
15
    making a determination on that motion. An attorney is needed by Plaintiff to fairly and properly
16
17  address the most drastic of legal remedies, a judgment on the pleadings. This is understood as

18  being of paramount importance in the federal courts. See, e.g., Johnson v. U.S. Department of

19  Treasury, 939 F.2d 820, 824 (9th Cir. 1991) (district court may not dismiss a complaint prior to

20  ruling upon a pro se plaintiff's motion for appointment of counsel).

21
    The procedural history of this case should be a clear indication to the Court that legal
22
23  representation is desperately needed in order for Plaintiff to have a chance at a fair hearing of his

24  claims.

25  No legal precedent is required to support the fact that large financial institutions like the

26  Defendants have a great advantage over pro per litigants and have been known to bully such

27
    _____
                        4
28  APPLICATION FOR APPOINMENT OF COUNSEL (U.S.C. 1915 (e) (1)
                    & ATTACHED DECLARATION

4

litigants in a manner that thwarts the interests of justice. Litigants like Plaintiff are at grave risk of losing their family homes by virtue of their lack of resources to combat the powerful force of bank defendants. Plaintiff is utterly unarmed in this legal battle without legal representation. Having any attorney trained in legal theory and process would help to mitigate the effects of this clear imbalance of resources. Plaintiff requests that this Court appoint counsel – even for a limited purpose, such as to facilitate settlement – in the interests of justice. Having legal representation on both sides of this litigation will almost surely expedite the matter. This serves the public interest as well.

For the foregoing reasons, the plaintiff, Steven Mark Rosenberg, respectfully requests that the application for the appointment of counsel be granted to Plaintiff.


Dated:   April 2, 2018                                      Respectfully submitted,


                                                         STEVEN MARK ROSENBERG
                                                              Pro per./ pro se


APPLICATION FOR APPOINMENT OF COUNSEL (U.S.C. 1915 (e) (1)
& ATTACHED DECLARATION

5

# DECLARATION

## DECLARATION OF STEVEN MARK ROSENBERG

1. I, Steven Mark Rosenberg, declare:

2. That I am the plaintiff in this action.

3. That, I am indigent, as defined by statute, and I cannot afford to independently hire an attorney to represent me in this case.

4. That my only income derives from a reduced Government work retirement pension, that cannot support the retention of an attorney.

5. That I am only limited trained in the law and have no true expertise in legal practice.

6. That I have contacted at least six (6) lawyers or law firms to assist me in this case in a manner that I can financially afford.

7. That no lawyer or law firm that I have contacted would agree to represent me for a limited fee that I could afford.

8. That I feel that I am at a distinct disadvantage in this case, prosecuting a claim against a major financial institution, which has virtually endless financial and legal resources to defend in this action.

9. That, although I am an educated individual, I am largely lost in the area of legal procedure and processes.

10. That I have spent countless hours online in an attempt to grasp the legal process and the law as it pertains to my cases.

11. That even after all this time litigating these actions and doing research online, I have been advised by attorneys, who have donated limited time to assess my legal research, that I have not understood the legal authority necessary to adequately prosecute this action.

12. That I have gained only a superficial comprehension of said legal processes and have, at best, learned that I am out of my depth in prosecuting this case by myself.

13. That I have done my best to represent myself properly in this and the underlying action, making every possible effort to exercise my rights and apply the law to them.

14. That, despite not retaining counsel, these proceedings have still cost me thousands of dollars.

15. That, after all these years of litigating this case, I believe that a court-appointed attorney would not cost the Court much at this stage.

16. That I believe that counsel would expedite a resolution of this matter.

17. That because of this disadvantage, my case has languished in the Probate Court for a close to a decade.

18. That I believe that if I don't have an attorney to represent me in this action, I may likely lose my case due to ignorance of the law and legal procedure.

19. That, based on the foregoing, I believe that my case demonstrates exceptional circumstances under which the Court should grant this application.

20. Under penalties of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 2nd day of April, 2018 at _Los Angeles_, California.

STEVEN MARK ROSENBERG, In Pro Per
Plaintiff

# EXHIBIT

State of California - Department of Business Oversight

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BEFORE THE DEPARTMENT OF BUSINESS OVERSIGHT**

**OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| In the Matter of: | CRMLA License No.: 413-0544 |
| THE COMMISSIONER OF BUSINESS OVERSIGHT, | |
| Complainant, | **CONSENT ORDER** |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Respondent. | |

     This Consent Order ("Order") relating to settlement and termination of the January 2015 Consent Order ("January 2015 Consent Order") is entered into between the Commissioner of Business Oversight ("Commissioner"), and Ocwen Loan Servicing, LLC ("OLS") (hereinafter collectively referred to as "the Parties") as of the date set forth in paragraph 48 below ("Effective Date").

**RECITALS**

    A.    OLS is a limited liability company formed and existing under the laws of the State of Delaware and authorized to conduct business in the State of California.

-1-

CONSENT ORDER

16

State of California - Department of Business Oversight

B.    OLS is a residential mortgage lender and loan servicer licensed by the Commissioner pursuant to the California Residential Mortgage Lending Act ("CRMLA") (Fin. Code, § 50000 et seq.). OLS has its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409. In California, OLS has a branch office located at 801 North Brand Boulevard, Suite 650, Glendale, CA 91203.

C.    The Department of Business Oversight ("Department"), through the Commissioner, has jurisdiction over the licensing and regulation of entities engaged in the business of mortgage lending and/or servicing pursuant to the CRMLA.

D.    OLS reported to the Department that in California, from January 1, 2012 to June 30, 2015, it serviced loans for more than 531,000 California borrowers.

E.    Pursuant to Financial Code section 50302, the Commissioner is required to examine the records, documents and affairs of each licensee under the CRMLA to ensure compliance with the law. Financial Code section 50314 requires a licensee to keep records and documents that will properly enable the Commissioner to determine whether the licensee is in compliance with the law.

F.    On or about January 8, 2013, the Commissioner commenced a routine regulatory examination of OLS through Department examination staff to ensure OLS's compliance with the CRMLA and the California Homeowner Bill of Rights ("HBOR"), a package of amendments to the California Civil Code that became law on January 1, 2013.

G.    Ocwen repeatedly failed to timely and fully respond to the Department's requests for loan related information and documents, including through a lawfully issued administrative subpoena duces tecum, resulting in the Department issuing a number of administrative orders to Ocwen, such as an Order to Discontinue Violations on June 16, 2014, an Order of Forfeiture on October 3, 2014, an Order of Forfeiture on November 26, 2014, an Order of Forfeiture on January 2, 2015, an Order of Forfeiture on March 24, 2015, and an Order of Forfeiture on May 22, 2015.

H.    The Department filed an administrative action on October 3, 2014 to suspend OLS's CRMLA license, *Commissioner of Business Oversight v. Ocwen Loan Servicing, LLC*, OAH No. 2014100930 (the "Accusation"). On or about October 3, 2014, OLS was served with the Accusation. OLS timely filed a Notice of Defense with the Commissioner.

-2-
CONSENT ORDER

11

I.    On January 23, 2015, the Department and OLS entered into the January 2015 Consent Order to resolve the Accusation.

J.    The January 2015 Consent Order, among other provisions:

i.    Prohibited OLS from acquiring new servicing rights for loans secured by California properties until the Department was satisfied OLS could satisfactorily respond to requests for information and documents made in the course of a regulatory examination;

ii.    Provided that an independent third party auditor ("Auditor") selected by the Department would conduct an examination of OLS, for the period from January 1, 2012 to June 30, 2015 ("Review Period"), consisting of two parts: (1) a Servicing Practices Review to assess how OLS's servicing policies and procedures affected its ability to comply with state and federal laws and regulations; and (2) a Compliance Review of OLS loan files to assess OLS's compliance with state and federal laws and regulations;

iii.    Required OLS to submit to the Department for its approval an Action Plan designed to address and implement corrective measures, and address any deficiencies and other issues identified by the Servicing Practices Review; and

iv.    Provided for the Department's withdrawal of the pending Accusation, without prejudice, which the Department did on July 15, 2015.

K.    The Auditor conducted the Compliance Review and Servicing Practices Review and began monitoring OLS's implementation of the Department-approved Action Plan.

L.    The examination found OLS grew its business aggressively during the Review Period but failed to implement risk management and compliance policies, procedures and internal controls sufficient to ensure protection of California borrowers and compliance with California and federal laws and regulations.

M.    The Servicing Practices Review found that during the Review Period OLS failed to implement effective internal controls to ensure compliance with applicable federal and state laws, and the January 2015 Consent Order. For example, the Servicing Practices Review found:

State of California - Department of Business Oversight

i.    OLS did not promptly develop and implement written policies and procedures governing compliance with various laws, including HBOR, while other policies and procedures were deficient;

ii.    A systemic deficiency in OLS's loan servicing operation that resulted in OLS mailing certain time-sensitive letters, including letters to borrowers regarding pending loan modification requests, to some California borrowers after the date listed on the letter, often by many days. This may have affected borrowers' ability to respond by the deadlines stated in the letters, possibly jeopardizing such borrowers' ability to obtain loan modifications. This systemic deficiency impacted more than 500 different types of letters sent to California borrowers and was addressed by OLS over two years after it was first discovered. OLS discovered this issue prior to the January 2015 Consent Order. To address the problem, OLS initiated a voluntary remediation program – also prior to the January 2015 Consent Order – to compensate harmed borrowers. Based on OLS's estimates, approximately 22,422 California borrowers were sent a letter that may have been affected by the delay. As part of the remediation program, OLS sent solicitations to the 22,422 California borrowers asking them to submit claim forms in order to receive compensation. Approximately 3,127 California borrowers submitted claim forms, leaving approximately 19,295 borrowers who did not submit claim forms; and

iii.    OLS violated paragraph 3 of the January 2015 Consent Order, which prohibits OLS from acquiring any additional mortgage servicing rights for new California loans, by servicing loans after the prohibition took effect.

N.    The Compliance Review identified numerous violations of federal and state laws and regulations. Sections 50130, 50204 and 50505 of the CRMLA require OLS to comply with federal and state laws and regulations.

O.    By entering into this Order, OLS does not admit the allegations set forth in the Order other than those facts deemed necessary to establish the jurisdiction of the Commissioner.

///

State of California - Department of Business Oversight

-4-
CONSENT ORDER

13

State of California - Department of Business Oversight

P.    The Compliance Review found the following violations in a share of sample loan files:

**California Homeowner Bill of Rights**

**(Civ. Code, §§ 2923.6, 2924.10, 2924.17.)**

i.    California borrowers who applied for loss mitigation alternatives were not sent written denial notices containing all information required by HBOR (Civ. Code § 2923.6, subd. (f));

ii.    Delinquent California borrowers were incorrectly informed that they were current on their mortgage payments in written denial notices provided to borrowers pursuant to HBOR (Civ. Code § 2923.6, subd. (f));

iii.    California borrowers were not provided written notice regarding documentation missing from a borrower's incomplete loan modification application, including income documentation, as required by HBOR (Civ. Code § 2924.10, subd. (a)(4)); and

 iv.    California borrowers received inaccurate or unreliable information on recorded Notices of Default as prohibited by HBOR (Civ. Code § 2924.17, subd. (a)).

**California Civil Code Relating to Mortgages**

**(Civ. Code, § 2923.3.)**

v.    California borrowers in foreclosure were not provided with a copy of their recorded Notice of Default, as required by Civil Code section 2923.3, subdivision (a).

**California Residential Mortgage Lending Act**

**(Fin. Code, § 50000 et seq.)**

vi.    OLS did not maintain evidence of compliance with numerous federal and state laws and regulations:

A.    Ocwen provided no evidence it sent a required written notice to certain California borrowers, regarding protections afforded to servicemembers under the federal Servicemembers Civil Relief Act ("SCRA") (50 USC, § 3901 et seq.), as required by HBOR (Civ. Code, § 2923.55, subd. (b)(1)(A));

B.    The loan files for borrowers did not contain evidence Ocwen complied

-5-
CONSENT ORDER

14

State of California - Department of Business Oversight

with the "due diligence" contact requirements of HBOR (Civ. Code, § 2923.55, subd. (f)), including requirements to send multiple letters to California borrowers and make telephone calls to borrowers at least three times at different hours and on different days;

C.    California borrower loan files did not contain evidence that Ocwen complied with the requirement of HBOR (Civ. Code, § 2923.6, subd. (f)) to send written loan modification denial notices to borrowers;

D.    Ocwen did not provide evidence it sent California borrowers a written notice of postponement of foreclosure sale within five business days following the postponement, when the foreclosure sale was postponed for at least 10 business days, as required by HBOR (Civ. Code, § 2924, subd. (a)(5));

E.    Ocwen did not provide evidence it sent a written notice to California borrowers regarding available loss mitigation alternatives within 5 business days following the recording of a Notice of Default, as required by HBOR (Civ. Code, § 2924.9, subd. (a));

F.    California borrowers' loan files did not contain evidence Ocwen sent a recorded Notice of Default and/or the required summaries of key information, as required by the Civil Code (Civ. Code, § 2923.3, subd. (a));

G.    For California borrowers, Ocwen did not provide evidence it posted a Notice of Sale on a property at least 20 days before the date of the foreclosure sale, as required by the Civil Code (Civ. Code, § 2924f, subd. (b)(3));

H.    When California borrowers' billing addresses were different from the addresses of the property securing the mortgage, loan files did not contain evidence Ocwen sent the borrower a required notice addressed to the "resident of property subject to foreclosure sale," as required by the Civil Code (Civ. Code, § 2924.8, subd. (a)(1)); and

I.    Ocwen did not provide evidence it sent an escrow account statement to California borrowers, as required by section 1024.17, subdivision (i), of

15

State of California - Department of Business Oversight

Regulation X (12 C.F.R., § 1024 et seq.) of the federal Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C., § 2601 et seq.).

**Regulation X of the Real Estate Settlement Procedures Act**

**(12 C.F.R. § 1024 et seq.; 12 U.S.C. § 2601 et seq.; Fin. Code § 50130, subd. (g).)**

vii.    California borrowers were not informed of the timelines to accept or reject a loan modification offer and details on how to appeal the denial of a loan modification, as required by Regulation X (12 C.F.R. § 1024.41, subd. (c)(ii));

viii.    California borrowers were not provided with a written decision explaining the denial of each available loss mitigation alternative, as required by Regulation X (12 C.F.R. § 1024.41, subd. (d));

ix.    California borrowers received no annual analyses of their escrow accounts, as required by Regulation X (12 C.F.R. §§ 1024.17, subd. (i)) and RESPA (12 U.S.C. § 2609, subd. (c)(2)). For such borrowers, OLS also did not comply with specific requirements in Regulation X (12 C.F.R. §§ 1024.17, subd. (f)) and RESPA (12 U.S.C. § 2609, subd. (b)) for handling overages, shortages and deficiencies that would be identified in an annual analysis of borrower escrow accounts;

x.    California borrowers did not receive an annual escrow account statement within 30 days of the completion of the annual escrow account analysis period, as required by Regulation X (12 C.F.R. § 1024.17, subd. (i)) and RESPA (12 U.S.C. § 2609, subd. (c)(2)); and

xi.    OLS did not maintain policies and procedures reasonably designed to promptly identify and facilitate communication with the successor in interest of deceased California borrowers' with respect to the property secured by the deceased California borrowers' mortgage loan, as required by Regulation X (12 C.F.R. § 1024.38, subd. (b)(1)(vi)).

**Regulation Z of the Truth in Lending Act**

**(12 C.F.R. § 1026 et seq.; 15 U.S.C. § 1601 et seq.; Fin. Code § 50130, subd. (g).)**

xii.    OLS sent California borrowers monthly statements that did not provide a

State of California - Department of Business Oversight

breakdown of the late fees and charges billed to borrowers, as required by Regulation Z (12 C.F.R. § 1026.41, subd. (d)(1)(ii)) and the federal Truth in Lending Act (15 U.S.C.. § 1638, subd. (f)(1)(E)); and

xiii.    OLS sent inaccurate and untimely notices, or did not send notices required under Regulation Z (12 C.F.R. § 1026.41, subd. (d)(8)), to California borrowers who were more than 45 days delinquent on their mortgage payments. These notices contained incorrect delinquent payment amounts or misstated total amounts due.

### Homeowners Protection Act

### (12 U.S.C. § 4901 et seq.; Fin. Code § 50130, subd. (g).)

xiv.    OLS collected California borrower-paid private mortgage insurance premiums beyond statutorily-mandated termination dates and failed to recalculate amortization schedules and termination dates after borrowers executed loan modifications, as required by the federal Homeowners Protection Act (12 U.S.C. § 4902, subds. (d)-(f)).

### Fair Credit Reporting Act

### (15 U.S.C. § 1681 et seq.; Fin. Code § 50130, subd. (g).)

xv.    OLS did not report, or did not timely report, corrected California borrower information to all credit reporting agencies to which OLS had previously provided incorrect information, as required by the federal Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681s-2, subds. (a)(2), (a)(8)(E), (b)(1)(d));

xvi.    OLS did not report to credit reporting agencies OLS's receipt of notice that California borrowers' disputed information OLS had previously reported, as required by FCRA (15 U.S.C. § 1681s-2, subd. (a)(3)); and

xvii.    OLS did not review all relevant California borrower information from a credit reporting agency or borrower upon receipt of borrower disputes, as required by FCRA (15 U.S.C. § 1681s-2, subds. (a)(8)(E), (b)(1)(B)).

### Servicemembers Civil Relief Act

### (50 U.S.C. § 3901 et seq.; Fin. Code § 50130, subd. (g).)

xviii.    OLS did not timely reduce the monthly interest rate to 6% for California

State of California - Department of Business Oversight

1   servicemembers on active duty, as required by SCRA (50 U.S.C. § 3937, subd. (a)).

2   **Flood Disaster Protection Act**

3   **(42 U.S.C. § 4001 et seq.; Fin. Code § 50130, subd. (g).)**

4   xix.    OLS obtained insurance on California borrowers' homes prior to expiration of

5   the statutory waiting period delineated in the federal Flood Disaster Protection Act

6   ("FDPA") (42 U.S.C. § 4013, subd. (c)), and did not obtain flood insurance when a

7   home was located in a flood zone, as required by FDPA (42 U.S.C. § 4012a, subd.

8   (b)), or required force-placed flood insurance for homes that were not located in a

9   flood zone, as prohibited by FDPA (42 U.S.C. § 4012a, subd. (e)).

10   NOW, THEREFORE, the Parties are willing to resolve the matters cited herein as follows:

11   **TERMS AND CONDITIONS**

12   **Total Settlement**

13   1.    Under the terms of this Order, OLS will provide a relief package with a total value of

14   Two Hundred Twenty-Five Million Dollars ($225,000,000.00) to resolve the matters herein. This

15   amount consists of the following components:

16   a.    A cash payment of Twenty-Five Million Dollars ($25,000,000.00) in

17   restitution to borrowers, penalties, and costs and fees to the Department;

18   b.    Debt forgiveness of One Hundred Ninety-Eight Million Dollars

19   ($198,000,000.00) through loan modifications on first lien and second lien residential

20   mortgage loans to California borrowers over a three-year period commencing on July

21   1, 2016 and ending on June 30, 2019;

22   c.    A cash payment of Two Million Dollars ($2,000,000.00) allocated among the

23   approximately 3,127 California borrowers pursuant to previously submitted claim

24   forms as part of Ocwen's voluntary remediation program to compensate borrowers

25   harmed by Ocwen's delay in sending time-sensitive letters; and

26   d.    A cash payment for any remaining balance shortfall (after deducting the items

27   above) that may exist at the end of the three-year period ending June 30, 2019.

28   ///

18

**Monetary Relief**

2.    As set forth in paragraph 1(a) above, OLS agrees to provide the Department a total cash payment of $25,000,000.00 in restitution to California borrowers, penalties, and costs and fees to the Department ("Monetary Relief"), as follows:

a.    The Monetary Relief consists of two components:

i.    Twenty Million Dollars ($20,000,000.00) to be paid as restitution to California borrowers who meet the eligibility criteria to be determined by the Department in its sole discretion; and

ii.    Five Million Dollars ($5,000,000.00) to be paid to the Department as a monetary penalty, and costs and fees.

b.    OLS shall pay the Monetary Relief in the form of a wire transfer or Automated Clearing House deposit to the "Department of Business Oversight," within ten (10) days of the Effective Date of this Order.

c.    OLS shall provide notice of OLS's payment of the Monetary Relief to Alex M. Calero, Senior Counsel, Enforcement Division at the Department of Business Oversight's San Diego Office at 1350 Front Street, Room 2034, San Diego, CA 92101.

d.    After the Effective Date of this Order, if a borrower who has received a cash payment pursuant to this Order is determined to be entitled to additional restitution for the same harm and based on violations arising from the same facts, Ocwen may seek to offset the additional restitution owed to such borrower with any payment made under this Order. Nothing in this Order shall preclude such offset.

**Borrower Assistance**

3.    As set forth in paragraph 1(b) above, OLS shall provide $198,000,000.00 in debt forgiveness through loan modifications on first lien and second lien residential mortgage loans to California borrowers pursuant to Exhibit 1 hereto. As set forth in Exhibit 1, OLS shall have three (3) years from July 1, 2016 to satisfy the commitment in paragraph 3.

///

State of California - Department of Business Oversight

**Remediation to Borrowers for OLS's Delay in Sending Time-Sensitive Letters**

4.    OLS agrees to resolicit the population of 19,295 California borrowers who did not previously submit claim forms under OLS's voluntary remediation program established to address OLS's delay in sending time-sensitive letters.

    a.    Within ninety (90) days after the Effective Date of this Order, OLS shall resolicit this population. OLS shall then make any additional payments to California borrowers under OLS's voluntary remediation program, consistent with existing program guidelines.

    b.    To facilitate prompt resolicitation, processing, and payment of claims to consumers under the voluntary remediation program pursuant to this Order, the Parties agree OLS may use its existing remediation program vendor for the resolicitation of claims. OLS will ensure its vendor provides all relevant information to the Department and any third party Administrator to enable the Administrator to advise the Department on whether Ocwen has complied with this obligation.

    c.    All costs and expenses resulting from the resolicitation for the voluntary remediation program shall be the responsibility of OLS and will be paid outside of the Monetary Relief as set forth in paragraph 2 of this Order.

5.    Within ninety (90) days after the Effective Date of this Order, OLS further agrees to provide the following relief to all eligible California borrowers whose loans OLS services at the time of the Effective Date of this Order and who, from January 2012 through October 2014, were sent time-sensitive loss mitigation letters five or more days after the date of the letter ("Misdated Letter"), which population has been preliminarily identified as 7,224 loans:

    a.    For purposes of the relief set forth in this paragraph, an "eligible California borrower" is a borrower:

        i.    Whose mortgage loan is serviced by OLS;

        ii.    Whose loan is not already liquidated or in REO status;

        iii.    Who is not already in a performing modification;

        iv.    Who is not currently being underwritten for a modification;

-11-

v.       Who is not currently in the process of submitting documents for a requested modification (the "document chase" process); and/or

vi.      Who has not been sent a Request for Mortgage Assistance within the prior thirty (30) days.

b.       OLS will resolicit this population of eligible California borrowers for all loss mitigation options available to each borrower;

c.       Upon receipt of a complete loss mitigation application (as defined by 12 C.F.R. § 1024.41, subd. (b)(1)), OLS will reevaluate loans of these California borrowers for all available loss mitigation programs. OLS shall exercise "reasonable diligence," as defined by the Consumer Financial Protection Bureau's ("CFPB") official interpretation of 12 Code of Federal Regulations part 1024.41, subdivision (b)(1), to obtain the documents necessary for a borrower's complete application; and

d.       Place all eligible loans from the 7,224 population on a sixty (60)-day foreclosure hold during the re-solicitation and evaluation process specified in paragraphs 5(a), (b) and (c) of this Order. A "foreclosure hold" means OLS shall not refer any such borrower's account to foreclosure while the borrower's complete application for any loan modification program is pending. Furthermore, for any account that was already referred to foreclosure, OLS shall not move for foreclosure judgment or order of sale (or, if a motion has already been filed, shall take reasonable steps to avoid a ruling on such motion), or conduct or seek a foreclosure sale.

6.       OLS will submit all group-wide correspondence with the 7,224 California borrowers pursuant to this Order relating to the delay in sending time-sensitive letters to the Department for review and approval prior to distribution to borrowers.

**Mandatory Payment If Order's Monetary Requirements Are Not Satisfied**

7.       If the Department determines OLS has failed to meet any of its obligations described in paragraphs 2, 3, 4, 5 and 6 above, the Department will immediately notify OLS of the alleged failure, provide an opportunity to meet and confer regarding the alleged failure, and provide OLS thirty (30) days following the meet and confer to cure the alleged failure ("Cure Period") or comply

State of California - Department of Business Oversight

under the original terms of this Order.

8.    If at the end of the three (3)-year period set forth in paragraph 3 above, OLS has not cured any alleged failure to comply with paragraphs 2 through 6 within the Cure Period, and the Parties cannot reach resolution as part of the meet and confer process, OLS shall immediately issue a payment to the Department of $225,000,000.00, less:

a.    The Monetary Relief actually deposited as described in paragraph 2, above;

b.    Any credit OLS receives for borrower assistance through loan modifications, as described in paragraph 3 above; and

c.    Any payments made to borrowers as described in paragraph 1(c) above.

9.    If OLS fails to satisfy any of its obligations in paragraphs 2 through 6 of this Order, nothing in paragraph 8 shall preclude the Department from pursuing any other remedies available under this Order or California law at any time after the conclusion of the Cure Period.

10.    Should OLS liquidate any material portion of its servicing portfolio with respect to California borrowers, or engage a subservicer to service loans of affected California borrowers, OLS may receive credit under the terms of this Order for any borrower assistance that mortgage servicing rights purchasers or OLS's subservicers provide to any of the transferred borrowers pursuant to this paragraph, consistent with the obligations set forth in this Order, as if OLS provided the borrower assistance to the transferred borrowers directly. If such rights are transferred, OLS shall:

a.    Remain responsible for demonstrating evidence of eligible debt forgiveness, pursuant to Exhibit 1, provided by OLS or the mortgage servicing rights purchaser or OLS's subservicers;

b.    Remain responsible under paragraph 8 of this Order for any shortfall in the amount of borrower assistance required by paragraph 3, regardless of whether any portion of its servicing portfolio has been transferred; and

c.    Not receive credit for any borrower assistance provided by OLS or the mortgage servicing rights purchasers or OLS's subservicers, if OLS is unable to demonstrate evidence of eligible debt forgiveness pursuant to Exhibit 1.

///

State of California - Department of Business Oversight

*State of California - Department of Business Oversight*

**Release from Prohibition on Acquiring New Mortgage Servicing Rights**

11.    OLS shall be released from the prohibition on acquiring new mortgage servicing rights, as provided in paragraph 3 of the January 2015 Consent Order, upon the date of Notice to the Department, pursuant to Paragraph 2(c) of this Order, of payment of the $25,000,000 in paragraph 2(a) of this Order.

**Order to Discontinue Violations**

12.    Pursuant to California Financial Code section 50321, OLS agrees to not engage in violations of the applicable state and federal laws and regulations referenced in paragraphs P(i) through (xix).

**Engagement and Duties of a Third Party Administrator**

13.    The Department will select, in its discretion, an independent third party administrator ("Administrator"), who will report directly to the Department.

14.    The Administrator shall:

a.    Oversee and report to the Department on OLS's compliance with the California borrower assistance provisions contained in paragraph 3 above;

b.    Administer and report to the Department on the distribution of restitution payments to individual California borrowers pursuant to paragraph 2(a)(i) above;

c.    Oversee and report to the Department on OLS's compliance with the remediation to California borrowers for OLS's delay in sending time-sensitive letters pursuant to paragraphs 4 and 5 above; and

d.    Oversee and report to the Department on finalizing OLS's implementation of the Department-approved Action Plan referenced in paragraph J(iii) above.

15.    OLS and the Department agree to fully cooperate with the Administrator by, including but not limited to, providing the Administrator access to all relevant records necessary to allow the Administrator to fulfill its responsibilities. Any confidential customer information provided to the Administrator by OLS or the Department will remain the property of OLS or the Department, respectively, and will be treated confidentially, subject to the Administrator's reporting requirements and any enforcement action by the Department as outlined in this Order.

16.     OLS and the Department shall provide to the Administrator all information already in OLS's and the Department's possession and readily available that is reasonably necessary for the administration of this Order, within a reasonable time after receipt of the request for information. OLS shall warrant to the Department when it supplies information to the Administrator that the information is complete and accurate to the best of its knowledge. OLS's duty to supply complete and accurate information shall continue until completion of the final report set forth in paragraph 18.

17.     The Administrator shall utilize appropriate information security protocols to ensure the privacy of borrower information, and otherwise comply with all applicable privacy laws.

18.     The Administrator shall report monthly to the Department and OLS on the status of the Administrator's performance of duties under this Order and OLS's compliance with the terms and conditions of this Order. For purposes of demonstrating OLS's compliance with the terms of paragraphs 2 and 4, the Administrator's reporting shall identify the borrower and the amounts paid to each borrower. After completion of the Administrator's duties, the Administrator shall provide a final report to the Department and OLS.

19.     All reasonable costs and expenses of the Administrator, as determined by the Commissioner, including taxes and fees, if any, shall be paid out of the $5,000,000.00 set forth in paragraph 2(a)(ii) and shall not be the responsibility of OLS.

20.     The Department shall select the Administrator, in its discretion.

21.     The scope and term of the Administrator's work will be consistent with the terms of this Order.

**Completion of Servicing Practices Review and Implementation of Revised Policies and Procedures**

22.     The engagement of the Auditor, Fidelity Information Systems ("FIS"), as provided for in the January 2015 Consent Order and memorialized in the July 2015 Letter of Engagement between FIS and OLS, will be terminated as of the Effective Date of this Order.

23.     The Administrator, referenced in paragraphs 13 through 21 above, shall oversee and report to the Department on the Servicing Practices Review and finalizing OLS's implementation of the Department-approved Action Plan referenced in paragraph J(iii) of this Order and report directly

State of California - Department of Business Oversight

24

State of California - Department of Business Oversight

1  to the Department on the implementation of such Action Plan.

2       24.    During the period in which this Order remains in effect, the approved Action Plan will

3  not be amended or rescinded without the prior written approval of the Department, other than

4  amendments necessary to comply with applicable laws or regulations. The Administrator shall

5  immediately notify the Department in writing of any changes to the Action Plan required to comply

6  with applicable laws or regulations.

7       25.    The Administrator will complete the Servicing Practices Review by considering the

8  Interim Status Report and Ocwen's Response thereto and (i) to the extent that the Administrator

9  determines that OLS's Response adequately evidences compliance, the issue will be considered

10  closed; and (ii) to the extent that the Administrator determines that OLS's Response does not

11  adequately evidence compliance, then the Administrator will immediately identify to OLS the policy

12  enhancements that are required and the basis therefor, provide OLS an opportunity to meet and

13  confer and, if necessary, cure within sixty (60) days, and ensure implementation of such

14  enhancements by OLS.

15      26.    No later than ninety (90) days after the Department's selection of the Administrator,

16  the Parties, in consultation with the Administrator, will confer and agree on a date for completion of

17  implementation of the policies and procedures identified in the Action Plan.

18  **Consumer Hotline**

19      27.    OLS agrees to build and maintain, for a period of three (3) years, a "hotline" for

20  OLS's California borrowers. The hotline will be an escalation line outside of OLS's ordinary call

21  center workflow, and will route California borrowers to specialized agents familiar with OLS's

22  policies and procedures, and all relevant federal and California laws and regulations. The hotline

23  agents, however, will not be specifically assigned to handle loss mitigation, which will be addressed

24  via OLS's existing customer service model. This hotline will be in place within ninety (90) days of

25  the Effective Date of this Order, with notice provided to the Department when the hotline has been

26  activated. The three (3)-year period will commence from the date OLS provides notice to the

27  Department.

28  ///

25

**Notices**

28.    All communications regarding this Order will be sent to:

Alex M. Calero
Senior Counsel
California Department of Business Oversight
1350 Front Street, Room 2034
San Diego, CA 92101

Timothy M. Hayes
General Counsel
Ocwen Financial Corporation
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Donna L. Wilson
Partner
Manatt, Phelps & Phillips, LLP
11355 W. Olympic Boulevard
Los Angeles, CA  90064

OLS must report to the Department any change in the above notice information before the change or as soon as practicable after learning of the change, whichever is sooner.

**Mutual Release and Waiver**

29.    The Parties acknowledge and agree this Order is intended to constitute a full, final and complete resolution of any of OLS's violations of federal and California laws and regulations involving California borrowers during the Review Period, and up to and including the Effective Date of this Order.

30.    Each Party mutually releases and discharges the other from any and all claims, demands, causes of action, obligations and liabilities of every kind and nature whatsoever which each of the Parties had, or claims to have had, or now has, against the other (including but not limited to claims against individual executives, officers, directors, agents, appointees, representatives and/or employees of each Party), whether known or unknown, except those the Parties have specifically reserved and that are expressly identified in this Order.

31.    This mutual release includes claims asserted by the Department relating to mortgage servicing practices described in this Order.  This mutual release further includes, but is not limited to, claims between the Parties which relate to or arise from the January 2015 Consent Order and resulting Compliance Review and Servicing Practices Review, any claims related to the licensing of

26

OLS, the engagement and payment of the Auditor, or any other conduct of the Parties that occurred, may have occurred, or is alleged to have occurred from January 1, 2012 to the date of execution of this Order ("Released Period"), including those relating to mortgage servicing. The Parties understand and agree that, as to claims that are known to the party when the release is signed, any statutory provisions, including California Civil Code section 1542, that would otherwise apply to limit this general release are hereby waived.

The Parties understand and agree that the claims released in paragraphs 29 through 31 herein (the "Released Claims") include not only claims presently known to them, but also include all unknown or unanticipated claims, rights, demands, actions, obligations, liabilities and causes of action of every kind and character that would otherwise occur during the Released Period. Section 1542 of the California Civil Code provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS, WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**The Parties knowingly and voluntarily waive any and all rights or benefits that they may now have, or in the future may have, under the terms of section 1542 of the California Civil Code.**

No entity or individual other than OLS and the Department may rely on this release and there are no intended or unintended third party beneficiaries. FIS is not released from any claims belonging to the Department and/or OLS, and nothing in this Order shall be read to be, in any way, a release of claims against FIS.

32.    The Parties further acknowledge and agree the Commissioner will bring no further proceedings or actions related to matters resolved by this Order, either under the CRMLA, or any other provision of law, except the Commissioner may bring an action to enforce compliance with the terms of this Order. The Commissioner waives the right to bring an action for penalties, including, but not limited to, statutory penalties under California Financial Code sections 50500, 50501, 50501.5, and 50513, for any violations of federal or California law, that occurred from July 1, 2015 to the Effective Date of this Order. Notwithstanding the foregoing, OLS shall remain responsible for any remediation or restitution to borrowers, and the Commissioner may bring an action for restitution

-18-
CONSENT ORDER

27

for violations of federal or California law under Financial Code section 50513, subdivision (a)(3), that occurred from July 1, 2015 to the Effective Date of this Order after providing notice of the alleged violation to Ocwen and allowing thirty (30) days for Ocwen to meet and confer and cure the alleged violation by providing restitution to borrowers. If it is determined OLS is responsible for restitution for violations that occurred from July 1, 2015 to the Effective Date of this Order, Ocwen will receive applicable credit for any restitution arising from the same violations already paid to borrowers by the Administrator from the funds designated in paragraph 2(a)(i) above. Nothing in this Order shall bar the Department from conducting additional statutorily required or authorized examinations of OLS for the period commencing July 1, 2015.

33.    The Parties acknowledge and agree that to the extent the Department enters into an additional consent order with other regulators and OLS that addresses the same violations of state and federal law and regulations within the Released Period, the $225,000,000.00 of relief provided in this Order, which includes restitution to harmed California borrowers, loan modifications, and monetary penalties, will offset any payment of restitution, loan modifications, or monetary penalties the Department and California borrowers are entitled to receive from OLS as part of any such additional consent order.

**Non-Compliance with the Order and Notice and Cure Opportunity**

34.    OLS agrees to comply with this Order and any amendment in writing thereto. It is further understood this Order is binding on the Department and OLS, as well as their successors in interest and assigns, but it specifically does not bind any federal or other state agencies or any law enforcement authorities.

35.    OLS must notify the Department of a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or the filing of any bankruptcy or insolvency proceeding by or against OLS. OLS must provide this notice as soon as practicable, and at least thirty (30) days before the development, when possible.

36.    OLS agrees that if it fails to comply with paragraphs 2 through 6 of this Order, having received due notice in writing from the Department of such alleged failure to comply but having

-19-

CONSENT ORDER

State of California - Department of Business Oversight

1   failed to cure during the Cure Period and resulting meet and confer process set forth in paragraph 7,

2   the Department may immediately suspend OLS from lending and servicing under its CRMLA license

3   until the terms of this Order are met.

4       37.    The Parties further agree that the provisions of this Order, including but not limited to

5   the Department's ability to immediately suspend OLS under paragraph 36 for failure to comply with

6   paragraphs 2 through 6 of this Order, but excluding paragraph 12 ("Order to Discontinue

7   Violations"), shall expire three (3) years from the Effective Date of this Order.

8       38.    While OLS does not admit the alleged violations set forth in the Order other than those

9   facts deemed necessary to establish the jurisdiction of the Commissioner, OLS agrees the facts and

10  violations set forth in paragraphs A to P, above, in this Order may be taken as true without further

11  proof in any bankruptcy case or subsequent civil litigation the Department may pursue to enforce its

12  rights to any payment or money judgment under the terms of this Order, including but not limited to,

13  any nondischargeability complaint in any bankruptcy proceeding and that this Order shall have

14  collateral estoppel effect in any bankruptcy case.

15      39.    The Parties further acknowledge and agree nothing in this Order shall preclude the

16  Commissioner, or her agents or employees, to the extent required by law, from assisting or

17  cooperating in any investigation and/or action brought by any other federal, state, county, or city

18  agency.

19  **Appealability**

20      40.    The Commissioner states that she is fully prepared to file an administrative

21  enforcement action based on the allegations contained in this Order. In order to avoid the continuing

22  cost and expense of the pending monitorship and the January 2015 Consent Order, OLS further

23  acknowledges its right to an administrative hearing under the CRMLA, including California Financial

24  Code section 50323 in connection with the Order to Discontinue Violations, and in reliance on the

25  notice and cure provisions stated above, waives its right to a hearing with respect to the allegations

26  herein. For the same reasons, OLS further expressly waives any requirement for the filing of an

27  Accusation that may be afforded by the California Administrative Procedure Act, including

28  Government Code section 11415.60, subdivision (b), the California Code of Civil Procedure, or any

29

1  other provision of law in connection with this matter. By waiving such rights, OLS stipulates to this

2  Order becoming final.

3      41.    OLS waives its rights to seek judicial review or otherwise challenge or contest in any

4  court or tribunal outside the Department the validity or effectiveness of this Order.

5  **Miscellaneous Provisions**

6      42.    The section headings contained in this Order are for reference purposes only and shall

7  not affect the meaning or interpretation of this Order.

8      43.    The waiver of any provision of this Order shall not operate to waive any other

9  provision set forth herein, and any waiver, amendment or change to the terms of this Order must be in

10 writing and signed by the Parties.

11     44.    The Parties represent and warrant each party has received advice from its attorney(s)

12 and/or other representatives prior to entering into this Order, and that in executing this Order each

13 party relied solely on the statements set forth herein and the advice of its own counsel and/or

14 representative.

15     45.    OLS enters this Order voluntarily and acknowledges that no promises or assurances

16 have been made by the Department or any officer or agent thereof, about this Order.

17     46.    The Order may be executed in one or more counterparts, each of which shall be an

18 original but all of which, together, shall be deemed to constitute a single document. A fax signature

19 shall be deemed the same as an original signature.

20     47.    Each signatory represents and warrants that he/she possesses the necessary capacity

21 and authority to execute this Order and bind the Parties.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

*State of California - Department of Business Oversight*

-21-

1    48.    This Order shall not become effective until signed by all parties and delivered by the

2    Commissioner's counsel by email to counsel for OLS.

3    Dated: _2-17_, 2017

4    JAN LYNN OWEN
5    Commissioner of Business Oversight

6    BY:

7    Jan Lynn Owen, Commissioner

8    Dated: _____, 2017

9

10   OCWEN LOAN SERVICING, LLC

11   BY:

12   Timothy M. Hayes
     Executive Vice President, Ocwen Loan Servicing, LLC

13

14   APPROVED AS TO FORM:

15

16   Alex M. Calero
     Counsel for the Department

17

18   Donna L. Wilson, Manatt, Phelps, and Phillips, LLP
19   Counsel for Ocwen Loan Servicing, LLC

20

21

22

23

24

25

26

27

28

State of California - Department of Business Oversight

-22-
CONSENT ORDER

31

**Exhibit 1**

A.    Borrower Assistance

Based on the alleged violations discovered during the Compliance Review examination referenced in the attached Consent Order, OLS hereby agrees to provide $198,000,000.00 in Debt Forgiveness through loan modifications on first lien and second lien residential mortgage loans as defined below, to borrowers who meet the eligibility criteria pursuant to the below provisions.

B.    Loan Modification Criteria

    1.    For first lien loan modifications, OLS shall receive credit for every dollar of Debt Forgiveness except to the extent that state or federal funds paid to OLS in its capacity as an investor are the source of OLS's credit claim, provided that:

        a.  At the time the modification is offered, the borrower is at least 30 days delinquent or otherwise qualifies as being at imminent risk of default due to his or her financial situation;

        b.  The borrower's pre-modification LTV (post-capitalization of any delinquent charges) is greater than or equal to 80%;

        c.  The borrower's payments under the modified terms are current as of 90 days following the implementation of the modification, or are brought current within 180 days following implementation of modification; and

        d.  The borrower's post-modification LTV is no greater than 120%, which may be determined in accordance with the HAMP Principal Reduction Alternative program.

    2.    For second lien loan modifications, OLS shall receive credit toward this obligation for every dollar of Debt Forgiveness if:

        a.  At the time the modification is offered, the borrower is at least 30 days delinquent or otherwise qualifies as being at imminent risk of default due to his or her financial situation;

        b.  The borrower's payments under the modified terms are current as of 90 days following the implementation of the modification, or are brought current within 180 days following implementation of the modification.

C.    Calculation of Debt Forgiveness Amounts

    1.    OLS shall receive dollar-for-dollar credit for Debt Forgiveness, which consists of Unpaid Principal Balance ("UPB") Forgiven plus Eligible Capitalized Amounts Forgiven, as defined below, through loan modifications that meet the criteria described above.

        a.    "Unpaid Principal Balance Forgiven" shall be calculated as the greater of either (i) zero dollars ($0), or (ii) pre-modification UPB minus post-modification UPB.

1

32

      b.    "Eligible Capitalized Amounts Forgiven" shall be calculated as the lesser of either (i) Total Amount Forgiven, or (ii) delinquent interest plus escrow advanced. Escrow advanced shall not include late fees or corporate advances including foreclosure attorney's fees advanced, foreclosure costs advanced, bankruptcy attorney's fees advanced, bankruptcy costs advanced, property valuation fees advanced, or property inspection fees advanced

      c.    "Total Amount Forgiven" shall be calculated as pre-modification total debt minus post-modification UPB.

2.    OLS shall receive credit for all loan modifications described herein which are Contractually Current at the time the modification is completed in OLS's servicing system, which is denoted by the "modification completed" system indicator. "Contractually Current" means less than 30 days delinquent.

3.    OLS shall receive credit for all loan modifications described herein where no delinquent fees attributable to the borrower exist at the time the modification is completed in OLS's servicing system, which is denoted by the "modification completed" system indicator; or, to the extent any delinquent fees did exist at that time, those fees were subsequently waived by OLS. For additional costs that may be incurred post modification effective date, and all escrow advances assessed after the modification date, those costs will still be owed by the borrower and OLS shall not be prevented from receiving credit for the modification.

D.    Other Requirements

1.    OLS shall not, in the ordinary course, require a borrower to waive or release legal claims and defenses as a condition of approval for a loan modification under these borrower assistance requirements. However, nothing herein shall preclude OLS from requiring a waiver or release of legal claims and defenses with respect to a loan modification offered in connection with the resolution of a contested claim, when the borrower would not otherwise have qualified for that loan modification under existing servicer programs.

2.    OLS shall be entitled to receive credits towards its $198,000,000.00 borrower assistance commitment for modifications where the modification effective date is on or after July 1, 2016. The modification effective date shall be defined as the date of the borrower's first modified payment.

3.    If OLS fails to meet the $198,000,000.00 borrower assistance commitment as set forth in these borrower assistance requirements within the three (3) year period ending June 30, 2019, then OLS shall pay a cash penalty in an amount equal to the unmet commitment amount, subject to the requirements in paragraph 12 of the Consent Order. In the event there is a material change in market conditions that OLS can demonstrate makes it unable to meet the $198,000,000 borrower assistance commitment notwithstanding its good faith efforts to do so, the Parties commit to engage in good faith discussions regarding an extension or other modification of the terms of this commitment.

2

33

4.    OLS agrees that it will not implement any of the borrower assistance requirements described herein through policies that discriminate against any protected class of borrowers. This provision shall not preclude OLS from implementing programs to assist borrowers facing language access barriers, or programs targeting regions with higher delinquency rates or higher proportions of underwater mortgages.

5.    Satisfaction of these borrower assistance requirements by OLS in accordance with the Consent Order in connection with any residential mortgage loan is expressly subject to, and shall be interpreted in accordance with, as applicable, the terms and provisions of the Servicer Participation Agreement with the U.S. Department of Treasury, any servicing agreement, subservicing agreement under which OLS services for others, special servicing agreement, mortgage or bond insurance policy or related agreement or requirements to which OLS is a party and by which it or its servicing affiliates are bound pertaining to the servicing or ownership of the mortgage loans, including without limitation the requirements, binding directions, or investor guidelines of the applicable investor (such as Fannie Mae or Freddie Mac), mortgage or bond insurer, or credit enhancer, provided, however, that the inability of OLS to offer a type, form or feature of the borrower assistance by virtue of an Applicable Requirement shall not relieve OLS of its aggregate borrower assistance obligations imposed by the Consent Order, *i.e.,* OLS must satisfy such obligations through the offer of other types, forms or features of borrower assistance that are not limited by such Applicable Requirement. The term Applicable Requirements is defined as (a) applicable federal, state and local laws, rules and regulations, (b) the terms of the applicable mortgage loan documents, (c) section 201 of the Helping Families Save Their Homes Act of 2009, and (d) the terms and provisions of the Servicer Participation Agreement with the Department of Treasury, any servicing agreement, subservicing agreement under which OLS services for others, special servicing agreement, mortgage or bond insurance policy or related agreement or requirements to which OLS is a party and by which it or its servicing is bound pertaining to the servicing or ownership of the mortgage loans, including without limitation the requirements, binding directions, or investor guidelines of the applicable investor (such as Fannie Mae or Freddie Mac), mortgage or bond insurer, or credit enhancer.

6.    OLS shall not receive any credit under these borrower assistance requirements for any federal or state incentive payments received by OLS for modifications made under federal or proprietary programs.

34

Application For Appointment of Counsel -

**F 7016-1.1**

In re
Rosenberg
vs
Alliance Bancorp (Estate) et. c Debtor(s).

CHAPTER: 7
CASE NO.: 1-17-BK-11748-VK
ADVERSARY NO.: 17-ap-01096-VK

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
106 Judge John Aiso St
LA, CA 90012

A true and correct copy of the foregoing document described as Application For Appoinment of Counsel & Attached Declaration Along with Proposed order & Ntc of Mo to will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d), and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On April 02, 2018 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge **will be** completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge **will be** completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

April 02, 2018        Esperanza Anderson
Date                  Type Name                        Signature

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 7016-1.1**

January 2009

35

**ATTACHED SERVICE LIST**

MERS  Mortgage Electronic Systems, INC
    Attn: T. Robert Finlay, Partner   cc. Nicloe Dunn, Esq
        4665 MacArthur Court, Suite 200
            Newport Beach, CA 92660

Ochen  Loan Servicing, INC
    c/o  T. Robert Finlay, Partner   cc. Niclole Dunn, Esq
        4665 MacArthur Court, Suite 200
            Newport Beach, CA 92660

Amy L. Goldman (TR)
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071
(213) 250-1800
*Trustee*

Alliance Bancorp, Inc
815  Commerce Dr.
Oak Brook, IL
    660523

United States Trustee (SV)
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017
(213) 894-6811
*U.S. Trustee*

Judge Victoria S. Kaufman
U.S. Bankruptcy Court – Central District
(San Fernando Valley)
21041 Burbank Blvd.
Woodland Hills, CA 91367-6603

Deutsche Bank National Trust in
Alliance Bancorp Trust 2007 oA-1
c/o: ROBERT Garrett of  Law Firm of
                        Garrett & Tully
    225 South Lake, Suite 1400
        Pasadena, CA 91101

2
PROOF OF SERVICE

36